# EXHIBIT A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF SUFFOLK
-------------------------------------------------------------------X
JACOB ADONI and HARBOR PARK REALTY, LLC,

Index No.:

**SUMMONS**

                                        Plaintiffs,

Plaintiff designates Suffolk County
as the place of trial. The basis of
venue is plaintiff's residence and
place of business.

                    -against-

WORLD BUSINESS LENDERS, LLC, AXOS
BANK f/k/a B-of-I FEDERAL BANK and CIRCADIAN
FUNDING, LLC,

                                        Defendant(s).
-------------------------------------------------------------------X

To the above named Defendants:

        YOU ARE HEREBY SUMMONED to answer the complaint in this action and to serve a
copy of your answer, or, if the complaint is not served with this summons, to serve a notice of
appearance, on the plaintiff's attorneys within 20 days after the service of this summons, exclusive
of the day of service (or within 30 days after the service is complete if this summons is not
personally delivered to you within the State of New York); and in case of your failure to appear or
answer, judgment will be taken against you by default for the relief demanded in the complaint.

Dated: New York, New York
        October 15, 2019

                                        Yours, etc.,

                                        /s Marcus Aurelius Nussbaum
                                        Marcus A. Nussbaum, Esq.
                                        Attorney for Plaintiffs
                                        Mail Drop: P.O. Box 245599
                                        Brooklyn, NY 11224
                                        201-956-7071

**Note: This action seeks equitable (to wit: declaratory and injunctive) relief and monetary
damages pursuant to of New York GBL § 349, and the FDCPA as set forth herein.**

Case 2:19-cv-06911-JMA-GRB   Document 1-1   Filed 12/11/19   Page 3 of 78 PageID #: 8

**DEFENDANTS' ADDRESSES:**

WORLD BUSINESS LENDERS, LLC            AXOS BANK
C/O Corporation Service Company        4350 La Jolla Village Drive, Ste. 140
80 State Street                        San Diego CA 92122
Albany, New York, 12207-2543


CIRCADIAN FUNDING, LLC
C/O Corporation Service Company
80 State Street
Albany, New York, 12207-2543

Case 2:19-cv-06913-AMA-GRB  Document 1-1  Filed 12/12/19  Page 4 of 78 PageID #: 9

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF SUFFOLK
-------------------------------------------------------------------X
JACOB ADONI and HARBOR PARK REALTY, LLC,

                                    Plaintiffs,                    Index No.:

                     -against-                                    **VERIFIED COMPLAINT**

WORLD BUSINESS LENDERS, LLC, AXOS
BANK f/k/a B-of-I FEDERAL BANK and CIRCADIAN
FUNDING, LLC,

                                    Defendant(s).
-------------------------------------------------------------------X

        Plaintiffs JACOB ADONI and HARBOR PARK REALTY, LLC (collectively,
"plaintiffs"), their attorney, Marcus A. Nussbaum, Esq., as and for their Verified Complaint
("Complaint') herein, state and allege upon information and belief as follows:

### PARTIES

        1.     Plaintiff HARBOR PARK REALTY, LLC is a domestic limited liability corporation
organized and existing under the laws of the State of New York with its principal office at 1019 Fort
Salonga Rd. Ste 112, Northport, NY 11768.

        2.     Plaintiff JACOB ADONI is a resident of the State of New York, residing at 19
Chestnut Hill Drive, Oyster Bay, NY 11771.

        3.     Mr. Adoni is the sole managing member of plaintiff HARBOR PARK REALTY,
LLC.

        4.     Upon information and belief, defendant WORLD BUSINESS LENDERS, LLC
("WBL") is a New York Limited Liability Company with its principal office at 101 Hudson Street,
33rd Floor, Jersey City, NJ 07302.

Case 2:19-cv-06912-JMA-GRB Document 1-1 Filed 12/12/19 Page 5 of 78 PageID #: 10

5.      Upon information and belief, defendant AXOS BANK f/k/a B-of-I FEDERAL

BANK ("AXOS") is a Federally chartered savings bank with its principal office located at 4350 La

Jolla Village Drive, Suite 140 San Diego, California.

6.      Upon information and belief, defendant CIRCADIAN FUNDING, LLC is a

Delaware Limited Liability Company with its principal office at 500 7th Avenue, 14th Floor, New

York, NY 10018.

7.      Upon information and belief, CIRCADIAN FUNDING, LLC is an agent of WBL.

### FACTS COMMON TO ALL PARTIES

8.      On or about February 1, 2019, Plaintiff JACOB ADONI was contacted by Stephen

Sheinbaum of CIRCADIAN FUNDING, LLC (Mr. Sheinbaum and CIRCADIAN FUNDING,

LLC are referred to collectively, as "CIRCADIAN") with an offer for a personal loan to Mr. Adoni

which would be funded by WBL and AXOS.

9.      CIRCADIAN represented to Mr. Adoni that the personal loan would be in the sum

of $110,000.00 and would be secured by a mortgage on Mr. Adoni's personal residence, located at

19 Chestnut Hill Drive, Oyster Bay, NY 11771.

10.     On or about February 5, 2019, CIRCADIAN provided Mr. Adoni with an estimated

closing cost disclosure which stated that "...you will be afforded the opportunity to review the

closing documents with your attorney...", a copy of which is annexed hereto as Exhibit "A".

11.     At approximately 12:00 p.m. on February 22, 2019, CIRCADIAN provided Mr.

Adoni with a Business Promissory Note and Security Agreement (the "Note"), a Personal Guarantee

(the "Guarantee"), Business Loan Summary, Conditional Closing Agreement, Cooperation

Agreement and other documents for Mr. Adoni to execute contemporaneously with the Note and

Guaranty (all of which collectively comprise the "Loan Documents"), and which are annexed hereto

as Exhibit "B".

12.    At approximately 12:00 p.m. on February 22, 2019, CIRCADIAN also provided Mr. Adoni with a Mortgage, Assignment of Leases and Rents and Security Agreement (the "Mortgage") to review and execute (annexed hereto as Exhibit "C").

13.    Mr. Adoni was told by CIRCADIAN at the time that the Loan Documents and Mortgage were provided to him, that he must execute all documents no later than 6:00 p.m. on February 22, 2019, after which the loan offer would no longer be valid.

14.    On February 22, 2019, CIRCADIAN advised Mr. Adoni that a notary hired by CIRCADIAN would meet him in a Panera Bread restaurant located nearby his home in order to notarize his signature on the Loan Documents and Mortgage.

15.    The Loan Documents provide the terms of the loan as follows: Principal Amount: $90,000.00; Repayment Amount: $122,422.73; Interest Charges: $32,422.73; Processing Fee: $6,293.00; Payment Schedule: 125 payments of $971.61 due each "Business Day" commencing on 2/27/19 until 8/22/19, followed by a final payment of $971.48 on 8/23/19 when any outstanding Principal, Interest, and other unpaid charges shall be due and payable in full; Interest Rate: 0.364520547945% per day on unpaid principal until paid in full; APR 138.1061%.

16.    Mr. Adoni was told by CIRCADIAN at the time that the Loan Documents and Mortgage were provided to him, that while the loan was meant to be a personal loan to him, in order to facilitate the daily withdrawals by defendants for repayment of the loan, that it was necessary for the Loan Documents to make reference to Mr. Adoni's business, to wit: HARBOR PARK REALTY, LLC, which would allow defendants to make withdrawals for repayment of the loan from the corporate bank account of HARBOR PARK REALTY, LLC.

17.    Defendants have now demanded payment in full according to the terms of the Loan Documents and have inundated Mr. Adoni with multiple threats to foreclose on his home and on the mortgage.

18.     Mr. Adoni has made said payments up and until his decision to file this Complaint.

## FIRST CAUSE OF ACTION
### (Declaratory Judgment)

19.     Plaintiffs repeat and reallege each and every allegation contained in paragraphs "1" through "18" of this Complaint as if set forth at length herein.

20.     The Supreme Court may render a declaratory judgment having the effect of a final judgment as to the rights and other legal relations of the parties to a justiciable controversy whether or not further relief is or could be claimed. See, CPLR 3001; Long Island Lighting Company v. Allianz Underwriters Insurance Company, 35 A.D.3d 253, 826 N.Y.S.2d 55 (1st Dept. 2006).

21.     Pursuant to the terms of the Loan Documents, the loan has an interest rate that exceeds 25%.

22.     N.Y. Gen. Oblig. Law § 5-511 provides that usurious contracts are void. A personal loan with an interest rate that exceeds 16% constitutes civil usury and a loan from and to a corporation with an interest rate that exceeds 25% constitutes criminal usury under New York law.

23.     As such the Loan Documents and the loan itself constitute criminal usury and are *void ab initio*.

24.     The Court affirmed in Curtiss v. Teller, 157 A.D. 804, 804, 143 N.Y.S. 188 (4th Dept. 1913), aff'd 217 N.Y. 649, 112 N.E. 1056 (1916) that a usurious transaction is *void ab initio*, and a return of excess interest cannot save to the lender the money actually advanced, or the interest due on the loan. Consequently, although defendants need not return the interest plaintiff Adoni has already paid, defendants "…cannot recover either the money loaned or the interest remaining due in this transaction." See, Id.; Szerdahelyi v. Harris, 67 N.Y.2d 42, 50, 490 N.E.2d 517 (1986).

25.     While plaintiff Adoni herein is not seeking recovery of the interest already paid to defendants, and rather, is seeking a declaratory judgment, as stated immediately above, the defendants should not be able to "recover either the money loaned or the interest remaining due in this transaction." Id.

26.     When a court deems a transaction to be usurious, it must declare the transaction and its supporting documents void, enjoin prosecution on them and order that all documents and collateral be canceled and surrendered." Id.

27.     With respect to any loan or forbearance other than certain residential mortgage loans, the term 'interest,' for purposes of New York's civil and criminal usury statutes, "mean[s] all amounts paid or payable, directly or indirectly, by any person, to or for the account of the lender which would be includible as interest under New York law as it existed prior to the enactment of [section 14-a of the New York Banking Law,] chapter 349 of the Laws of 1968." 3 N.Y.C.R.R. § 4.2(b); see N.Y. Gen. Oblig. Law § 5-501(2).

28.     New York State Penal Law §§ 190.40 and 190.42 prohibit loans with interest exceeding twenty- five percent (25%) per year. Violating those proscriptions are class E and C felonies, respectively.

29.     Defendants all pertinent times, continuing through the present, engaged in interstate commerce by making loans, including those which are the subject of this action, to entities in various states, and collecting or attempting to collect upon those loans.

30.     Defendants are in the business of making and collecting usurious loans because lending at interest rates exceeding twenty-five percent (25%) per year (in this matter the loans and broker fees exceed an annual rate of 200% and in this case 300%), and trying to enforce those agreements, are defendants' trade.

31.     The loans are in the first instance, represented to be personal loans, after which time defendants engage in a "bait and switch" and explain that daily payments should be made from a business account in order to facilitate the daily withdrawals by defendants for repayment of the loan.

32.     The Loan Documents and Mortgage were prepared exclusively by the defendants and not by the plaintiffs.

33.     Plaintiffs were not provided with the opportunity to review the Loan Documents and Mortgage with counsel and executed them while unrepresented by counsel.

34.     It is clear that the terms of the loan as stated in the Loan Documents is usurious. It would mean that defendants should be indicted if they were to attempt to enforce such a highly usurious loan upon the plaintiffs.

35.     Among other things, because commissions, origination fees, and similar charges count towards usury, under each of the Loan Documents, defendants are in fact guaranteed interest exceeding 200% upon full repayment. Even without those fees, gains exceed 167% per annum because the loan which is the subject of this action must be repaid in about six months.

36.     When a party contemplates taking certain action, a genuine dispute may arise before any breach or violation has occurred and before there is any need or right to resort to coercive (affirmative) measures. "In such a case all that may be required to insure compliance with the law is for the courts to declare the rights and obligations of the parties so that they may act accordingly. That is the theory of the declaratory judgment action authorized by CPLR 3001." New York Public Interest Research Group v. Carey, 42 N.Y.2d 527, 529-530 (1977).

37.     Plaintiff has a secured promissory note and its loan is deemed financially secured by the personal assets of the Mr. Adoni.

38.     Defendants have further failed to abide by NYS Banking Law §6-1 , 6-m, and 590(b); failed to abide by Notice Provisions of RPAPL §1302 and §1304 and failed to establish

conformity with RPAPL §1303 and CPLR §3215(g)(3); failed to abide by the Federal Equal Credit Opportunity Act, 15 U.S.C. sec. 1691; failed to abide by the Real Estate Settlement Procedures Act; Truth in Lending Act; Federal Fair Housing Act, 42 U.S.C. sec.3604, 3605; CPLR §3408; Homeownership and Equity Protection Act; and General Business Law §349 (the "Deceptive Practices Act").

39.     Accordingly, plaintiffs request a declaration from the Court that the subject agreements, Loan Document and Mortgage were *void ab initio*.

## SECOND CAUSE OF ACTION AGAINST WBL AND AXOS
### (Violation of New York GBL § 349)

40.     Plaintiffs repeat and reallege each and every allegation contained in paragraphs "1" through "39" of this Complaint as if set forth at length herein.

41.     WBL AND AXOS violated N.Y. Gen. Bus. Law §349 in that the mortgage transaction described herein: (1) was indeed premised as a consumer transaction; (2) was misleading in that WBL AND AXOS failed to provide all of the mandatory disclosures and information before completing the transaction; (3) failed to allow plaintiffs the opportunity to review all of the loan documents with counsel prior to their execution; (4) misrepresented to plaintiff Adoni the amount which would be loaned to him; and (5) caused the financial and emotional harm to plaintiff Adoni in that he is now at risk of losing his home as a result of the threatened frivolous foreclosure on the mortgage, based upon a usurious loan.

42.     By and through their acts, omissions, concealments, and misrepresentations, Defendants violated N.Y. Gen. Bus. Law §349 with materially misleading and consumer-oriented deceptive acts and practices, with a broad impact on consumers at large, and did so knowingly or willfully.

Case 2:19-cv-06971-JMA-GRB Document 1-1 Filed 12/12/19 Page 11 of 78 PageID #: 16

43.     As a result, Plaintiffs suffered actual damages, past, present, and future including but not limited to $100,000.00, as well as severe emotional distress, mental anguish, humiliation, aggravation, embarrassment, anxiety, and fear.

44.     As Defendants willfully and knowingly violated N.Y. Gen. Bus. Law § 349, they are also liable for treble damages and civil penalties.

### THIRD CAUSE OF ACTION AGAINST WBL AND AXOS
**Violation of the Fair Debt Collection Practices Act 15 U.S.C. § 1692 et seq.**

45.     Plaintiffs repeat and reallege each and every allegation contained in paragraphs "1" through "44" of this Complaint as if set forth at length herein.

46.     Plaintiffs have fallen victim to a null and void predatory mortgage loan, now falsely alleged by WBL and AXOS to be a business loan.

47.     Plaintiffs bring this cause of action pursuant to 15 U.S.C. § 1692 et seq., the Fair Debt Collection Practices Act ("FDCPA"), New York General Business Law Section § 349 and Section 419 of the Superintendent of the Banking Department's regulations.

48.     First, 15 U.S.C. § 1692 et seq. prohibits, among other things:

- Misrepresentation or deceit: misrepresenting the debt or using deception to collect a debt; and

- Seeking unjustified amounts, which would include demanding any amounts not permitted under an applicable contract or as provided under applicable law.

49.     As such, it is indisputable that defendants WBL and AXOS have violated 15 U.S.C. § 1692 *et seq.* in that they misrepresented the nature of the loan (now claiming that it was a business loan) and by attempting to collect on a loan which is usurious as set forth in detail herein.

50.     As such, plaintiffs seek an award of damages, in the amount of One Hundred Thousand Dollars ($100,000.00) for each claim.

Case 2:19-cv-06691-NJC-SIL  Document 1-3  Filed 11/28/19  Page 12 of 78 PageID #: 17

## FOURTH CAUSE OF ACTION AGAINST WBL AND AXOS

51.     Plaintiffs repeat and reallege each and every allegation contained in paragraphs "1"

through "50" of this Complaint as if set forth at length herein.

52.     Mr. Adoni is a consumer and the void obligation between the defendants and

plaintiffs which is the non-valid debt allegedly owed pursuant to the subject loan documents and

mortgage can be defined as a consumer debt under applicable New York State and Federal Law.

53.     WBL and AXOS have engaged in consumer collection conduct which amounts to a

violation of New York State and Federal laws, as set out herein and the plaintiffs, as a proximate

result thereof, have sustained economic damages for which the plaintiffs are entitled to compensation

from the defendants.

54.     Defendants' collection activities described herein violated New York State and

Federal Laws (FDCPA) in the defendants are attempting and threatening to collect and enforce this

void consumer mortgage debt through threatened foreclosure action when defendants know that they

have no right to pursue and/or collect the alleged debt because no valid debt currently exists, nor has

ever existed for the reasons set forth herein.

## FIFTH CAUSE OF ACTION AGAINST ALL DEFENDANTS
### (Preliminary and Permanent Injunction)

55.     Plaintiff repeats and realleges each and every allegation contained in paragraphs "1"

through "54" of this Complaint as if set forth at length herein.

56.     Defendants may, at any time, attempt to enter confessions of judgment against

plaintiffs herein and proceed with foreclosure of the Mortgage due to plaintiff's filing of the instant

action.

57.     If defendants initiate foreclosure proceedings against the Mortgage, plaintiff Adoni

will be at risk of losing his home and primary residence prior to the resolution of these proceedings.

58.    The terms of the loan as evidenced by the Loan Documents and Mortgage are clearly usurious and by reason of the foregoing, plaintiffs are likely to succeed on the merits.

59.    By reason of the foregoing, a balancing of the equities favors plaintiffs.

60.    Plaintiffs have no adequate remedy at law.

61.    Accordingly, plaintiffs are entitled to an injunction permanently barring and enjoining Defendants, their officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with him who receive actual notice of the injunction, from further enforcement of any provisions of the Loan Documents, Mortgage, and/or documents signed until this matter is decided by this court in its entirety.

62.    Alternatively, preliminarily and permanently enjoining Defendants, their officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them who receive actual notice of the injunction, from collecting on any judgments should they be granted to Defendants in any other court, until this matter is further adjudicated.

**WHEREFORE**, Plaintiffs demand declaratory judgment against Defendants:

A.    Determining that the Loan Documents and Mortgage along with any other documents signed by Plaintiffs are deemed usurious on its face and be deemed void barring Defendants from further collection of any outstanding debt;

B.    Preliminarily and permanently enjoining Defendants, their officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with him who receive actual notice of the injunction, from further enforcement of any provisions of the Loan Documents, Mortgage, and/or documents signed until this matter is decided by this court in its entirety;

C.    Alternatively, preliminarily and permanently enjoining Defendants, their officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them who receive actual notice of the injunction, from collecting on any judgments should they be granted to Defendants in any other court, until this matter is further adjudicated;

D.    Awarding Plaintiffs treble damages under NY Gen Bus Law § 349, and punitive damages and civil penalties in an amount to be decided by a judge or jury;

FILED: SUFFOLK COUNTY CLERK 10/17/2019 09:58 AM
Case 2:19-cv-06911-JMA-GRB Document 14 Filed 12/12/19 Page 14 of 78 PageID #: 19
NYSCEF DOC. NO. 1

INDEX NO. 620617/2019
RECEIVED NYSCEF: 10/18/2019

E.   Awarding Plaintiffs damages under 15 U.S.C. § 1692 et seq., and punitive damages and civil penalties in an amount to be decided by a judge or jury;

F.   Awarding Plaintiff's their costs and reasonable attorneys' fees in this action;

G.   That this Court retain jurisdiction over this matter for purposes of ensuring Defendants' compliance with this Court's order; and

H.   Granting Plaintiffs such other relief as this Court may deem just and proper.

Dated:      New York, New York
            October 15, 2019

                              Respectfully submitted,

                    By:   /s Marcus Aurelius Nussbaum
                          Marcus A. Nussbaum, Esq.
                          Attorney for Plaintiffs
                          Mail Drop: P.O. Box 245599
                          Brooklyn, NY 11224
                          201-956-7071

Case 2:19-cv-06971-JMA-GRB Document 1-1 Filed 12/12/19 Page 15 of 78 PageID #: 20

## VERIFICATION

STATE OF NEW YORK )
)ss:
COUNTY OF SUFFOLK )

JACOB ADONI, being duly sworn, says:

I am a plaintiff in this action, and I am also the sole managing member of the limited

liability corporate plaintiff in the action herein: I have read the annexed VERIFIED COMPLAINT

and know the contents thereof, and the same are true to my knowledge, except those matters therein

which are stated to be alleged upon information and belief, and as to those matters I believe them to

be true. My belief as to those matters therein not stated upon knowledge, is based upon facts,

records, and other pertinent information contained in my personal files.

DATED: Northport, New York
October 15, 2019

_____
JACOB ADONI

Sworn to before me this
15th day of October, 2019

_____
Notary Public

MARCUS A. NUSSBAUM
Notary Public - State of New York
Reg.# 02NU6219792
Qualified in Kings County
Commission Expires March 29, 20 22

-14-

Case 2:19-cv-06691-JMA-GRB   Document 1-1   Filed 12/12/19   Page 16 of 78 PageID #: 21

# EXHIBIT "A"

Case 1:24-cv-06009-CBA Document 7 Filed 12/31/19 Page 17 of 78 PageID #: 22

World Business Lenders

100 Morris Street, 2nd Floor
Jersey City, New Jersey 07302
Phone: 212-293-8200

## Loan Product / Estimated Closing Cost Disclosure & Applicant Authorization

Business Name: Harbor Park Realty LLC          Applicant: Jay Adoni

Thank you for considering World Business Lenders, LLC ("WBL" or "LENDER") for your short term business financing needs. At WBL, we appreciate that many small businesses are unable to satisfy the standard underwriting requirements of banks and other finance companies. We also understand that small businesses often need more immediate access to working capital than can be made available from these institutions.

During the application process, WBL works with you to identify a short term business loan product with terms that reflect the risks associated with your business profile and the quality and character of the collateral to support your loan request. If your application is approved, the terms of the approval will be confirmed with you prior to scheduling a closing, and you will be afforded an opportunity to review the closing documents with your attorney, which we strongly encourage you to do. This document includes the following:

- **Section I.  General Loan Product Disclosure**
- **Section II.  Estimated Closing Costs**
- **Section III.  Collateral Information**
- **Section IV.  Payment Method Authorization**
- **Section V.  Fair Lending Notice**
- **Section VI.  E-Sign Disclosure and Consent Notice**
- **Section VII.  Authorization to Disclose Information**
- **Section VIII. Third Party Disclosure**

### Section I.  General Loan Product Disclosure

| | | |
|---|---|---|
| Term: | 6 months to 2 years | |
| Payment Frequency: | Daily / Weekly  (Weekly payments are available for qualified applicants upon approval) | |
| Loan Amount: | $ 50,000 to $ 2,000,000 | |
| Interest Per Dollar Borrowed*: | 6 months:  6% – 27% | 12 months: 11% – 57% |
| | 18 months: 17% – 91% | 24 months: 23% – 127% |
| | * Total interest payable through maturity per dollar borrowed | |
| Annual Interest Rate: | 40% - 140% | |
| Determination of Interest Rate: | Favorable rates are available to business applicants that exhibit:<br>• Strong revenues relative to loan payments<br>• Business owners with strong credit profiles<br>• Favorable business credit profile<br>• No other short term debt<br>• Highly liquid collateral<br>• No liens on collateral<br>• Strong collateral equity in excess of loan amount | Higher rates are required for business applicants that exhibit:<br>• Weak revenues relative to loan payments<br>• Business owners with weak credit profiles<br>• Weak business credit profile (e.g., judgments, liens)<br>• Multiple outstanding short term loans<br>• Loans currently in default<br>• Less liquid collateral<br>• Existing liens on collateral<br>• Weak equity in collateral |
| Prepayment Premium: | In most cases, a prepayment premium will be due when the loan is paid off early. The prepayment premium is the greater of (i) the remaining interest that would have been paid through maturity, or (ii) 15% of the unpaid principal balance of the loan at the time of prepayment. Partial prepayments are not permitted. | |
| Collateral Requirements: | Real estate collateral (commercial, residential or vacant land) is required. Vehicle and other collateral may be considered on a case by case basis. In the event of a default, the LENDER may seek to foreclose on the collateral securing the loan. | |
| Property Insurance: | Required for all real estate collateral when the loan amount is equal to or greater than $ 100,000. | |
| Personal Guarantee: | Required of all owners of the business.  In some cases, the guarantee of affiliates may be required. | |
| Processing Fee: | $795, only collected at the time of funding. | |
| Costs**: | Each application requires a deposit for the cost of valuation and title reports covering the collateral supporting the loan request. These costs will vary based upon the type, quantity and location of collateral. The balance of any valuation and title costs will be collected at funding.<br><br>**See Section II for Estimated Closing Costs | |
| Legal Opinion to be Provided***: | Loan Amount < $ 200,000 – Legal opinion may be required depending upon circumstances<br>Loan Amount $ 200,000 - $ 349,000 – See Form Attached Exhibit A<br>Loan Amount > $ 350,000 – See Form Attached as Exhibit B<br>*** For loan amounts greater than $200,000, the borrower is required to provide a legal opinion that includes standard representations associated with commercial loans, including due authorization, enforceability under state law, and absence of contractual or regulatory matters that would prevent performance of the loan. | |

Applicant Initials: _____

V.7_10.2018

Case 2:19-cv-06669-WFK-ARL Document 1-1 Filed 12/25/19 Page 18 of 78 PageID #: 23

## Section II. Estimated Closing Costs

*Note: Where more than 2 states are involved for a residential or commercial property type, use an additional form.

| | # Parcels/Units | | | # Parcels/Units | |
|---|---|---|---|---|---|
| Residential RE State 1  New York | 1 | Commercial RE State 1  Select State | 0 | Prequalified Loan Amount | $ 110,000.00 |
| Residential RE State 2  Select State | 0 | Commercial RE State 2  Select State | 0 | Date | |

| Item | | Total Estimated Closing Costs | | Paid in Advance | | At Closing |
|---|---|---|---|---|---|---|
| | # Parcels/Units | Average Cost Per Unit | Estimated Closing Costs | Deposit Per Unit | Due Prior to Closing | Balance Due at Closing |
| **I.a Real Estate Collateral** | | | | | | |
| Residential Title 1 | 1 | $ 1,665.00 | $ 1,665.00 | $ 290.00 | $ 290.00 | $ 1,375.00 |
| Residential Title 2 | 0 | $ 0.00 | $ 0.00 | $ 290.00 | $ 0.00 | $ 0.00 |
| Commercial Title 1 | 0 | $ 0.00 | $ 0.00 | $ 365.00 | $ 0.00 | $ 0.00 |
| Commercial Title 2 | 0 | $ 0.00 | $ 0.00 | $ 365.00 | $ 0.00 | $ 0.00 |
| **I.b High-Cost State* Add-on** | | | | | | |
| Residential Title 1 | 1 | $ 1,650.00 | $ 1,650.00 | | | $ 1,650.00 |
| Residential Title 2 | 0 | $ 0.00 | $ 0.00 | | | $ 0.00 |
| Commercial Title 1 | 0 | $ 0.00 | $ 0.00 | | | $ 0.00 |
| Commercial Title 2 | 0 | $ 0.00 | $ 0.00 | | | $ 0.00 |
| **II. Valuations** | | | | | | |
| Residential | 1 | $ 300.00 | $ 300.00 | $ 300.00 | $ 300.00 | $ 0.00 |
| Commercial | 0 | $ 1,200.00 | $ 0.00 | $ 1,200.00 | $ 0.00 | $ 0.00 |
| **iii. Notary Fee** ( Per Closing Location) | 1   (1) | $ 300.00 **(2)** | $ 300.00 | | | $ 300.00 |
| **IV. Processing Fee** | 1 | $795.00 | $795.00 | N/A | N/A | $ 795.00 |
| **V. Additional Fees / Adjustments** | $ 0.00 | N/A | $ 0.00 | N/A | $ 0.00 | $ 0.00 |
| **VI. Origination Fee** | $ 0.00 | | $ 0.00 | | | $ 0.00 |
| **Total Costs** | | | $ 4,710.00 | | $ 590.00 | $ 4,120.00 |

(1) Single charge unless documents notarized at more than one location, or if more than one title policy is required
(2) Includes Courier Fee of $15

Note: The above is only an estimate of total closing costs. Title costs, in particular, may vary based upon the applicable state and county  as well as the complexity of title. Please be advised this estimate does not include any service to remove outstanding liens, such as, for example, open judgments, property taxes and any related escrow of funds which may be required by underwriting to facilitate the loan.

*"High Cost States" are Alabama, Florida, Georgia, Kansas, Maryland, Minnesota, New York, Oklahoma, Tennessee, and Virginia

Applicant Initials: _____

V.7_10.2018

INDEX NO. 620617/2019
RECEIVED NYSCEF: 10/18/2019

# EXHIBIT "B"

Case 2:19-cv-06960-PKC-AYS Document 4-1 Filed 12/18/19 Page 20 of 78 PageID #: 25
DocuSign Envelope ID: 8F73F9B4-587D-4B45-B836-D3096DFB87D5
THIS IS A COPY
The Authoritative Copy of this record is held at na2.docusign.



## BUSINESS PROMISSORY NOTE AND SECURITY AGREEMENT

**BORROWER: Harbor Park Realty, LLC**

**PRINCIPAL (including processing fees): $90,000.00**

**DATE: 2/22/2019**

1. **PROMISE TO PAY:** Harbor Park Realty, LLC ("Borrower"), a(n) New York limited liability company, with its principal place of business located at 1019 Fort Salonga Rd. Ste 112, Northport, New York, 11768, does hereby promise to pay to the order of Axos Bank®, its successors and/or assigns ("Lender") at its offices located at 9205 West Russell Road, Suite 400, Las Vegas, NV 89148, or at such other location or in such other manner as designated by Lender, the sum of NINETY THOUSAND DOLLARS AND ZERO CENTS ($90,000.00) ("Principal") plus interest at the daily interest rate set forth below in Section 2 in accordance with the payment schedule set forth below in Section 3. This Business Promissory Note and Security Agreement ("Loan Agreement") is approved, and the proceeds are disbursed, by Lender in **Nevada. The business loan represented by this Loan Agreement is a higher cost loan than business loans which may be available through other sources. Before signing this Loan Agreement, Borrower should fully consider all costs and fees associated with this business loan.**

2. **INTEREST RATE:** The unpaid Principal shall bear interest at the rate of **0.364520547945%** per day until paid in full.

3. **PAYMENT SCHEDULE/APPLICATION OF PAYMENTS:** Borrower shall repay the Principal and interest commencing on 2/27/2019 and on each Business Day thereafter until 8/22/2019 with each daily payment equaling $971.61 followed by a final payment of $971.48 on 8/23/2019, when any remaining outstanding Principal, interest and other unpaid charges shall be due and payable in full. **"Business Day"** means any Monday through Friday, except Federal Reserve holidays. The period commencing on 2/27/2019 and ending on 8/23/2019 is referred to as the **"Repayment Period."**

   All payments shall be made by automatic ACH debit from the "Designated Checking Account" set forth in the Business Loan Authorization Agreement for Direct Deposit (ACH Credit) and Direct Payments (ACH Debits) given by Borrower to Lender or pursuant to an alternative payment method prescribed by Lender, and Borrower shall maintain balances in the Designated Checking Account sufficient to make each daily payment due under this Loan Agreement.

   Payments shall be applied on the date received first to late charges and other charges due under this Loan Agreement, then to unpaid accrued interest, and then to Principal.

4. **VOLUNTARY PREPAYMENT AND PREPAYMENT PREMIUM:** Borrower may prepay the unpaid Principal in full at any time, but may not make partial prepayments (except as permitted by applicable law). Any such prepayment of the unpaid Principal shall be accompanied by a prepayment premium equal to the greater of **(a)** fifteen percent (15%) of the amount of the unpaid Principal as of the date of such prepayment and **(b)** the aggregate amount required to be repaid by Borrower to Lender during the Repayment Period reduced by the sum of **(i)** the aggregate amount of any payments made by Borrower to Lender pursuant to Section 3 above before such prepayment and **(ii)** the amount of the unpaid Principal as of the date of such prepayment. This prepayment premium is in addition to any and all interest calculated and accrued on the unpaid Principal as of the date of such prepayment in accordance with Section 2 above together with all other amounts then due and payable under this Loan Agreement. No prepayment is permitted unless all outstanding charges are paid in full as of the date of prepayment. If Borrower desires to prepay, Borrower shall send a written request to **WBLPayoff@wbl.com**. In addition, Borrower may contact Lender's Servicing Agent at **101 Hudson St., 33rd Floor, Jersey City, NJ 07302** or at **1-800-432-9359** and Lender's Servicing Agent shall provide Borrower with the amount of the unpaid Principal, prepayment premium, and any other amounts due under the terms of the Loan Agreement as of a date designated by Borrower. For the avoidance of doubt, as permitted under applicable law, if the Obligations (as defined below) have been accelerated on the happening of an Event of Default (as defined below), payment of Principal and interest shall be deemed a prepayment for purposes of this Section 4 and shall be accompanied by a prepayment premium.

5. **RETURNED PAYMENT CHARGE:** Borrower will pay a charge of **thirty-five dollars ($35.00)** ("NSF Charge") in connection with any payment by check or electronic transfer that is returned unpaid because of an insufficient balance in the Designated Checking Account or otherwise.

6. **SECURITY INTEREST:** Borrower grants to Lender a security interest in and to any and all property as described below in this Section 6 to secure payment of all debts, obligations and liabilities of Borrower to Lender evidenced by this Loan Agreement or any other financing agreement with Lender with respect to which the Lender's servicing agent is the same as the Servicing Agent hereunder (including, but not limited to, Principal, interest and collection costs incurred in connection

Case 2:14-cv-0000-WWW-XXX Document 8/-1 Filed 12/32/19 Page 21 of 78 PageID #: 26
DocuSign Envelope ID: 8F73F9B4-587D-4B45-B836-D3096DFB87D5
THIS IS A COPY
The Authoritative Copy of this record is held at na2.docusign.

**aXOS** BANK

with this Loan Agreement and/or any other documents or instruments now or hereafter executed in connection with this Loan Agreement or any other financing arrangement with Lender with respect to which the Lender's servicing agent is the same as the Servicing Agent hereunder, the "Obligations"). This is a continuing security interest and will continue in effect as long as any Obligations remain outstanding. The collateral includes the property purchased with the proceeds of this Loan Agreement described on Schedule A attached to and made a part of this Loan Agreement ("Purchase Money Collateral"), the vehicles and other personal property described on Schedule B attached to and made a part of this Loan Agreement ("Specific Collateral") and all other personal property now owned or hereafter acquired by Borrower (which, along with Purchase Money Collateral and Specific Collateral, is collectively referred to as "Collateral"), including, but not limited to, all goods (except consumer goods), farm products, inventory, equipment, furniture, money, instruments, accounts, accounts receivable, contract rights, documents, chattel paper, general intangibles, including, but not limited to, all products and proceeds of Collateral and all additions and accessions to, replacements of, insurance proceeds of, and documents covering Collateral, all property received wholly or partly in trade or exchange for Collateral, all leases of Collateral and all rents, revenues, issues, profits and proceeds arising from the sale, lease encumbrance, collection, or any other temporary or permanent disposition, of the Collateral or any interest therein. Borrower agrees that Lender may file any financing statement, lien entry form or other document Lender requires in order to perfect, amend or continue Lender's security interest in the Collateral and Borrower agrees to cooperate with Lender as may be necessary to accomplish said filing and to do whatever Lender deems necessary to protect Lender's security interest in the Collateral. Borrower shall ensure that Lender is named as the only lien holder on the titles to the motor vehicles listed on Schedule B to this Loan Agreement as of the date of this Loan Agreement (or the nearest subsequent date as permitted under applicable law, rule or regulation).

Borrower shall maintain the Collateral in good condition and repair and not permit its value to be impaired; keep the Collateral free from all liens, encumbrances and security interests (other than those created or expressly permitted by this Loan Agreement); defend the Collateral against all claims and legal proceedings by persons other than Lender; pay and discharge when due all taxes, license fees, levies and other charges upon the Collateral; not sell, lease or otherwise dispose of the Collateral or permit it to become a fixture or an accession to other goods, except as specifically authorized by Lender in writing; and not permit the Collateral to be used in violation of any applicable law, rule, regulation or policy of insurance.

Borrower shall pay all expenses and, upon request, take any action reasonably deemed advisable by Lender to preserve the Collateral or to establish, determine priority of, perfect, continue perfected, terminate and/or enforce Lender's interest in the Collateral or rights under this Loan Agreement and, further, Borrower authorizes Lender, with full power of substitution, to execute in Borrower's name any documents necessary to perfect, amend or to continue Lender's interest in the Collateral or rights under this Loan Agreement or to demand termination of filings of other secured parties. Lender has no duty to protect, insure or realize upon the Collateral. Loss of or damage to the Collateral shall not release Borrower from any of the Obligations.

7. **FOR BORROWERS OR COLLATERAL IN LOUISIANA ONLY:**

    (a) Foreclosure. If Borrower is domiciled in, or Collateral is located in, Louisiana, on the happening of an Event of Default, Lender shall have the right to commence appropriate foreclosure proceedings against the Collateral and against Borrower.

    (b) Seizure and Sale of Collateral. If Lender elects to commence appropriate Louisiana foreclosure proceedings under the Loan Agreement, Lender may cause the Collateral, or any part or parts thereof, to be immediately seized and sold, whether in term of court or in vacation, under ordinary or executory process, in accordance with applicable Louisiana law, to the highest bidder for cash, with or without appraisement, and without the necessity of making additional demand upon or notifying Borrower or placing Borrower in default, all of which are expressly waived.

    (c) Executory Process. For purposes of foreclosure under Louisiana executory process procedures, Borrower confesses judgment and acknowledges to be indebted to Lender, up to the full amount of the Obligations, in Principal, interest, prepayment charges, NSF Charges, and any other unpaid costs and charges authorized by the Loan Agreement, reasonable attorneys' fees and all costs of collection. Borrower further confesses judgment and acknowledges to be indebted unto and in favor of Lender in the amount of any additional advances that Lender may make on Borrower's behalf pursuant to the Loan Agreement, together with interest thereon. To the extent permitted under applicable Louisiana law, Borrower additionally waives the following:

        (i) the benefit of appraisal as provided in Articles 2332, 2336, 2723, and 2724 of the Louisiana Code of Civil Procedure, and all other laws with regard to appraisal upon judicial sale;

        (ii) the demand and three (3) days' delay as provided under Articles 2639 and 2721 of the Louisiana Code of Civil Procedure;

SBStPP
Revision Date: August 2018.a

DocuSign Envelope ID: 8F73F9B4-587D-4B45-B836-D3096DFB87D5

THIS IS A COPY

The Authoritative Copy of this record is held at na2.docusign.



(iii) the notice of seizure as provided under Articles 2293 and 2721 of the Louisiana Code of Civil Procedure;

(iv) the three (3) days' delay provided under Articles 2331 and 2722 of the Louisiana Code of Civil Procedure; and

(v) all other benefits provided under Articles 2331, 2722 and 2723 of the Louisiana Code of Civil Procedure and all other Articles not specifically mentioned above.

(d) **Keeper.** Should any or all of the Collateral be seized as an incident to an action for the recognition or enforcement of this Loan Agreement, by executory process, sequestration, attachment, writ of *fieri facias* or otherwise, Borrower hereby agrees that the court issuing any such order shall, if requested by Lender, appoint Lender, or any agent designated by Lender or any person or entity named by Lender at the time such seizure is requested, or any time thereafter, as "Keeper" of the Collateral as provided under La. R.S. 9:5136, *et seq.* Such a Keeper shall be entitled to reasonable compensation. Borrower agrees to pay the reasonable fees of such Keeper, which compensation to the Keeper shall also be secured by this Loan Agreement.

8. **REPRESENTATIONS:** As of the date hereof, the Borrower hereby represents to the Lender that:

(a) Borrower is the owner of or is acquiring the Purchase Money Collateral free of all liens, encumbrances and security interests (except Lender's security interest), and is the owner of all other Collateral free of all liens, encumbrances and security interests, except Lender's security interest and any security interests listed on Schedule C attached and made a part of this Loan Agreement;

(b) **the proceeds of this Loan Agreement will be used for business purposes only, and not for personal, consumer, family or household purposes or to purchase personal, consumer, family or household goods. Borrower understands Lender is relying on the accuracy of this representation in disbursing the loan proceeds and that Borrower's agreement not to use the proceeds of this Loan Agreement for personal, consumer, family or household purposes or to purchase personal, consumer, family or household goods means that certain important duties imposed upon entities making loans for consumer/personal purposes, and certain important rights conferred upon consumers, pursuant to federal or state law will not apply to this Loan Agreement, or any other document or instrument given to Lender in connection with or related to this Loan Agreement. Borrower also understands that Lender will be unable to confirm whether the proceeds of this Loan Agreement will be used for business purposes only. Borrower acknowledges and agrees that a breach by Borrower of the provisions of this subsection 8(b) will not affect Lender's right to**

(i) **enforce Borrower's promise to pay for all amounts owed under this Loan Agreement, regardless of the purpose for which the proceeds of this Loan Agreement are in fact obtained or**

(ii) **use any remedy legally available to Lender, even if that remedy would not have been available had the proceeds of this Loan Agreement been used for consumer purposes;**

(c) the proceeds of this Loan Agreement will not, directly or indirectly, be used for any purposes which would violate any applicable law, rule or regulation;

(d) the Collateral will be kept at Borrower's address set forth above in Section 1 or as indicated on Schedule D attached to and made a part of this Loan Agreement;

(e) Borrower's name in Section 1 above is its exact name on its organizing and/or registered documents, if any, and Section 1 above accurately identifies Borrower's jurisdiction of organization and principal place of business. Borrower shall immediately advise Lender in writing of any change in Borrower's name or address as set forth above in Section 1;

(f) Borrower is duly organized, validly existing, in good standing under the law of the jurisdiction in which it is organized, is in compliance with all applicable laws, rules and regulations, and has all licenses and authorizations necessary to carry on its business as now being conducted; Borrower has the full power and authority to execute, deliver and perform all transactions contemplated by this Loan Agreement and the performance of and compliance with the terms of this Loan Agreement will not violate the Borrower's organizational documents or constitute a default of any contract, agreement or other instrument to which Borrower is a party;

(g) Borrower has duly authorized the execution, delivery and performance of this Loan Agreement and has duly executed and delivered this Loan Agreement, and this Loan Agreement constitutes a legal, valid and binding obligation of the Borrower, enforceable against it in accordance with its terms;

SBStPP
Revision Date: August 2018.a

Case 2:19-cv-06970-JMA-GRB Document 1-1 Filed 12/12/19 Page 23 of 78 PageID #: 28
THIS IS A COPY
The Authoritative Copy of this record is held at na2.docusign.

**αχοs**
BANK

(h) there is no action, suit, proceeding or investigation pending or, to Borrower's knowledge, threatened against or affecting it or any of its assets before or by any court or other governmental authority which, if determined adversely to it, would have a material adverse effect on its financial condition, business or prospects, or the value of the Collateral (any of the foregoing, a "Litigation Event");

(i) except to the extent Borrower has advised Lender in writing, Borrower has not been notified by any of its lenders that it is in default under the terms of any of its credit agreements, nor has Borrower done, caused to be done, or failed to do any act or omission that would result in a default under any credit agreement; and

(j) no third party source of financing for Borrower's customers has discontinued, or threatened to discontinue providing financing to Borrower's customers.

(k) Borrower does not engage in the business of manufacturing, distributing or dispensing Cannabinoid, Marijuana Accessories or Marijuana Products (each as defined below in this subsection 8(k)), nor shall any property owned by Borrower (whether or not securing the business loan represented by this Loan Agreement) be utilized by Borrower, or any third party, for the purpose of manufacturing, distributing or dispensing any of the foregoing. As used in this Loan Agreement, (i) "Cannabinoid" means any of several compounds produced by marijuana plants that have medical and psychotropic effects; (ii) "Marijuana Accessories" means equipment, products, devices or materials of any kind that are intended or designed for use in planting, propagating, cultivating, growing, harvesting, manufacturing, compounding, converting, producing, processing, preparing, testing, analyzing, packaging, repackaging, storing, containing, ingesting, inhaling or otherwise introducing marijuana into the human body; and (iii) "Marijuana Products" means products that have been manufactured and contain marijuana or an extract from marijuana, including, without limitation, concentrated forms of marijuana and products composed of marijuana and other ingredients that are intended for use or consumption, including without limitation, edible products, beverages, topical products, ointments, oils and tinctures.

9. **COVENANTS:** Borrower hereby agrees that as long as any Obligations remain outstanding (whether Principal, interest or otherwise):

(a) Borrower shall promptly provide any financial information on request or permit an examination of its books and records to permit Lender to confirm Borrower's ability to pay its Obligations and all other financial obligations and Borrower shall maintain proper books and records in conformity with applicable law, rules and regulations;

(b) Borrower shall file all federal, state and local tax returns, and pay all related taxes when due;

(c) Borrower shall renew and maintain in full force and effect its legal existence and good standing under the laws of the jurisdiction of its organization;

(d) Borrower shall maintain insurance in at least such amounts and against at least such risks as are customary in the same general area in which Borrower conducts its business by entities engaged in similar businesses;

(e) Borrower shall promptly notify Lender in writing of any Litigation Event, Event of Default or any other event which could reasonably be anticipated to materially and adversely affect the Borrower's ability to repay its Obligations or materially affects the value of the Collateral; and

(f) Borrower shall **not** (i) merge or consolidate with another entity, which merger or consolidation results in less than fifty percent (50%) of the outstanding voting securities of the resulting entity being owned by the then existing holders of securities of the Borrower or (ii) transfer, assign, license, sell, lease or otherwise dispose of all or substantially all of its assets to a person that is not a wholly-owned subsidiary of the Borrower; provided, that the Borrower shall cause any such subsidiary to comply with the provisions of this clause (f); and

(g) Borrower shall not engage in the business of manufacturing, distributing or dispensing Cannabinoid, Marijuana Accessories or Marijuana Products, nor shall any property owned by Borrower (whether or not securing the business loan represented by this Loan Agreement) be utilized by Borrower, or any third party, for the purpose of manufacturing, distributing or dispensing any of the foregoing.

10. **DEFAULT:** On the happening of any of the following events (each an "Event of Default"):

(a) failure by Borrower to pay any payment required by this Loan Agreement when due;

(b) failure by Borrower to observe, perform, keep or abide by any term, covenant or condition contained in this Loan Agreement or any other document or instrument given to Lender in connection with or related to this Loan Agreement, including any real estate mortgage, security agreement or other agreement or document now or hereafter evidencing or creating any security for the payment of this Loan Agreement;

Case 2:24-cv-06009... Document 1 Filed 12/31/19 Page 24 of 78 PageID #: 29
DocuSign Envelope ID: 8F73F9B4-587D-4B45-B836-D3096DFB87D5
THIS IS A COPY.
The Authoritative Copy of this record is held at na2.docusign.



aXos

BANK

(c) the filing of a bankruptcy proceeding, assignment for the benefit of creditors, issuance of a judgment execution, garnishment or levy against, or the appointment of a representative of any kind for the commencement of any proceeding for relief from indebtedness by or against Borrower, or the Borrower shall not, or shall be unable to, or shall admit in writing its inability to, pay its debts as they become due;

(d) the happening of any event, which, in the reasonable judgment of Lender, adversely affects Borrower's ability or the ability of any guarantor of Borrower's Obligations under this Loan Agreement ("Guarantor") to repay Borrower's Obligations, or materially affects the value of the Collateral;

(e) any written representation, statement or warranty made to Lender by Borrower or any Guarantor is untrue when made;

(f) the occurrence of

(i) a default under any guaranty of Borrower's Obligations ("Guaranty"), or any other document or instrument given to Lender in connection with or related to this Loan Agreement, or

(ii) a default or an event of default under any other loan agreement or financing arrangement that Borrower may have with Lender or any other lender or financing source;

(g) any Guaranty is revoked or becomes unenforceable for any reason;

(h) Lender, upon examination of Borrower's financial information during the term of this Loan Agreement, becomes insecure in Borrower's ability to pay the Obligations,

then (A) in connection with an Event of Default pursuant to clause (c) above, the Obligations under this Loan Agreement or other agreements shall immediately become due and payable and Lender shall have the right to proceed to collect such Obligations under applicable law and enforce its rights under any Guaranty, and (B) in connection with any Event of Default other than pursuant to clause (c) above, Lender may, at its option declare the entire unpaid balance of all Obligations under this Loan Agreement or other agreements immediately due and payable, and shall have the right to proceed to collect such Obligations under applicable law and enforce its rights under any Guaranty. In addition, Lender may, in connection with the events described in clause (A) and (B) above, proceed against the Collateral and any other collateral securing any obligation to Lender as if said collateral secured the Obligations, as permitted under the applicable Uniform Commercial Code or any other applicable law. As permitted under the Uniform Commercial Code, Lender may take possession of Collateral without notice or hearing, which Borrower waives, and upon demand, Borrower shall assemble the Collateral and make it available to Lender at any convenient place designated by Lender. Lender's receipt of any payment after the occurrence of an Event of Default, whether or not the Obligations have been accelerated, shall not constitute a waiver of the default or of Lender's rights or remedies upon such default, including Lender's right to accelerate the unpaid balance of the Obligations and pursue collection thereof. Election by Lender to pursue or waive any remedy shall not exclude pursuit of any other remedy.

11. **INSPECTION OF COLLATERAL AND PLACE OF BUSINESS**: Lender and Lender's representatives and agents shall have the right at any reasonable time or times to inspect the Collateral wherever located and the interior and exterior of any Borrower place of business, and Borrower shall assist Lender and its representatives and agents in making any such inspection. During an inspection of any Borrower place of business, Lender or Lender's representatives and agents may examine, among other things, whether Borrower (i) has a place of business that is separate from any personal residence, (ii) is open for business, (iii) has sufficient inventory and/or staff to conduct Borrower's business and (iv) has one or more credit card terminals or point of sale systems if Borrower processes credit card transactions. When performing an inspection, Lender or Lender's representatives and agents may photograph the interior and exterior of any Borrower place of business, including any signage. Any photograph will become and remain the sole property of Lender and will be shared with Lender's employees, representatives and agents. Borrower grants Lender the irrevocable and permanent right to display and share any photograph in all forms, including composite and modified representations, for all purposes, with Lender's employees, representatives and agents. Borrower agrees to reimburse Lender for the cost of the inspections described in this Section 11.

12. **EVALUATION OF CREDIT**: Borrower authorizes Lender to obtain business and personal credit bureau reports in Borrower's name, at any time and from time to time for purposes of deciding whether to approve the requested business loan or for any update, renewal, extension of credit or other lawful purpose. Upon Borrower's request, Lender will advise Borrower if Lender obtained a credit report and Lender will give Borrower the credit bureau's name and address. Borrower agrees to submit current financial information, a new credit application, or both, in Borrower's name at any time promptly upon Lender's request.

DocuSign Envelope ID: 8F73F9B4-587D-4B45-B836-D3096DFB87D5
THIS IS A COPY
The Authoritative Copy of this record is held at na2.docusign.



13. **ATTORNEYS' FEES, COLLECTION COSTS AND POST-JUDGMENT RATE OF INTEREST:** In the event Lender retains counsel with respect to enforcement of its rights under this Loan Agreement or any other document or instrument given to Lender, Borrower agrees to pay all expenses of Lender in enforcing its rights to collect the Obligations or in taking possession, holding, preparing for disposition, and disposing of the Collateral, including Lender's reasonable attorneys' fees (whether or not an action is commenced and whether or not in the court of original jurisdiction, appellate court, bankruptcy court or otherwise) and all costs of collection of any judgment and any costs of appeal. In the event this Loan Agreement is brought to a judgment, interest shall accrue at the interest rate set forth in Section 2 above until the judgment is satisfied, except as prohibited by applicable law.

14. **SALE OF LOAN AGREEMENT:** This Loan Agreement, or an interest in this Loan Agreement, together with the rights to the Collateral, may be sold, assigned, transferred or conveyed by Lender one or more times.

15. **INDEMNIFICATION:** Except for Lender's willful misconduct, Borrower will indemnify and save Lender harmless from all loss, costs, damage, liability or expenses (including, without limitation, court costs and reasonable attorneys' fees) that Lender may sustain or incur by reason of defending or protecting Lender's security interest or the priority thereof or enforcing its rights to collect the Obligations, or in the prosecution or defense of any action or proceeding concerning any matter growing out of or in connection with this Loan Agreement and/or any other documents or instruments now or hereafter executed in connection with this Loan Agreement and/or the Obligations and/or the Collateral. This indemnity shall survive the repayment of the Obligations and the termination of this Loan Agreement.

16. **MISCELLANEOUS:**

    (a) Delay or failure of Lender to exercise any of its rights under this Loan Agreement shall not be deemed a waiver thereof. No waiver of any condition or requirement shall operate as a waiver of any other or subsequent condition or requirement.

    (b) This Loan Agreement may not be modified orally, and may be modified only upon written agreement signed by Lender and Borrower.

    (c) Lender is an FDIC insured, federal savings association and this Loan Agreement is approved, and the proceeds are disbursed, by Lender in Nevada. CONSEQUENTLY, THIS LOAN AGREEMENT WILL BE GOVERNED BY FEDERAL LAW APPLICABLE TO AN FDIC INSURED INSTITUTION AND TO THE EXTENT NOT PREEMPTED BY FEDERAL LAW, THE LAWS OF THE STATE OF NEVADA WITHOUT REGARD TO CONFLICT OF LAW RULES. The legality, enforceability and interpretation of this Agreement and the amounts contracted for, charged and reserved under this Loan Agreement will be governed by such laws.

    (d) Borrower and Lender agree that any action or proceeding to enforce any rights or obligations arising out of this Loan Agreement shall be commenced in the state (or commonwealth, as the case may be) of Borrower's address set forth in Section 1 above ("Borrower's State") and Borrower waives personal service of process and agrees that a summons and complaint commencing an action or proceeding in any such court shall be properly served and confer personal jurisdiction if served by registered or certified mail to Borrower at the address specified by Borrower above in Section 1, or as otherwise provided by the laws of the Borrower's State or the United States of America. Borrower and Lender agree that venue is proper in such courts and each party hereto waives, to the full extent permitted by applicable law, any defense of an inconvenient forum to the extent any action or proceeding is brought in such courts.

    (e) Without affecting the liability of Borrower or any Guarantor, Lender may accept partial payments marked "in full" or otherwise, release or impair any Collateral or agree not to sue any party liable on this Loan Agreement without waiving any of its rights hereunder.

    (f) Presentment, protest, demand and notice of dishonor are waived.

    (g) Without affecting the liability of any Guarantor, Lender may from time to time, without notice, renew or extend the time for payment.

    (h) Borrower expressly agrees that the interest rate set forth above in Section 2 is appropriate under the circumstances and shall be the applicable rate at which unpaid Principal (and Costs, as defined below) shall bear interest under this Loan Agreement, notwithstanding any rate of interest prescribed by statute from time to time; provided, however, if fulfillment of any provisions of this Loan Agreement or any other instrument securing the Obligations is subject to a law that sets maximum interest rates or other charges, and that law is finally interpreted so that the interest or other fees collected or to be collected in connection with this Loan Agreement exceed the permitted limits, then

        (i) any such charge will be reduced by the amount necessary to reduce the charge to the permitted limit;

SBStPP
Revision Date: August 2018.a

THIS IS A COPY
The Authoritative Copy of this record is held at na2.docusign.



(ii) any sums already collected from Borrower that exceed the permitted limits will be refunded or credited to Borrower; and

(iii) the obligations created by this Loan Agreement shall be fulfilled to the limit of such validity as is permitted by law.

(i) Borrower shall keep the Collateral and Lender's interest in it insured under policies with such provisions, for such amounts and by such insurers as shall be satisfactory to Lender from time to time, and shall furnish evidence of such insurance satisfactory to Lender upon request. Borrower assigns (and directs any insurer to pay) to Lender the proceeds of all such insurance and any premium refund and authorizes Lender to endorse in the name of Borrower any instrument for such proceeds or refunds and, at the option of Lender, to apply such proceeds and refunds to any unpaid balance of the Obligations, whether or not due, and/or to restoration of the Collateral, returning any excess to Borrower. Lender is authorized, in the name of Borrower or otherwise, to make, adjust and/or settle claims under any insurance on the Collateral, or cancel the same after the occurrence of an Event of Default.

(j) If Borrower fails to perform any of Borrower's duties set forth in this Loan Agreement or in any evidence of or document relating to the Obligations, Lender is authorized, in Borrower's name or otherwise, to take any such action, including, without limitation, signing Borrower's name or paying any amount so required, and the cost ("Cost") shall be one of the Obligations secured by this Loan Agreement and shall be payable by Borrower upon Lender's demand with interest at the interest rate set forth above in Section 2 from the date of payment by Lender.

(k) Borrower releases Lender from any liability for any act or omission relating to the Obligations, the Collateral or this Loan Agreement, except Lender's willful misconduct.

(l) Invalidity or unenforceability of any provision of this Loan Agreement shall not affect the validity or enforceability of any other provision.

(m) The terms of this Loan Agreement shall be binding upon Borrower and its permitted successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

(n) Borrower acknowledges that a broker may have received compensation in connection with this Loan Agreement.

(o) Any of the Borrower, Lender or a Guarantor may choose to arbitrate any or all disputes and claims arising out of or relating to this Loan Agreement, the Guaranty or any other related document. A claim includes matters arising as an initial claim, counter-claim, cross-claim, third-party claim, or otherwise. If the Borrower, Lender or a Guarantor chooses to litigate any dispute or claim arising out of or relating to this Loan Agreement, the Guaranty or any related document through a judicial action, the decision to litigate shall not be deemed a waiver of arbitration, and if such judicial action is contested, any party may thereafter invoke its arbitration rights at any time before any discovery is taken in the judicial action. If the Borrower, Lender or a Guarantor seeks to have a dispute resolved by arbitration, that party must first send to the other party(ies) by certified mail, a written Notice of Intent to Arbitrate. If Borrower, Lender or a Guarantor do not reach an agreement to resolve the claim within 10 days after the Notice is received, any party may commence an arbitration proceeding with the American Arbitration Association ("AAA"). Lender will promptly reimburse Borrower or the Guarantor any arbitration filing fee, however, if both the Borrower and the Guarantor must pay arbitration filing fees, Lender will only reimburse the Borrower's arbitration filing fee and, except as provided in the next sentence, the Lender will pay all arbitration administration and arbitrator fees. If the arbitrator finds that either the substance of any claim raised by Borrower or a Guarantor or the relief sought by Borrower or a Guarantor is improper or not warranted, as measured by the standards set forth in Federal Rule of Procedure 11(b), then Lender will pay the administration or arbitrator fees only if required by the AAA Rules. If the arbitrator grants relief to the Borrower or a Guarantor that is equal to or greater than the value of the relief requested by the Borrower or a Guarantor in the arbitration, Lender shall reimburse Borrower or the Guarantor, as applicable, for that party's reasonable attorneys' fees and expenses incurred for the arbitration. TO THE EXTENT NOT PROHIBITED BY APPLICABLE LAW, BORROWER AND LENDER AGREE THAT BY ENTERING INTO THIS LOAN AGREEMENT, EACH IS WAIVING THEIR RIGHT TO A TRIAL BY JURY OF ANY CLAIM OR CAUSE OF ACTION BASED UPON, ARISING OUT OF OR RELATED TO THIS LOAN AGREEMENT AND ALL OTHER DOCUMENTATION EVIDENCING THE OBLIGATIONS, IN ANY LEGAL ACTION OR PROCEEDING. BORROWER AND LENDER MAY BRING CLAIMS AGAINST ANY OTHER PARTY ONLY IN THEIR INDIVIDUAL CAPACITY AND NOT AS A PLAINTIFF REPRESENTATIVE OR CLASS MEMBER IN ANY PURPORTED REPRESENTATIVE OR CLASS PROCEEDING; PROVIDED, THAT, BORROWER MAY BRING A CLAIM FOR PUBLIC INJUNCTIVE RELIEF TO THE EXTENT REQUIRED BY APPLICABLE LAW. Further, Borrower and Lender agree that the arbitrator may not consolidate proceedings for

NYSCEF DOC. NO. 3          Case 2:19-cv-06609    Document 1    Filed 11/25/19    Page 27 of 78 PageID #: 32
THIS IS A COPY
The Authoritative Copy of this record is held at na2.docusign.

**αχos** BANK

more than one person's claims, and may not otherwise preside over any form of a representative or class proceeding, and if this specific provision is found unenforceable, then the entirety of this arbitration clause shall be null and void. Any award by the individual arbitrator shall be final and binding, except for any appeal right under the Federal Arbitration Act ("FAA"), and may be entered and enforceable as a judgment in any court of competent jurisdiction, including as a judgment that permits Lender to initiate or complete the exercise of its remedies against, or its realization or foreclosure upon, any collateral or security provided for the benefit of Lender. This arbitration provision is made pursuant to a transaction in interstate commerce, and shall be governed by the FAA at 9 U.S.C. section 1 *et seq.*

(p) In order to ensure a high quality of service for Lender's customers, Lender may monitor and/or record telephone calls between Borrower and Lender's employees. Borrower acknowledges that Lender may do so and agrees in advance to any such monitoring or recording of telephone calls.

(q) Borrower authorizes Lender and Lender's affiliates, agents and independent contractors, including any loan servicers or collateral agents to contact Borrower at any telephone number Borrower provides to Lender or from which Borrower places a call to Lender, or any telephone number where Lender believes it may reach Borrower, using any means of communication, including, but not limited to, calls or text messages to mobile, cellular, wireless or similar devices or calls or text messages using an automated telephone dialing system and/or artificial voices or prerecorded messages, even if Borrower incurs charges for receiving such communications. Lender and Lender's affiliates, agents and independent contractors, including, but not limited to, any loan servicers or collateral agents, may use any other medium not prohibited by law, including, but not limited to, mail, e-mail and facsimile, to contact Borrower. Borrower expressly consents to conduct business by electronic means.

(r) [reserved].

(s) This Loan Agreement may be executed in one or more counterparts, each of which counterparts shall be deemed to be an original, and all such counterparts shall constitute one and the same instrument. For purposes of the execution of this Loan Agreement, electronic or fax signatures shall be treated in all respects as original signatures.

(t) This Loan Agreement, including, without limitation, all Schedules attached hereto and together with all related agreements, instruments and other documents, including, without limitation, any Guaranty and any financing and continuation statements, lien entry forms, mortgages, deeds of trust and other documents filed or recorded in order to perfect, amend or continue Lender's security interest in and lien on the Collateral or any other personal property or real property, in each case, approved by Lender in connection with the business loan and other Obligations evidenced by this Loan Agreement (collectively, the "Loan Documents"), constitutes the entire understanding and agreement between or among Borrower, Lender and any Guarantor, as applicable, and supersedes all other prior discussions, negotiations, commitments, agreements and understandings, written or oral, between or among said parties, as applicable, in each case, with respect to the subject matter of this Loan Agreement and the other Loan Documents. For the avoidance of doubt, no promises, representations or obligations exist between or among said parties respecting the subject matter of this Loan Agreement and the other Loan Documents except as provided herein and therein, and Borrower has not entered into this Loan Agreement or the other Loan Documents in reliance upon any representation, warranty or undertaking of Lender or any other person or entity.

[Remainder of page is blank. Signature page follows.]

Case 2:19-cv-06099-JMA-GRB    Document 14    Filed 12/12/19    Page 28 of 78 PageID #: 33
DocuSign Envelope ID: 8F73F9B4-587D-4B45-B836-D3096DFB87D5
THIS IS A COPY
The Authoritative Copy of this record is held at na2.docusign.



BEFORE SIGNING THIS LOAN AGREEMENT, BORROWER READ AND UNDERSTOOD ALL OF THE PROVISIONS HEREOF. AFTER DUE CONSIDERATION AND THE OPPORTUNITY TO CONSULT WITH OTHER LENDERS (OR OTHER FINANCING SOURCES) AND WITH AN ATTORNEY, ACCOUNTANT OR OTHER COMPETENT PROFESSIONAL OF ITS CHOICE, BORROWER KNOWINGLY, WILLFULLY AND VOLUNTARILY AGREES TO THE TERMS OF THIS LOAN AGREEMENT.

BORROWER ACKNOWLEDGES RECEIPT OF A FULLY COMPLETED AND EXECUTED VERSION OF THIS LOAN AGREEMENT.

BORROWER: Harbor Park Realty, LLC

Signature: *Jacob V. Adoni*

Printed Name: Jacob V. Adoni

Title: Manager

Date: 2/22/2019

## Notary Acknowledgement

STATE/COMMONWEALTH OF _____ )
                                        ) ss.
COUNTY OF _____ )

On the _____ day of _____ in the year _____, before me, the undersigned, a notary public in and for said State/Commonwealth, personally appeared _____, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within Business Promissory Note and Security Agreement and acknowledged to me that she/he executed the same in her/his capacity as _____ of Harbor Park Realty, LLC and that by her/his signature on the Business Promissory Note and Security Agreement, the individual, or the person upon behalf of which the individual acted, executed the Business Promissory Note and Security Agreement.

_____
Notary Public

My commission expires: _____

SBStPP
Revision Date: August 2018.a

DocuSign Envelope ID: 8F73F9B4-587D-4B45-B836-D3096DFB87D5

THIS IS A COPY
The Authoritative Copy of this record is held at na2.docusign.



## SCHEDULE A

## PURCHASE MONEY COLLATERAL

[NONE]



Case 2:19-cv-06927-JMA-GRB   Document 1-3   Filed 12/12/19   Page 30 of 78 PageID #: 35

DocuSign Envelope ID: 8F73F9B4-587D-4B45-B836-D3096DFB87D5

THIS IS A COPY
The Authoritative Copy of this record is held at na2.docusign.

aXos
BANK



**SCHEDULE B**

**SPECIFIC COLLATERAL**

[NONE]

Case 2:19-cv-06692-NW-GRB Document 23 Filed 12/15/19 Page 31 of 78 PageID #: 36
DocuSign Envelope ID: 8F73F9B4-587D-4B45-B836-D3096DFB87D5
THIS IS A COPY
The Authoritative Copy of this record is held at na2.docusign.

axos BANK

**SCHEDULE C**

**PERMITTED LIENS**

[NONE]



DocuSign Envelope ID: 8F73F9B4-587D-4B45-B836-D3096DFB87D5

THIS IS A COPY
The Authoritative Copy of this record is held at na2.docusign.

**axos** BANK

**SCHEDULE D**

**ADDRESS OTHER THAN BORROWER'S ADDRESS AT WHICH COLLATERAL IS KEPT**

| Property Address |
|---|
| 19 Chestnut Hill Drive, Oyster Bay, NY 11771 |



DocuSign Envelope ID: 8F73F9B4-587D-4B45-B836-D3096DFB87D5

THIS IS A COPY
The Authoritative Copy of this record is held at na2.docusign.

Case 2:19-cv-06969-JMA-AYS   Document 1   Filed 12/12/19   Page 33 of 78 PageID #: 38



### CONTINUING GUARANTY, PERSONAL (Unlimited) ("Guaranty")

Dated: 2/22/2019

**GUARANTY.** For value received, and to induce **Axos Bank®**, its successors and/or assigns ("Lender"), with offices at 9205 West Russell Road, Suite 400, Las Vegas, NV 89148 to extend credit or grant or continue other credit accommodations to Harbor Park Realty, LLC ("Borrower"), the undersigned ("Guarantor," whether one or more) jointly and severally guarantees payment of the Obligations (defined below) when due or at the time any Borrower becomes the subject of bankruptcy or other insolvency proceedings. Except as provided below, "Obligations" means all debts, obligations and liabilities of Borrower to Lender arising out of credit previously granted, credit contemporaneously granted or credit granted in the future by Lender to Borrower. Obligations include (a) interest, (b) charges, (c) the amount of payments made either to Lender or to another for Lender's benefit, either by or on behalf of Borrower which are recovered from Lender by any party (including, but not limited to, a trustee, receiver or creditor) pursuant to applicable federal or state law, and (d) all costs, expenses and attorneys' fees ("Collection Expenses") at any time paid or incurred (whether before or after judgment) in endeavoring to collect all or part of the Obligations, or to realize upon (i) this Guaranty, (ii) any other guaranty of the Obligations, or (iii) any collateral securing any of the Obligations, including those Collection Expenses which are either (v) incurred in a successful defense or settlement of any counterclaim brought by Borrower or Guarantor or (w) incident to any action or proceeding involving Borrower or Guarantor brought pursuant to the United States Bankruptcy Code. Obligations do not include amounts owed in satisfaction of money loaned for the purpose of funding personal, consumer, family or household transactions. Guarantor grants to Lender a security interest and lien in any credit balance and other money now owing or hereafter owed Guarantor by Lender. Lender may, at any time after the occurrence of an event of default with respect to any Obligation, without prior notice or demand, set off against any such credit balance or other money any amount owing upon the Obligations. This Guaranty also is secured by all existing and future security agreements between Lender and Guarantor, and the titles to the motor vehicles listed on Exhibit 1 to this Guaranty, with respect to which, Guarantor shall ensure that Lender is named as the only lien holder on each such motor vehicle title as of the date of this Guaranty (or the nearest subsequent date as permitted under applicable law).

**WAIVER.** Guarantor expressly waives (a) notice of the acceptance of this Guaranty, the creation of any present or future Obligation, default under any Obligation, proceedings to collect from the Borrower or anyone else, (b) all diligence of collection and presentment, demand, notice and protest, (c) any right to disclosures from Lender regarding the financial condition of the Borrower or the enforceability of the Obligations, and (d) all other legal and equitable defenses of suretyship and impairment of collateral. No claim, including a claim for reimbursement, subrogation, contribution or indemnification which Guarantor may, as a guarantor of the Obligations, have against a co-guarantor of any of the Obligations or against the Borrower shall be enforced or any payment accepted until the Obligations are paid in full and no payments to or collections by Lender are subject to any right of recovery.

**CONSENT.** With respect to any of the Obligations, Lender may from time to time before or after revocation of this Guaranty without notice to Guarantor and without affecting the liability of Guarantor (a) surrender, release, impair, sell or otherwise dispose of any security or collateral for the Obligations, (b) release or agree not to sue any guarantor or surety, (c) fail to perfect its security interest in or realize upon any security or collateral, (d) fail to realize upon any of the Obligations or to proceed against any Borrower or any guarantor or surety, (e) renew or extend the time of payment, (f) increase or decrease the rate of interest or the amount of the Obligations, (g) accept additional security or collateral, (h) determine the allocation and application of payments and credits and accept partial payments, (i) apply the proceeds of disposition of any collateral for the Obligations to any obligation of Borrower secured by such collateral in such order and amounts as it elects, (j) determine what, if anything, may at any time be done with reference to any security or collateral, and (k) settle or compromise the amount due or owing or claimed to be due or owing from the Borrower, which settlement or compromise shall not affect Guarantor's liability for the full amount of the unpaid Obligations. Guarantor expressly consents to and waives notice of all of the above. Guarantor consents to and authorizes Lender to obtain business and personal credit bureau reports in Guarantor's name, at any time and from time to time for purposes of deciding whether to approve the business loan requested by Borrower or for any update, renewal, extension of credit to Borrower or other lawful purpose. Guarantor expressly authorizes Lender, agents or designees to report the payment history and loan performance to any national credit bureau for the purpose of inclusion of the related data in Guarantor's consumer credit report. Nothing contained in this Guaranty shall require Lender to first seek or exhaust any remedy against Borrower or to first proceed against any collateral or security for any of the Obligations or this Guaranty.

**PERSONS BOUND.** This Guaranty benefits and is enforceable by Lender, and its successors and assigns (collectively called "successors" and each a "successor"), and binds Guarantor, and Guarantor's heirs, personal representatives, successors and assigns. This Guaranty shall continue in full force and effect notwithstanding any change in structure or status of Borrower or Lender, whether by merger, consolidation, reorganization or otherwise, or assignment of this Guaranty to a successor Lender.

**ENTIRE AGREEMENT.** This Guaranty, together with all agreements, instruments and other documents between Lender and Guarantor or related to this Guaranty (collectively, "Guaranty Documents"), is intended by Guarantor and Lender as a final expression

SBStPP
Revision Date: August 2018.a

FILED: SUFFOLK COUNTY CLERK 10/18/2019 11:35 AM    INDEX NO. 620617/2019
NYSCEF DOC. NO. 3                                                    RECEIVED NYSCEF: 10/18/2019
Case 2:19-cv-06644-WFK-ARL    Document 24    Filed 12/31/19    Page 34 of 78 PageID #: 39
THIS IS A COPY
The Authoritative Copy of this record is held at na2.docusign.



DocuSign Envelope ID: 8F73F9B4-587D-4B45-B836-D3096DFB87D5

of this Guaranty and as a complete and exclusive statement of its terms, there being no condition to the full effectiveness of this Guaranty. For the avoidance of doubt, with respect to the subject matter of this Guaranty, the Guaranty Documents constitute the entire understanding and agreement between Lender and Guarantor and no promises, representations or obligations exist between Guarantor and Lender, except as provided herein, and Guarantor has not entered into this Guaranty in reliance upon any representation, warranty or undertaking of Lender or any other person or entity. This Guaranty may not be supplemented or modified, except in writing by Lender.

**REPRESENTATIONS.** Guarantor acknowledges and agrees that Lender (a) has not made any representations or warranties with respect to, (b) does not assume any responsibility to Guarantor for, and (c) has no duty to provide information to Guarantor regarding, the enforceability of any of the Obligations or the financial condition of the Borrower. **Guarantor has independently determined the creditworthiness of Borrower and the enforceability of the Obligations and until the Obligations are paid in full will independently and without reliance on Lender continue to make such determinations.**

**REVOCATION.** This is a continuing guaranty and shall remain in full force and effect until Lender receives written notice of its revocation signed by Guarantor or actual notice of the death of Guarantor. Upon revocation by written notice or actual notice of death, this Guaranty shall continue in full force and effect as to all Obligations contracted for or incurred before revocation and, as to them, Lender shall have the rights provided by this Guaranty as if no revocation had occurred. Any renewal, extension or increase in the interest rate of any such Obligation, whether made before or after revocation, shall constitute an Obligation contracted for or incurred before revocation. Obligations contracted for or incurred before revocation shall also include credit extended after revocation pursuant to commitments made before revocation. Revocation by one Guarantor shall not affect any of the liabilities or obligations of any other Guarantor and this Guaranty shall continue in full force and effect with respect to them.

**ARBITRATION.** Any of the Borrower, Lender or a Guarantor may choose to arbitrate any or all disputes and claims arising out of or relating to this Guaranty or any other related document. A claim includes matters arising as an initial claim, counter-claim, cross-claim, third-party claim, or otherwise. If the Borrower, Lender or a Guarantor chooses to litigate any dispute or claim arising out of or relating to this Guaranty or any related document through a judicial action, the decision to litigate shall not be deemed a waiver of arbitration, and if such judicial action is contested, any party may thereafter invoke its arbitration rights at any time before any discovery is taken in the judicial action. If the Borrower, Lender or a Guarantor seeks to have a dispute resolved by arbitration, that party must first send to the other party or parties by certified mail, a written Notice of Intent to Arbitrate. If Borrower, Lender or Guarantor do not reach an agreement to resolve the claim within 10 days after the Notice is received, any party may commence an arbitration proceeding with the American Arbitration Association ("AAA"). Lender will promptly reimburse Borrower or the Guarantor any arbitration filing fee, however, in the event that both the Borrower and the Guarantor must pay arbitration filing fees, Lender will only reimburse the Borrower's arbitration filing fee and, except as provided in the next sentence, the Lender will pay all arbitration administration and arbitrator fees. If the arbitrator finds that either the substance of any claim raised by Borrower or a Guarantor or the relief sought by Borrower or a Guarantor is improper or not warranted, as measured by the standards set forth in Federal Rule of Procedure 11(b), then Lender will pay the administration and arbitrator fees only if required by the AAA Rules. If the arbitrator grants relief to the Borrower or a Guarantor that is equal to or greater than the value of the relief requested by the Borrower or a Guarantor in the arbitration, Lender shall reimburse Borrower or the Guarantor, as applicable, for that party's reasonable attorneys' fees and expenses incurred for the arbitration. TO THE EXTENT NOT PROHIBITED BY APPLICABLE LAW, GUARANTOR AND LENDER AGREE THAT BY ENTERING INTO THIS GUARANTY, EACH IS WAIVING THEIR RIGHT TO TRIAL BY JURY. GUARANTOR AND LENDER MAY BRING CLAIMS AGAINST ANY OTHER PARTY ONLY IN THEIR INDIVIDUAL CAPACITY AND NOT AS A PLAINTIFF REPRESENTATIVE OR CLASS MEMBER IN ANY PURPORTED REPRESENTATIVE OR CLASS PROCEEDING. Further, Guarantor and Lender agree that the arbitrator may not consolidate proceedings for more than one person's claims, and may not otherwise preside over any form of a representative or class proceeding, and if this specific provision is found unenforceable, then the entirety of this arbitration clause shall be null and void. Any award by the individual arbitrator shall be final and binding, except for any appeal right under the Federal Arbitration Act ("FAA"), and may be entered and enforceable as a judgment in any court of competent jurisdiction, including as a judgment that permits Lender to initiate or complete the exercise of its remedies against, or its realization or foreclosure upon, the Collateral. This arbitration provision is made pursuant to a transaction in interstate commerce, and shall be governed by the FAA at 9 U.S.C. section 1 *et seq.*

**INTERPRETATION.** Lender is an FDIC insured federal savings association. CONSEQUENTLY, THIS GUARANTY WILL BE GOVERNED BY FEDERAL LAW APPLICABLE TO AN FDIC INSURED INSTITUTION AND TO THE EXTENT NOT PREEMPTED BY FEDERAL LAW, THE LAWS OF THE STATE OF NEVADA WITHOUT REGARD TO CONFLICT OF LAW RULES. The legality, enforceability and interpretation of this Guaranty and the amounts guaranteed will be governed by such laws.

**JURISDICTION.** Guarantor irrevocably consents with respect to any suit, action or proceeding relating to this Guaranty or any of the other loan documents relating to the Obligations, that venue shall be in the state (or commonwealth, as the case may be) of Borrower's principal place of business ("Borrower's State") and Guarantor waives personal service of process and agrees that a summons and

SBStPP
Revision Date: August 2018.a

Case 2:19-cv-06997-MJ4-GRB Document 2.4 Filed 12/15/19 Page 35 of 78 PageID #: 40
DocuSign Envelope ID: 8F73F9B4-587D-4B45-B836-D3096DFB87D5
THIS IS A COPY
The Authoritative Copy of this record is held at na2.docusign.



complaint commencing an action or proceeding in any such court shall be properly served and confer personal jurisdiction if served by registered or certified mail to Guarantor at the address specified by Guarantor above, or as otherwise provided by the laws of the Borrower's State or the United States of America. Guarantor agrees that venue is proper in such courts and waives, to the full extent permitted by applicable law, any defense of an inconvenient forum to the extent any suit, action or proceeding is brought in such courts.

**VALIDITY. This Guaranty is valid and enforceable against Guarantor even if any Obligation is determined to be invalid or unenforceable against the Borrower.**



SBStPP
Revision Date: August 2018.a

DocuSign Envelope ID: 8F73F9B4-587D-4B45-B836-D3096DFB87D5

THIS IS A COPY
The Authoritative Copy of this record is held at na2.docusign.



## JURY WAIVER

GUARANTOR KNOWINGLY AND VOLUNTARILY WAIVES TRIAL BY JURY IN ANY ACTION, PROCEEDING, CLAIM OR COUNTERCLAIM BASED UPON, ARISING OUT OF OR IN ANY WAY RELATING TO THIS GUARANTY, THE OBLIGATIONS GUARANTEED BY THIS GUARANTY OR ANY CONDUCT, ACT OR OMISSION OF LENDER, AND AGREES AND CONSENTS THAT ANY SUCH ACTION, PROCEEDING, CLAIM OR COUNTERCLAIM SHALL BE DECIDED BY TRIAL TO THE COURT WITHOUT A JURY. GUARANTOR ACKNOWLEDGES AND UNDERSTANDS THAT THIS WAIVER AND CONSENT CONSTITUTES A MATERIAL INDUCEMENT TO LENDER TO ENTER INTO THE TRANSACTION WITH THE BORROWER.

Guarantor Jacob V. Adoni

DocuSigned by:

x: Jacob V. Adoni
_____
6EB886A7DDAD462

[Remainder of page is blank.  Signature page(s) follow(s).]

SBStPP
Revision Date: August 2018.a

Case 2:19-cv-06691-NMA-GHE Document 1-3 Filed 12/12/19 Page 37 of 78 PageID #: 42
DocuSign Envelope ID: 8F73F9B4-587D-4B45-B836-D3096DFB87D5
THIS IS A COPY
The Authoritative Copy of this record is held at na2.docusign.

**axos** BANK

Signature Page of Jacob V. Adoni for Continuing Guaranty, Personal (Unlimited)

## NOTICE TO GUARANTOR

You are being asked to guarantee the past, present and future Obligations of Borrower. If Borrower does not pay, you will have to. You may also have to pay collection costs. Lender can collect the Obligations from you without first trying to collect from Borrower or another guarantor or proceeding against any collateral or other security for the Obligations.

(Guarantor Name) Jacob V. Adoni

(Guarantor Signature) _Jacob V. Adoni_
 6EB886A7D0AD462...

### ACKNOWLEDGEMENT

STATE/COMMONWEALTH OF _____ )
                                                ) ss.
COUNTY OF _____                  )

On the _____ day of _____, in the year _____, before me, the undersigned, a notary public in and for said State/Commonwealth, personally appeared Jacob V. Adoni, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within Continuing Guaranty (Unlimited) and acknowledged to me that she/he executed the same in her/his capacity, and that by her/his signature on the Continuing Guaranty (Unlimited), the individual, or the person upon behalf of which the individual acted, executed the Continuing Guaranty (Unlimited).

_____
Notary Public

My Commission expires:

Case 2:19-cv-06669-JMA-GRB Document 13 Filed 12/15/19 Page 38 of 78 PageID #: 43

DocuSign Envelope ID: 8F73F9B4-587D-4B45-B836-D3096DFB87D5

THIS IS A COPY
The Authoritative Copy of this record is held at na2.docusign.

axos®
BANK

**EXHIBIT 1**

**[NONE]**



Exhibit 1 to Continuing Guaranty, Personal (Unlimited)

Case 2:19-cv-0669... Document... Filed 11/22/19... Page 39 of 78 PageID #: 44
DocuSign Envelope ID: 8F73F9B4-587D-4B45-B836-D3096DFB87D5
THIS IS A COPY. RECEIVED NYSCEF: 10/18/2019
The Authoritative Copy of this record is held at na2.docusign.

**aXOS** BANK

## COOPERATION AGREEMENT

DATE: 2/22/2019

In connection with the business loan to Borrower evidenced by the Business Promissory Note and Security Agreement of even date herewith, Borrower hereby agrees:

In the event any further documentation is required by Lender in connection with the loan, Borrower hereby agrees to execute such documentation, including, but not limited to, any amendments, corrections, deletions or additions to the loan documents being executed on even date herewith.

In the event Borrower is required to furnish such necessary documentation and fails to do so within 10 days from receipt of written demand, then such failure shall be an event of default under the terms of the loan and Lender or its successors and assigns shall have the right to demand payment in full under the loan documents and enforce all other rights against Borrower.

The terms "Borrower" and "Lender" have the same meanings as set forth in the Business Promissory Note and Security Agreement.

BORROWER: Harbor Park Realty, LLC

Signature: *Jacob V. Adoni*
6EB886A70DAD462...

Printed Name: Jacob V. Adoni

Title: Manager

Date: 2/22/2019

### Notary Acknowledgement

STATE/COMMONWEALTH OF _____ )
                                                      ) ss
COUNTY OF _____

On the _____ day of _____ in the year _____, before me, the undersigned, a notary public in and for said State/Commonwealth, personally appeared _____ personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within Cooperation Agreement and acknowledged to me that she/he executed the same in her/his capacity as _____ of _____, and that by her/his signature on the Cooperation Agreement, the individual, or the person upon behalf of which the individual acted, executed the Cooperation Agreement.

_____
Notary Public

My commission expires: _____.

SBStPP
Revision Date: August 2018.a

Case 1:21-cv-08693-GHW Document 87-10 Filed 12/02/19 Page 40 of 78 PageID #: 45
THIS IS A COPY
The Authoritative Copy of this record is held at na2.docusign.
DocuSign Envelope ID: 8F73F9B4-587D-4B45-B836-D3096DFB87D5



# CERTIFICATION REGARDING BENEFICIAL OWNERS OF
# LEGAL ENTITY CUSTOMERS

## I.   GENERAL INSTRUCTIONS

### What is this form?

To help the government fight financial crime, Federal regulation requires certain financial institutions to obtain, verify, and record information about the beneficial owners of legal entity customers. Legal entities can be abused to disguise involvement in terrorist financing, money laundering, tax evasion, corruption, fraud, and other financial crimes. Requiring the disclosure of key individuals who own or control a legal entity (i.e., the beneficial owners) helps law enforcement investigate and prosecute these crimes.

### Who has to complete this form?

This form must be completed by the person opening a new account on behalf of a legal entity with any of the following U.S. financial institutions: (i) a bank or credit union; (ii) a broker or dealer in securities; (iii) a mutual fund; (iv) a futures commission merchant; or (v) an introducing broker in commodities.

For the purposes of this form, a **legal entity** includes a corporation, limited liability company, or other entity that is created by a filing of a public document with a Secretary of State or similar office, a general partnership, and any similar business entity formed in the United States or a foreign country. **Legal entity** does not include sole proprietorships, unincorporated associations, or natural persons opening accounts on their own behalf.

### What information do I have to provide?

This form requires you to provide the name, address, date of birth and Social Security number (or passport number or other similar information, in the case of foreign persons) for the following individuals (*i.e.*, the **beneficial owners**):

(i)     Each individual, if any, who owns, directly or indirectly, 25 percent or more of the equity interests of the legal entity customer (*e.g.*, each natural person that owns 25 percent or more of the shares of a corporation); **and**

Revision Date: October 2018

Case 2:19-cv-06924-JMA-GRB   Document 14   Filed 12/12/19   Page 41 of 78 PageID #: 46
THIS IS A COPY
The Authoritative Copy of this record is held at na2.docusign.

DocuSign Envelope ID: 8F73F9B4-587D-4B45-B836-D3096DFB87D5



(ii)    An individual with significant responsibility for managing the legal entity
        customer (*e.g.*, a Chief Executive Officer, Chief Financial Officer, Chief
        Operating Officer, Managing Member, General Partner, President, Vice President,
        or Treasurer).

The number of individuals that satisfy this definition of "beneficial owner" may vary.
Under section (i), depending on the factual circumstances, up to four individuals (but as
few as zero) may need to be identified. Regardless of the number of individuals
identified under section (i), you must provide the identifying information of one
individual under section (ii). It is possible that in some circumstances the same
individual might be identified under both sections (*e.g.*, the President of Acme, Inc. who
also holds a 30% equity interest). Thus, a completed form will contain the identifying
information of at least one individual (under section (ii)), and up to five individuals (*i.e.*,
one individual under section (ii) and four 25 percent equity holders under section (i)).

The financial institution may also ask to see a copy of a driver's license or other
identifying document for each beneficial owner listed on this form.

## II.   CERTIFICATION OF BENEFICIAL OWNER(S)

**Persons applying for a business loan on behalf of a legal entity must provide the
following information:**

a.  *Name and Title of Natural Person Applying for Business Loan:*


        *Jacob V. Adoni, Member*
_____


b.  *Name and Address of Legal Entity for Which the Business Loan is Being Opened:*


        *Harbor Park Realty, LLC / 1019 Fort Salonga Rd. STE. 112 Northport, NY 11768*
_____

Revision Date: October 2018

Case 2:19-cv-06692-MCA-MAH Document 1 Filed 12/35/19 Page 42 of 78 PageID #: 47
DocuSign Envelope ID: 8F73F9B4-587D-4B45-B836-D3096DFB87D5
This is a copy.
The Authoritative Copy of this record is held at na2.docusign.



c. *The following information for __each__ individual, if any, who, directly or indirectly, through any contract, arrangement, understanding, relationship or otherwise, owns 25 percent or more of the equity interests of the legal entity listed above:*

**Section C:**

| Name | Date of Birth | Address (Residential or Business Street Address) | *For U.S. Persons:* Social Security Number | *For Foreign Persons:* Passport Number and Country of Issuance, or other similar identification number | Percentage of Ownership: *For each person party to the transaction* |
|---|---|---|---|---|---|
| Jacob V. Adoni | | *1019 Fort Salonga Rd. STE. 112 Northport, NY 11768* | | N/A | 100% |
| | | | | | |
| | | | | | |
| | | | | | |

(If no individual meets this definition, please write "Not Applicable.")

d. *The following information for __one__ individual with significant responsibility for managing the legal entity listed above, such as:*

☑ *An executive officer or senior manager (e.g., Chief Executive Officer, Chief Financial Officer, Chief Operating Officer, Managing Member, General Partner, President, Vice President, Treasurer); or*

☐ *Any other individual who regularly performs similar functions.*

(If appropriate, an individual listed under section (c) above may also be listed in this section (d)).

Revision Date: October 2018

Case 2:19-cv-06677-JMA-GRB   Document 11   Filed 12/12/19   Page 43 of 78 PageID #: 48
DocuSign Envelope ID: 8F73F9B4-587D-4B45-B836-D3096DFB87D5
THIS IS A COPY
The Authoritative Copy of this record is held at na2.docusign.



**Section D:**

| Name | Date of Birth | Address (Residential or Business Street Address) | *For U.S. Persons:* Social Security Number | *For Foreign Persons:* Passport Number and Country of Issuance, or other similar identification number | Percentage of Ownership: *For each person party to the transaction* |
|---|---|---|---|---|---|
| Jacob V. Adoni | ▮▮▮▮ | *1019 Fort Salonga Rd. STE. 112 Northport, NY 11768* | ▮▮▮▮ | N/A | 100% |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |

Revision Date: October 2018

Case 2:19-cv-06911-SMA-GRB    Document 1-1    Filed 12/12/19    Page 44 of 78 PageID #: 49
DocuSign Envelope ID: 8F73F9B4-587D-4B45-B836-D3096DFB87D5
THIS IS A COPY
The Authoritative Copy of this record is held at na2.docusign.



I, <u>Jacob V. Adoni</u> (*name of natural person opening account*), hereby certify, to the best of my knowledge, that the information provided above is complete and correct.

Signature: Jacob V. Adoni
6EB886A7DDAD462...

2/22/2019

Date:

[1] In lieu of a passport number, foreign persons may also provide an alien identification card number, or number and country of issuance of any other government-issued document evidencing nationality or residence and bearing a photograph or similar safeguard.

Legal Entity Identifier (TIN) ██████ (Optional)

THIS IS A COPY
The Authoritative Copy of this record is held at na2.docusign.
DocuSign Envelope ID: 8F73F9B4-587D-4B45-B836-D3096DFB87D5

# axos
## BANK

## PREPAYMENT DISCLOSURE

### LOAN INFORMATION

| | |
|---|---|
| Date of Loan: | 2/26/2019 |
| Loan Maturity Date: | 8/23/2019 |
| Loan Number: | 31373 |
| Business Name: | Harbor Park Realty, LLC |
| Loan Amount: | $90,000.00 |

### PREPAYMENT DISCLOSURE SUMMARY

Your loan does not permit partial prepayments (i.e., any amount less than the full outstanding principal), and you must meet other conditions in order to prepay.

If you elect to prepay your loan, your loan requires a **Prepayment Premium**, in addition to the principal, interest, and other charges due at the time of pay off.

The Prepayment Premium is calculated based on one of the following two scenarios:

**Required Prepayment Premium:**

The Prepayment Premium is calculated by comparing the **greater of**:

A. 15% of the **unpaid principal** on the date of the prepayment.

- *For example, if you still have $200,000 in unpaid principal on your loan, 15% of that would be $30,000.*

B. Or, if greater, the **remaining interest** you would have paid on the loan through the loan maturity date [or earlier date, provided Borrower has not missed any payments/had any ACHs returned prior to such date (such date, an "Approved Earlier Date").]

- *For example, if you still have remaining interest payments of $50,000 through the maturity date of the loan [or an Approved Earlier Date, as applicable], then the prepayment premium would be $50,000.*

**Borrower:** Harbor Park Realty, LLC

By: *Jacob V. Adoni*
8EB86EA7DDAD462...

Revision Date October 1, 2018

DocuSign Envelope ID: 8F73F9B4-587D-4B45-B836-D3096DFB87D5

THIS IS A COPY
The Authoritative Copy of this record is held at na2.docusign.



Printed Name: Jacob V. Adoni

Title: Manager

Read, acknowledged and accepted on: This Day __22__ of Month __2__ of Year __2019__.



Revision Date October 1, 2018

Case 2:19-cv-06911-MKB-GRB Document 24-1 Filed 12/12/19 Page 47 of 78 PageID #: 52
THIS IS A COPY
The Authoritative Copy of this record is held at na2.docusign.

DocuSign Envelope ID: 8F73F9B4-587D-4B45-B836-D3096DFB87D5



# SERVICING DISCLOSURE NOTICE

## LOAN INFORMATION

Date of Loan:  2/26/2019

Loan Number:  31373

Lender:  Axos Bank®, its successors and/or assigns

Borrower:  Harbor Park Realty, LLC

Servicer:  World Business Lenders, LLC

Servicer's Address:  101 Hudson Street, 33rd Floor, Jersey City, NJ 07302

## NOTICE OF LOAN SERVICING RIGHTS

The purpose of this notice is to inform you that, as of the date of the funding of your loan, World Business Lenders, LLC, will be servicing your loan and will have the right to collect payments on behalf of the Lender. ("Servicing" refers to the right to collect your principal and interest payments and to otherwise administer the rights and obligations associated with the loan.) This notice provides you with information on how to contact the Servicer.

**The servicing of the loan does not affect any term or condition of the loan, and nothing related to your loan terms or conditions will change; this notice requires no action on your part.** We recommend that you keep a copy of this notice with your other loan documents.

## YOUR SERVICER AS OF CLOSING

Below is the information on how to contact World Business Lenders, LLC.

## Toll-free Number

The toll-free telephone number for World Business Lenders is 800-432-9359. If you have any questions regarding the servicing of your loan, call World Business Lenders toll-free at 800-432-9359 between 9 a.m. and 6 p.m. Eastern Standard Time, Monday through Friday.

## Address for Correspondence (other than payments)

The address to send written correspondence to World Business Lenders, LLC, (other than payments) is:

World Business Lenders, LLC
101 Hudson Street, 33rd Floor
Jersey City, NJ 07302

Revision Date October 1, 2018

Case 2:19-cv-06974-JMA-GRB   Document 1-1   Filed 12/12/19   Page 48 of 78 PageID #: 53

# EXHIBIT "C"

Case 2:19-cv-06971-JMA-GRB   Document 1-1   Filed 12/12/19   Page 49 of 78 PageID #: 54

# **** Electronically Filed Document ****

| | |
|---|---|
| Instrument Number: | 2019-22285 |
| Recorded As: | EX-M01 - MORTGAGE |
| Recorded On: | March 13, 2019 |
| Recorded At: | 10:31:38 am |
| Number of Pages: | 30 |
| Book-VI/Pg: | Bk-M  VI-43339  Pg-550 |
| Total Rec Fee(s): | $1,405.00 |

Receipt Number:  1398331
Processed By:  001 DMF

**\*\* Examined and Charged as Follows \*\***

| 01 - MORTGAGE | $ 190.00 | EX-Blocks - Mortgages - $300 | $ 300.00 |
|---|---|---|---|

| | Tax Amount | Consid Amt | RS#/CS# | | |
|---|---|---|---|---|---|
| Tax-Mortgage OYSTER BAY | $ 915.00 | $ 90000.00 | DJ 33415 | Basic | $ 450.00 |
| | | | | Local NY CITY | $ 0.00 |
| | | | | Additional MTA | $ 240.00 |
| | | | | Spec ASST | $ 225.00 |
| | | | | Spec ADDL SONYMA | $ 0.00 |
| | | | | Transfer | $ 0.00 |

| Tax Charge: | $ 915.00 |
|---|---|

Property Information:

| Section | Block | Lot | Unit | Town Name |
|---|---|---|---|---|
| 24 | E | 1043 | | OYSTER BAY |

## \*\*\*\*\*\*\*\*\*\*\*\*THIS PAGE IS PART OF THE INSTRUMENT \*\*\*\*\*\*\*\*\*\*\*\*

Any provision herein which restricts the Sale, Rental or use of the described REAL PROPERTY
because of color or race is invalid and unenforceable under federal law.



Maureen O'Connell

**County Clerk Maureen O'Connell**

Case 2:19-cv-06021-NIX-CHE Document 1-3 Filed 12/35/19 Page 50 of 78 PageID #: 55

**JACOB ADONI A/K/A JACOB V. ADONI**
Mortgagor

and

**Axos Bank**
Mortgagee

**MORTGAGE, ASSIGNMENT OF LEASES AND RENTS
AND SECURITY AGREEMENT**
**$90,000.00**

Dated: As of 2/22/2019

Property Location: 19 Chestnut Hill Drive, Oyster Bay, NY 11771
Block: 24
Lot: 1043
County: Nassau

DOCUMENT PREPARED BY AND WHEN RECORDED, RETURN TO:

World Business Lenders, LLC
101 Hudson Street, 33rd Floor
Jersey City, New Jersey 07302

**Borrower:** Harbor Park Realty, LLC

Case 8-16-08178-reg    Doc 84-5    Filed 12/31/19    Page 51 of 78 PageID #: 56

## MORTGAGE, ASSIGNMENT OF LEASES
## AND RENTS AND SECURITY AGREEMENT

**THIS MORTGAGE, ASSIGNMENT OF LEASES AND RENTS AND SECURITY AGREEMENT** (this "*Mortgage*"), made as of February 26, 2019 (the "*Effective Date*"), by Jacob Adoni A/K/A Jacob V. Adoni, having an address at **19 Chestnut Hill Drive, Oyster Bay, NY 11771** ("*Mortgagor*"), to **Axos Bank**, a federal savings bank, with its address at 9205 West Russell Road, Suite 400, Las Vegas, NV 89148 (together with its successors and assigns, "*Mortgagee*").

WHEREAS, pursuant to a certain business promissory note and security agreement dated as of the Effective Date (as amended, modified, restated, consolidated or supplemented from time to time, the "*Loan Agreement*") by Harbor Park Realty, LLC (individually and collectively, "*Borrower*") in favor of Mortgagee, the Mortgagee is making a secured commercial loan to Borrower (the "*Loan*"). Certain capitalized terms are defined in Article V of this Mortgage. All other capitalized terms used herein without definition are used as defined in the Loan Agreement.

WHEREAS, in consideration for the Loan to its affiliate, Borrower, Mortgagor has guaranteed Borrower's payment of the Obligations.

NOW, THEREFORE, in consideration of the mutual premises set forth above and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, it is agreed as follows:

To secure the payment of all Obligations which may or shall become due under the Loan Agreement and/or under any of the other documents evidencing, securing or executed in connection with the Loan (this Mortgage, the Loan Agreement, and such other documents, as any of the same may, from time to time, be amended, modified, restated, consolidated or supplemented, being hereinafter referred to, each, as a "*Loan Document*", and collectively as the "*Loan Documents*"), including interest and other amounts which would accrue and become due but for the filing of a petition in bankruptcy (whether or not a claim is allowed against Mortgagor for such interest or other amounts in any such bankruptcy proceeding) or the operation of the automatic stay under Section 362(a) of Title 11 of the United States Code (as amended from time to time, the "*Bankruptcy Code*"), and the costs and expenses of enforcing any provision of any Loan Document (all such sums, together with the Obligations, being hereinafter collectively referred to as the "*Debt*"), Mortgagor hereby irrevocably mortgages, grants, bargains, sells, conveys, transfers, pledges, sets over and assigns, and grants a security interest, to and in favor of Mortgagee, **WITH POWER OF SALE**, all of Mortgagor's right, title and interest in and to the following property, rights, interests and estates (the Premises (as hereinafter defined), the Improvements (as hereinafter defined), and the property, rights, interests and estates hereinafter described being collectively referred to herein as the "*Mortgaged Property*"):

        (a)     the land described in <u>Schedule A</u> attached hereto (the "*Premises*");

        (b)     all of the building, structures, fixtures and other improvements now or hereafter located thereon (the "*Improvements*");

Case 2:19-cv-06277 Document 1 Filed 12/12/19 Page 52 of 78 PageID #: 57

(c)      all easements, rights-of-way, strips and gores of land, streets, ways, alleys, passages, sewer rights, water, water courses, water rights and powers, air rights and development rights, rights to oil, gas, minerals, coal and other substances of any kind or character, and all estates, rights, titles, interests, privileges, liberties, tenements, hereditaments and appurtenances of any nature whatsoever, in any way belonging, relating or pertaining to the Premises and the Improvements; and the reversion and reversions, remainder and remainders, and all land lying in the bed of any street, road, highway, alley or avenue, opened, vacated or proposed, in front of or adjoining the Premises, to the center line thereof; and all the estates, rights, titles, interests, dower and rights of dower, courtesy and rights of courtesy, property, possession, claim and demand whatsoever, both at law and in equity, of Mortgagor of, in and to the Premises and the Improvements and every part and parcel thereof, with the appurtenances thereto;

(d)      all machinery, furniture, furnishings, equipment, computer software and hardware, fixtures (including all heating, air conditioning, plumbing, lighting, communications and elevator fixtures), inventory, materials, supplies and other articles of personal property and accessions thereof, renewals and replacements thereof and substitutions therefor, and other property of every kind and nature, tangible or intangible, owned by Mortgagor, or in which Mortgagor has or shall have an interest, now or hereafter located upon the Premises or the Improvements, or appurtenant thereto, and usable in connection with the present or future operation and occupancy of the Premises and the Improvements (hereinafter collectively referred to as the "*Equipment*"), including any leases of, deposits in connection with, and proceeds of any sale or transfer of any of the foregoing, and the right, title and interest of Mortgagor in and to any of the Equipment that may be subject to any "security interest" as defined in the Uniform Commercial Code, as in effect from time to time in the state where the Mortgaged Property is located (the "*UCC*"), superior to the Lien of this Mortgage;

(e)      all awards or payments, including interest thereon, that may heretofore or hereafter be made with respect to the Premises or the Improvements, whether from the exercise of the right of eminent domain or condemnation (including any transfer made in lieu of or in anticipation of the exercise of such right), or for a change of grade, or for any other injury to or decrease in the value of the Premises or Improvements;

(f)      all leases and other agreements or arrangements heretofore or hereafter entered into affecting the use, enjoyment or occupancy of, or the conduct of any activity upon or in, the Premises or the Improvements, including any extensions, renewals, modifications or amendments thereof (hereinafter each referred to as a "*Lease*" and collectively referred to as "*Leases*") and all rents, rent equivalents, moneys payable as damages (including payments by reason of the rejection of a Lease in a Bankruptcy Proceeding or in lieu of rent or rent equivalents, royalties (including all oil and gas or other mineral royalties and bonuses), income, fees, receivables, receipts, revenues, deposits (including security, utility and other deposits), accounts, cash, issues, profits, charges for services rendered, and other consideration of whatever form or nature received by or paid to or for the account or benefit of Mortgagor or its, his or her agents or employees from any and all sources arising from or attributable to the Premises and the Improvements, or rendering of services by Mortgagor or any of its, his or her agents or employees, and proceeds, if any, from business interruption or other loss of income insurance (hereinafter collectively referred to as "*Rents*"), together with all proceeds from the sale or other disposition

Case 2:24-cv-06009-JMA Document 87-2 Filed 12/22/19 Page 53 of 78 PageID #: 58

of the Leases and the right to receive and apply the Rents to the full and indefeasible payment of the Debt;

(g)  all proceeds of and any unearned premiums on any insurance policies covering the Mortgaged Property, including the right to receive and apply the proceeds of any insurance, judgments, or settlements made in lieu thereof, for damage to the Mortgaged Property;

(h)  the right, in the name and on behalf of Mortgagor, to appear in and defend any action or proceeding brought with respect to the Mortgaged Property and to commence any action or proceeding to protect the interest of Mortgagee in the Mortgaged Property;

(i)  all deposit accounts and securities accounts (including reserve accounts), escrows, documents, instruments, chattel paper, claims, deposits and general intangibles, as the foregoing terms are defined in the UCC, and all franchises, trade names, trademarks, symbols, service marks, books, records, plans, specifications, designs, drawings, surveys, title insurance policies, permits, consents, licenses, management agreements, franchise agreements, contract rights (including any contract with any architect or engineer or with any other provider of goods or services for or in connection with any construction, repair or other work upon the Mortgaged Property), approvals, actions, refunds of real estate taxes and assessments (and any other governmental impositions related to the Mortgaged Property) and causes of action that now or hereafter relate to, are derived from or are used in connection with the Mortgaged Property, or the use, operation, maintenance, occupancy or enjoyment thereof or the conduct of any business or activities thereon (hereinafter collectively referred to as the "*Intangibles*"); and

(j)  all proceeds, products, offspring, rents and profits from any of the foregoing, including those from the sale, exchange, transfer, collection, loss, damage, disposition, substitution or replacement of any of the foregoing.

Without limiting the generality of any of the foregoing, in the event that a Bankruptcy Proceeding is commenced by or against Mortgagor, pursuant to Section 552(b)(2) of the Bankruptcy Code, the security interest granted by this Mortgage shall automatically extend to all Rents acquired by Mortgagor after the commencement of the proceeding and shall constitute cash collateral under Section 363(a) of the Bankruptcy Code.

**TO HAVE AND TO HOLD** the Mortgaged Property unto Mortgagee and its successors and assigns, forever;

**PROVIDED, HOWEVER,** these presents are upon the express condition that, upon the indefeasible satisfaction in full of the Debt provided in the Loan Documents in a timely manner, these presents and the estate hereby granted shall cease, terminate and be void;

**AND** Mortgagor represents and warrants to and covenants and agrees with Mortgagee as follows:

## ARTICLE I. MORTGAGOR COVENANTS

1.  <u>Payment of Debt and Incorporation of Covenants, Conditions and Agreements</u>. Mortgagor shall pay the Debt at the time and in the manner provided in the Loan Documents to

Case 2:19-cv-06741 Document 1-4 Filed 12/25/19 Page 54 of 78 PageID #: 59

which it is a party. All the covenants, conditions and agreements contained in the Loan Documents are hereby made a part of this Mortgage to the same extent and with the same force as if fully set forth herein. No portion of any principal advanced under the Loan is to be used (i) for the purpose of purchasing or carrying any "margin security" or "margin stock" as such terms are used in Regulations U and X of the Board of Governors of the United States Federal Reserve System, 12 C.F.R. 221 and 224, as amended from time to time, or (ii) for any purpose other than the conduct of the Mortgagor's business in the ordinary course. All sums advanced by Mortgagee under the Loan, including sums advanced to protect or enhance collateral pledged by Mortgagor or any other Person, including any individual, as security for the Debt, are advanced solely for the lawful business purposes of the Mortgagor.

2.    Leases and Rents.

     (a)    Mortgagor does hereby absolutely, unconditionally, and irrevocably assign to Mortgagee all of Mortgagor's right, title and interest in all current and future Leases and Rents, it being intended by Mortgagor that this assignment constitutes a present, absolute assignment, and not an assignment for additional security only. Such assignment shall not be construed to bind Mortgagee to the performance of any of the covenants or provisions contained in any Lease or otherwise impose any obligation upon Mortgagee. Nevertheless, subject to the terms of this paragraph, Mortgagee grants to Mortgagor a revocable license to operate and manage the Mortgaged Property and to collect and receive the Rents. Upon an Event of Default, without the need for notice or demand, the license granted to Mortgagor herein shall automatically be revoked, and Mortgagee shall immediately be entitled to possession of all Rents in Mortgagor's possession or control and all Rents collected thereafter (including Rents past due and unpaid), whether or not Mortgagee enters upon or takes control of the Mortgaged Property. Mortgagor hereby grants and assigns to Mortgagee the right, at its option, upon revocation of the license granted herein, to enter upon the Mortgaged Property in person, by agent or by court-appointed receiver to collect the Rents. Any Rents collected and received after the revocation of such license may be applied toward payment of the Debt in such priority and proportions as Mortgagee in its sole discretion may deem proper.

     (b)    Mortgagor shall not enter into, modify, amend, replace, cancel, terminate or renew any Lease without the prior written consent of Mortgagee.

3.    Use of the Mortgaged Property. Mortgagor shall not initiate, join in, acquiesce in or consent to any change in any public or private restrictive covenant, zoning law or other public or private restriction limiting or defining the uses which may be made of the Mortgaged Property (or any portion thereof). If, under applicable zoning provisions, the use of the Mortgaged Property (or any portion thereof) is or shall become a nonconforming use, Mortgagor shall not cause or permit such nonconforming use to be discontinued or abandoned without the consent of Mortgagee. Mortgagor shall not (i) change, or permit or suffer to occur any change to, the use of the Mortgaged Property, (ii) permit or suffer to occur any waste on or to the Mortgaged Property, or (iii) take any steps to convert the Mortgaged Property to a condominium or cooperative form of ownership. Mortgagor has, and at all times shall have obtained, all permits, licenses, exemptions, and approvals necessary to occupy, operate, and market the Mortgaged Property, and shall maintain compliance with all Legal Requirements applicable to the Mortgaged Property and necessary for the transaction of its business and operations. No portion of the Mortgaged Property

-4-

has been or will be purchased, improved, equipped or fixtured with or from proceeds of any illegal activity, and no part of the proceeds of the Loan will be used in connection with any illegal activity.

4.    Transfer or Encumbrance of the Mortgaged Property.

(a)    Mortgagor acknowledges that (i) Mortgagee has examined and relied on the creditworthiness and experience of Mortgagor and its Affiliates in owning, operating, and maintaining properties such as the Mortgaged Property in agreeing to make the Loan, (ii) Mortgagee will continue to rely on Mortgagor's ownership of the Mortgaged Property as a means of maintaining the value of the Mortgaged Property as security for the Debt, and (iii) Mortgagee has a valid interest in maintaining the value of the Mortgaged Property so as to ensure that, should Mortgagor default in the repayment or other satisfaction of the Debt, Mortgagee can recover the Debt by a sale or other Transfer of the Mortgaged Property. Mortgagor shall not sell, convey, alienate, mortgage, encumber, pledge or otherwise Transfer the Mortgaged Property or any portion thereof, or suffer or permit any Transfer to occur.

(b)    Mortgagee shall not be required to demonstrate any actual impairment of its security or any increased risk of default hereunder or under the Loan Documents in order to declare the Debt immediately due and payable upon a Transfer in violation of this Paragraph 4. This provision shall apply to every sale, conveyance, alienation, mortgage, encumbrance, pledge or other Transfer of the Mortgaged Property (and every other Transfer) regardless of whether voluntary or not. Any Transfer made in contravention of this Paragraph 4 shall be null and void and of no force and effect. Mortgagor agrees to bear and shall pay or reimburse Mortgagee on demand for all reasonable expenses (including reasonable attorneys' fees and disbursements, title search costs, title insurance endorsement premiums, and other related costs) incurred by Mortgagee in connection with the review, approval and documentation of any Transfer.

5.    Taxes. Mortgagor shall pay prior to delinquency all Taxes that are or which may become a Lien upon or cause a loss in value of the Mortgaged Property or any interest therein. Mortgagor shall also pay prior to delinquency all taxes, assessments, levies and charges imposed by any Governmental Authority upon Mortgagee by reason of its interest in the Debt or in the Mortgaged Property, or by reason of any payment made to Mortgagee on account of the Debt or any portion thereof; provided, however, Mortgagor shall have no obligation to pay any taxes or other charges which may be imposed by any Governmental Authority from time to time upon Mortgagee and which are measured by and imposed upon Mortgagee's net income.

6.    Changes in Legal Requirements Regarding Taxation. If any Legal Requirement is enacted, adopted, or amended after the Effective Date which deducts the Debt from the value of the Mortgaged Property for the purpose of taxation or which imposes a tax, either directly or indirectly, on the Debt or Mortgagee's interest in the Mortgaged Property, Mortgagor will pay such tax, with interest and penalties thereon, if any. If Mortgagee determines that the payment of such tax or interest and penalties by Mortgagor would be unlawful, taxable to Mortgagee or unenforceable, or would provide the basis for a defense of usury, then Mortgagee shall have the option, by notice of not less than ninety (90) days, to declare the Debt immediately due and payable.

FILED: SUFFOLK COUNTY CLERK 10/18/2019 11:35 AM
Case 2:19-cv-06099-GRB Document 1-2 Filed 12/25/19 Page 56 of 78 PageID #: 61

INDEX NO. 620617/2019

NYSCEF DOC. NO. 4

RECEIVED NYSCEF: 10/18/2019

7.    <u>No Credits on Account of the Debt</u>.  Mortgagor shall not claim or demand or be entitled to any credit on account of the Debt for any part of the Taxes or Other Charges assessed against the Mortgaged Property, and no deduction shall otherwise be made or claimed from or against the assessed value of the Mortgaged Property for tax purposes by reason of this Mortgage or the Debt.  If such claim, credit or deduction shall be required by any Legal Requirement, Mortgagee shall have the option, by notice of not less than ninety (90) days, to declare the Debt immediately due and payable.

8.    <u>Further Acts, Etc</u>.  Mortgagor shall, at its sole cost and expense, perform, execute, acknowledge and deliver all and every such further acts, deeds, conveyances, mortgages, assignments, notices of assignment, transfers and assurances (each, an "*<u>Act or Instrument of Further Assurance</u>*") as Mortgagee shall, from time to time, require, for the better assuring, conveying, assigning, transferring, and confirming unto Mortgagee the Mortgaged Property and rights hereby mortgaged, given, granted, bargained, sold, alienated, enfeoffed, conveyed, confirmed, pledged, assigned and hypothecated or intended now or hereafter so to be, or which Mortgagor may be or may hereafter become bound to convey or assign to Mortgagee, or for carrying out the intention or facilitating the performance of the terms of this Mortgage, or for filing, registering or recording this Mortgage or for facilitating the sale and Transfer of the Loan and the Loan Documents.  Upon foreclosure, the appointment of a receiver or any other relevant action, Mortgagor shall, at its sole cost and expense, cooperate fully and completely to effect the assignment or other Transfer of any license, permit, agreement or any other right necessary or useful to the ownership, operation, or marketing of the Mortgaged Property.  Mortgagor grants to Mortgagee during the continuance of an Event of Default, an irrevocable power of attorney coupled with an interest for the purpose of exercising and perfecting any and all rights and remedies available to Mortgagee at law and in equity, including such rights and remedies available to Mortgagee pursuant to this paragraph.  Said power of attorney will terminate upon the full and final indefeasible payment of the Debt.

9.    <u>Recording of Mortgage, Etc</u>.  Mortgagor forthwith upon the execution and delivery of this Mortgage and thereafter, from time to time, shall cause this Mortgage, and any security instrument creating a Lien or security interest or evidencing the Lien hereof upon the Mortgaged Property and each Act or Instrument of Further Assurance pursuant to <u>Paragraph 8</u> hereof to be filed, registered or recorded in such manner and in such places as may be required by any present or future Legal Requirement in order to publish notice of, and fully to protect, the Lien hereof upon, and the interest of Mortgagee in, the Mortgaged Property.  Mortgagor shall pay all filing, registration and recording fees, all expenses incident to the preparation, execution and acknowledgment of, and all federal, state, county and municipal, taxes, duties, imposts, documentary stamps, assessments and charges arising out of or in connection with the execution and delivery of, this Mortgage, any Mortgage supplemental hereto, any security instrument or evidence of Lien with respect to the Mortgaged Property or any Act or Instrument of Further Assurance pursuant to <u>Paragraph 8</u> hereof, except where prohibited by any Legal Requirements to do so.  Mortgagor shall hold harmless and indemnify Mortgagee, its successors and assigns, from and against any liability incurred by reason of the imposition of any Tax on the making or recording of this Mortgage.  The provisions of this <u>Paragraph 9</u> shall survive the repayment of the Debt and the full or partial release or satisfaction of this Mortgage.

-6-

10.   Maintenance.  Mortgagor covenants: (a) to insure the Mortgaged Property against such risks as Mortgagee may require as set forth herein and in the Loan Documents, and to comply with the requirements of any insurance companies providing such insurance; (b) to keep the Mortgaged Property in good condition and repair; (c) not to remove or demolish the Mortgaged Property or any portion thereof, not to alter or add to the Mortgaged Property; (d) to complete or restore promptly and in good and workmanlike manner the Mortgaged Property, or any portion thereof which may be damaged or destroyed, without regard to whether Mortgagee elects to require that insurance proceeds be used to reduce the Debt; (e) to comply with all Legal Requirements and all covenants, conditions, restrictions and equitable servitudes, whether public or private, of every kind and character which affect the Mortgaged Property and pertain to acts committed or conditions existing thereon, including any work, alteration, improvement or demolition mandated by such Legal Requirements and covenants; (f) not to commit or permit waste of the Mortgaged Property; and (g) to do all other acts which from the character, use, or operation of the Mortgaged Property may be reasonably necessary to maintain and preserve its value.

11.   Alterations.  None of the Improvements or any portion thereof, shall be removed, altered or demolished without prior written consent of the Mortgagee in each instance, provided, however, that the Mortgagor shall have the right, without consent of the Mortgagee, to remove and dispose of, free from the Lien of this Mortgage, such personal property as from time to time may become worn out or obsolete, provided, that, simultaneously therewith or prior to such removal, any such personal property shall be replaced by personal property of like kind and value at least equal to that of the replaced personal property and free of any title retention, security interest or other encumbrance or Lien.

12.   Purchase Options.  Mortgagor represents and warrants to Mortgagee as of the Effective Date that neither the Mortgaged Property nor any portion thereof is subject to any purchase options, rights of first refusal, rights of first offer or other similar rights in favor of any Person.

13.   Title to the Mortgaged Property.  Mortgagor is the sole owner of the Mortgage Property and hereby warrants to and shall defend its title to the Mortgaged Property, and the validity and priority of all Liens granted or otherwise given to Mortgagee hereunder and/or under the Loan Documents, against the claims of all Persons.

14.   Liens.  Without Mortgagee's prior written consent, Mortgagor shall not create, incur, assume, permit or suffer to exist any Lien on all or any portion of the Mortgaged Property, except Liens in favor of Mortgagee.

15.   Insurance.

(a)   Coverage.  Mortgagor shall, while all or any portion of the Debt (including any Obligation) remains outstanding, maintain at Mortgagor's sole cost and expense, with licensed insurers acceptable to Mortgagee, the following Policies in form and substance reasonably satisfactory to Mortgagee (capitalized terms used in this Paragraph 15 shall have the same meaning as such terms are commonly and presently defined in the insurance industry):

(i)    Property Insurance. An All Risk/Special Form Property Insurance Policy, including theft coverage and such other coverages and endorsements as Mortgagee may require, insuring Mortgagee against damage to the Mortgaged Property in an amount not less than 100% of the full replacement cost of the Improvements. Such coverage should adequately insure the Mortgaged Property, whether such Mortgaged Property or any portion thereof is onsite, stored offsite or otherwise. During times of construction on the Mortgaged Property, Mortgagor shall further maintain, or cause each applicable contractor(s), or subcontractor(s), as applicable, to maintain, a Builders All Risk/Special Form Completed Value (Non-Reporting Form) Hazard Insurance Policy.

(ii)    Flood Hazard Insurance. If any portion of the Improvements is located within a special flood zone or flood-prone area, a Policy of flood insurance, as deemed necessary by Mortgagee, in an amount required by Mortgagee, but in no event less than the amount sufficient to meet the requirements of any Legal Requirement.

(iii)    Liability Insurance. A Policy of Commercial General Liability Insurance on an occurrence basis, with coverages and limits as required by Mortgagee, insuring against liability for injury and/or death to any Person and/or damage to any property occurring on the Mortgaged Property and/or in the Improvements. During the period of any approved construction, Mortgagor may cause its contractors and/or subcontractors to maintain in full force and effect any or all of the liability insurance required hereunder. Whether Mortgagor employs a general contractor or performs as owner-builder, Mortgagee may require that coverage include statutory workers' compensation insurance.

(b)    Other Coverage. Mortgagor shall promptly provide to Mortgagee evidence of such other Policies in such reasonable amounts as Mortgagee may from time to time request against such other insurable hazards which at the time are commonly insured against for property similar to the Mortgaged Property located in or around the region in which the Mortgaged Property is located. Such coverage requirements may include, but are not limited to, coverage for earthquake, acts of terrorism, toxic mold or fungus of a type that may pose a risk to human health or the environment or would negatively impact the value of the Property ("*Toxic Mold*"), loss of business income, delayed business income, rental loss, sink hole, soft costs, tenant improvements, or environmental liabilities.

(c)    Generally. Mortgagor shall, upon request, promptly provide to Mortgagee insurance certificates or other evidence of coverage in form acceptable to Mortgagee, with coverage amounts, deductibles, limits and retentions as required by Mortgagee. All insurance policies shall provide that the coverage shall not be cancelable without ten (10) days prior written notice to Mortgagee of any cancellation for nonpayment of premiums, and not less than thirty (30) days prior written notice (or such longer period as may be required by Legal Requirements) to Mortgagee of any other cancellation. With respect to any material change or modification of any Policy (including any reduction in coverage) which change or modification is not provided to Mortgagee by Mortgagor's insurance company, Mortgagor shall provide not less than thirty (30) days (or such longer period as may be required by Legal Requirements) prior written notice to Mortgagee of such material change or modification. Mortgagee shall be a named additional insured and shall be named under a Mortgagee's Loss Payable Endorsement or a Standard

-8-

Mortgagee Clause Endorsement (in form acceptable to Mortgagee) on all Policies required to be maintained by Mortgagor hereunder. All insurance Policies shall be issued and maintained by insurers approved to do business in the state in which the Mortgaged Property is located and must have an A.M. Best Company financial rating and policyholder surplus acceptable to Mortgagee.

16.     Hazardous Substances.

(a)     (i) The Mortgaged Property is not in violation of any Environmental Laws, (ii) the Mortgaged Property is not subject to any private or governmental Lien or judicial or administrative notice or action or inquiry, investigation or claim relating to Hazardous Materials, (iii) to the best of Mortgagor's knowledge, after due inquiry, no Hazardous Materials are or have been (including the period prior to Mortgagor's acquisition of the Mortgaged Property), discharged, generated, treated, disposed of or stored on, incorporated in, or removed or transported from the Mortgaged Property other than in compliance with all Environmental Laws, (iv) to the best of Mortgagor's knowledge, after due inquiry, no Hazardous Materials are present in, on or under any nearby real property which could migrate to or otherwise affect the Mortgaged Property, (v) no underground storage tanks exist on the Mortgaged Property and the Mortgaged Property has never been used as a landfill, and (vi) there have been no environmental investigations, studies, audits, reviews or other analyses conducted by or on behalf of Mortgagor which have not been provided to Mortgagee.

(b)     Mortgagor shall give prompt written notice to Mortgagee of (i) any proceeding or inquiry by any Person (including any Governmental Authority) with respect to the presence of any Hazardous Material on, under, from or about the Mortgaged Property, (ii) all notices given or claims made or threatened by any Person (including any Governmental Authority) against Mortgagor or the Mortgaged Property or any Person occupying the Mortgaged Property relating to any loss or injury resulting from any Hazardous Material; and (iii) Mortgagor's discovery of any occurrence or condition on any real property adjoining or in the vicinity of the Mortgaged Property that could cause the Mortgaged Property to be subject to any investigation or cleanup pursuant to any Environmental Law. Upon becoming aware of the presence of Toxic Mold at the Mortgaged Property, Mortgagor shall (i) undertake an investigation to identify the source(s) of such Toxic Mold and shall develop and implement an appropriate remediation plan to eliminate the presence of any Toxic Mold, (ii) perform or cause to be performed all acts reasonably necessary for the remediation of any Toxic Mold (including taking any action necessary to clean and disinfect any portion of the Mortgaged Property affected by Toxic Mold, including providing any necessary moisture control systems at the Mortgaged Property), and (iii) provide evidence reasonably satisfactory to Mortgagee of the foregoing. Mortgagor shall permit Mortgagee to join and participate in, as a party if it so elects, any legal or administrative action or other proceeding initiated with respect to the Mortgaged Property in connection with any Environmental Laws or Hazardous Materials, and Mortgagor shall pay or reimburse, as applicable, all reasonable attorneys' fees and disbursements incurred by Mortgagee in connection therewith.

(c)     Upon Mortgagee's request, at any time and from time to time, Mortgagor shall provide an inspection or audit of the Mortgaged Property prepared by a licensed hydrogeologist, licensed environmental engineer or qualified environmental consulting firm approved by Mortgagee assessing the presence or absence of Hazardous Materials on, in or near the Mortgaged Property. The costs and expenses of such audit or inspection shall be paid by

-9-

Case 2:19-cv-06900-GRB-ARL Document 1-2 Filed 12/05/19 Page 60 of 78 PageID #: 65

Mortgagor. Such inspections and audit may include soil borings and ground water monitoring. If Mortgagor fails to provide any such inspection or audit within thirty (30) days after such request, Mortgagee may but shall not be obligated to order same at Mortgagor's sole cost and expense, and Mortgagor hereby grants to Mortgagee and its employees and agents access to the Mortgaged Property and a license to undertake such inspection or audit.

(d)     If any environmental site assessment report prepared in connection with such inspection or audit recommends that an operations and maintenance plan be implemented for any Hazardous Material, whether such Hazardous Material existed prior to the ownership or acquisition of the Mortgaged Property by Mortgagor, or presently exists or is reasonably suspected of existing, Mortgagor shall cause such operations and maintenance plan to be prepared and implemented at its expense upon request of Mortgagee, and with respect to any Toxic Mold, Mortgagor shall take all action necessary to clean and disinfect any portion of the Improvements affected by Toxic Mold in or about the Improvements, including providing any necessary moisture control systems at the Mortgaged Property. If any investigation, site monitoring, containment, cleanup, removal, restoration or other work of any kind is reasonably necessary under an applicable Environmental Law ("__*Remedial Work*__"), Mortgagor shall commence all such Remedial Work within thirty (30) days after demand by Mortgagee and thereafter diligently prosecute to completion all such Remedial Work within such period of time as may be required under any Legal Requirement. All Remedial Work shall be performed by licensed contractor(s) or subcontractor(s) approved in advance by Mortgagee and under the supervision of a consulting engineer approved by Mortgagee. All costs of such Remedial Work shall be paid by Mortgagor, including Mortgagee's reasonable attorneys' fees and disbursements incurred in connection with the monitoring and review of such Remedial Work. If Mortgagor does not timely commence and diligently prosecute to completion the Remedial Work, Mortgagee may (but shall not be obligated to) cause such Remedial Work to be performed at Mortgagor's cost and expense. Notwithstanding the foregoing, Mortgagor shall not be required to commence such Remedial Work within the above specified time period: (x) if prevented from doing so by any Governmental Authority, (y) if commencing such Remedial Work within such time period would result in Mortgagor or such Remedial Work violating any Environmental Law, or (z) if Mortgagor, at its expense and after prior written notice to Mortgagee, is contesting by appropriate legal, administrative or other proceedings, conducted in good faith and with due diligence, the need to perform Remedial Work. Mortgagor shall have the right to contest the need to perform such Remedial Work, provided that, (1) Mortgagor is permitted by Environmental Laws to delay performance of the Remedial Work pending such proceedings, (2) neither the Mortgaged Property nor any portion thereof or interest therein will be sold, forfeited or lost if Mortgagor fails to promptly perform the Remedial Work being contested, and if Mortgagor fails to prevail in such contest, Mortgagor would thereafter have the opportunity to perform such Remedial Work, (3) Mortgagee would not, by virtue of such contest, be exposed to any risk of any civil liability for which Mortgagor has not furnished additional security, as provided in clause (4) below, or to any risk of criminal liability, and neither the Mortgaged Property nor any interest therein would be subject to the imposition of any Lien for which Mortgagor has not furnished additional security as provided in clause (4) below, as a result of the failure to perform such Remedial Work and (4) Mortgagor shall have furnished to Mortgagee additional security in respect of the Remedial Work being contested and the loss or damage that may result from Mortgagor's failure to prevail in such contest in such amount as may be reasonably requested by Mortgagee but in no event less than 125% of the cost of such Remedial Work as

estimated by Mortgagee and any loss or damage that may result from Mortgagor's failure to prevail in such contest.

(e)     Mortgagor shall not install or permit to be installed on the Mortgaged Property any underground storage tank.

(f)     In the event any environmental report delivered to Mortgagee in connection with the Loan recommends the development of or continued compliance with an operation and maintenance program for the Mortgaged Property (including with respect to the presence of asbestos and/or lead-based paint) ("__*O & M Program*__"), Mortgagor shall develop (or continue to comply with, as the case may be) such O & M Program and shall comply in all material respects with the terms and conditions of the O & M Program.

17.     Casualty and Condemnation.

(a)     In case of loss or damage by fire or other casualty to the Mortgaged Property, Mortgagee may, in its sole discretion, settle and adjust any claim under any applicable Policy or allow Mortgagor to settle such claim. In either event, the Mortgagee shall collect all Proceeds paid by reason of such loss or damage, and will make such Proceeds available to Mortgagor for the purpose of restoring, repairing, replacing or rebuilding the Mortgaged Property (each, following such loss or damage or following any Taking, a "*Restoration*"; and "*Restore*" shall have the correlative meaning) of the Mortgaged Property, subject to the following conditions:

(i)     the plans and specifications for the Restoration of the Mortgaged Property shall be subject to the prior written approval of Mortgagee; and

(ii)     in the event Mortgagee determines, in its sole discretion, that the insurance proceeds are insufficient to complete the Restoration of the Mortgaged Property in accordance with the plans and specifications approved by Mortgagee, Mortgagor shall deposit with Mortgagee, within a period of forty-five (45) days after written demand therefor, such additional funds as shall be deemed necessary by Mortgagee to so complete the Restoration of the Mortgaged Property; and

(iii)     the Proceeds disbursed do not exceed 100% of the costs incurred in the Restoration of the Mortgaged Property;

(iv)     the Proceeds will be disbursed under procedures established by Mortgagee for disbursement of construction loans, and Mortgagee shall be entitled to a reasonable and customary administrative fee for every disbursement or partial disbursement of Proceeds made;

(v)     Mortgagor shall be responsible for the payment of, and shall reimburse Mortgagee for, all documented Third Party costs and expenses incurred by Mortgagee, including, but not limited to, reasonable consulting, engineering, architectural and legal fees and travel expenses;

(vi)     the net operating income from the Mortgaged Property shall, in Mortgagee's sole discretion, be sufficient to continue to service the Loan; and

-11-

Case 2:19-cv-06669-JMA-AYS Document 8-1 Filed 12/05/19 Page 62 of 78 PageID #: 67
INDEX NO. 620617/2019
NYSCEF DOC. NO. 4
RECEIVED NYSCEF: 10/18/2019

(vii)    at the time of the occurrence of such casualty, and at the time any such disbursement of Proceeds is sought, neither Mortgagor nor any other Loan Party is in default hereunder or under the Loan Agreement or under any other Loan Documents.

(b)    If in the opinion of Mortgagee, the Proceeds together with any additional funds deposited by Mortgagor, are insufficient to permit Restoration of the Mortgaged Property, Mortgagee may apply the Proceeds to the reduction of the Debt. If (i) the Proceeds are used for the Restoration of the Mortgaged Property and (ii) any surplus shall exist after such Restoration, such surplus may, at the option of Mortgagee, be held and applied to the reduction of the Debt.

(c)    In the event of a Taking, Mortgagor hereby assigns to Mortgagee all Awards and authorizes Mortgagee to collect and receive such Awards and to give receipts and acquittances therefor.  Mortgagor hereby agrees, upon request, to make, execute and deliver any and all additional assignments and other instruments sufficient, necessary or proper for the purpose of assigning said Awards to Mortgagee free and clear of any Liens or encumbrances of any kind or nature whatsoever. In the event that all or substantially all of the Mortgaged Property is Taken or in the event that less than all of the Mortgaged Property is Taken and Mortgagee determines, in its sole discretion, that the Mortgaged Property cannot be Restored to a condition which does not impair the Mortgaged Property, then all Awards shall be applied by the Mortgagee to the payment and satisfaction of the Debt, including the reimbursement of all expenses incurred by the Mortgagee, and the balance of any remaining Awards, if there are any, shall be released to Mortgagor.

(d)    If, prior to the receipt by Mortgagee of any Award, the Mortgaged Property shall have been Transferred as a result of any foreclosure of this Mortgage, Mortgagee shall have the right to receive such Award to the extent of any deficiency found to be due upon such Transfer, with legal interest thereon, whether or not a deficiency judgment on this Mortgage shall have been sought, recovered or denied.

18.    Right to Cure Defaults.  Upon the occurrence of any Event of Default, Mortgagee may, but without any obligation to do so and without notice to or demand on Mortgagor and without releasing Mortgagor from any obligation hereunder, perform the obligations of Mortgagor and any other Loan Party under the Loan Documents in default in such manner and to such extent as Mortgagee may deem necessary to protect the Lien and security interest created hereby. Mortgagee is authorized to enter upon the Mortgaged Property for such purposes or appear in, defend or bring any action or proceeding to protect its interests in and to the Mortgaged Property or to foreclose this Mortgage or collect the Debt, and the cost and expense thereof (including reasonable attorneys' fees and disbursements to the extent permitted by applicable Legal Requirements), with interest thereon at the then applicable default rate from the date on which such cost or expense was incurred by Mortgagee under this Paragraph 18 to the date of payment to Mortgagee, shall: (i) constitute a portion of the Debt, (ii) be secured by this Mortgage and the other Loan Documents, and (iii) be due and payable to Mortgagee upon demand.

Case 2:19-cv-06692-GRB Document 1-2 Filed 12/13/19 Page 63 of 78 PageID #: 68

## ARTICLE II. REMEDIES

19.    Remedies.

(a)    Upon the occurrence of any Event of Default, under the Loan Agreement, or under any other Loan Document, in addition to any other rights, remedies and powers that Mortgagee may have under the Loan Documents or as permitted by Legal Requirements, Mortgagee may take such action, without notice or demand, as it deems advisable to protect and enforce its rights against Mortgagor and in and to the Mortgaged Property, by Mortgagee itself or otherwise, including the following actions, each of which may be pursued concurrently or otherwise, at such time and in such order as Mortgagee may determine, in its sole discretion, without impairing or otherwise affecting the other rights and remedies of Mortgagee, whether under the Loan Agreement, the other Loan Documents or any Legal Requirement:

(i)    declare the entire Debt to be immediately due, payable and collectible regardless of maturity;

(ii)    institute a proceeding or proceedings, judicial or nonjudicial, to the extent permitted by Legal Requirements, by advertisement or otherwise, for the complete foreclosure of this Mortgage, in which case the Mortgaged Property may be sold for cash or upon credit in one or more parcels or in several interests or portions and in any order or manner;

(iii)    with or without entry, to the extent permitted and pursuant to the procedures provided by Legal Requirements, institute proceedings for the partial foreclosure of this Mortgage for the portion of the Debt then due and payable, subject to the continuing Lien of this Mortgage for the balance of the Debt not then due;

(iv)    sell for cash or upon credit the Mortgaged Property and all estate, claim, demand, right, title and interest of Mortgagor therein and rights of redemption thereof, pursuant to the power of sale, to the extent permitted by Legal Requirements, or otherwise, at one or more sales, as an entirety or in parcels, at such time and place, upon such terms and after such notice thereof as may be required or permitted by Legal Requirements;

(v)    institute an action, suit or proceeding in equity for the specific performance of any covenant, condition or agreement contained in this Mortgage, the Loan Agreement, or any other Loan Document;

(vi)    recover judgment on the Loan Agreement and other Loan Documents either before, during or after any proceeding for the enforcement of this Mortgage;

(vii)    if permitted by Legal Requirements, obtain a judgment for any deficiency remaining in the Debt after application of amounts received from the exercise of the rights provided in this Paragraph 19;

-13-

(viii)    apply for the appointment of a trustee, receiver, liquidator or conservator of the Mortgaged Property, without notice and without regard for the adequacy of any security for the Debt and without regard for the solvency of the Mortgagor or of any Person liable for the payment of the Debt;

(ix)    enforce Mortgagee's interest in the Leases and Rents and enter into or upon the Mortgaged Property, either personally or by its agents, nominees or attorneys and dispossess Mortgagor and its, his, or her agents and employees therefrom, and thereupon Mortgagee may (A) use, operate, manage, control, insure, maintain, repair, restore and otherwise deal with the Mortgaged Property and conduct the business thereat; (B) complete any construction on the Mortgaged Property in such manner and form as Mortgagee deems advisable; (C) make alterations, additions, renewals, replacements and improvements to or on the Mortgaged Property; (D) exercise all rights and powers of Mortgagor with respect to the Mortgaged Property, whether in the name of Mortgagor or otherwise, including the right to make, cancel, enforce or modify Leases, obtain and evict tenants, and demand, sue for, collect and receive Rents; and (E) apply the receipts from the Mortgaged Property to the payment of the Debt, after deducting therefrom all expenses (including reasonable attorneys' fees and disbursements) incurred in connection with the aforesaid operations and all amounts necessary to pay the Taxes, Policies, and Other Charges in connection with the Mortgaged Property, as well as just and reasonable compensation for the services of Mortgagee, and its counsel, agents and employees;

(x)    require Mortgagor to pay monthly in advance to Mortgagee, or any receiver appointed to collect the Rents, the fair and reasonable rental value for the use and occupation of any portion of the Mortgaged Property occupied by Mortgagor, and require Mortgagor to vacate and surrender possession of the Mortgaged Property to Mortgagee or to such receiver, and, in default thereof, evict Mortgagor by summary proceedings or otherwise; or

(xi)    pursue such other rights and remedies as may be available at law or in equity or under the UCC or other applicable Legal Requirements, including the right to receive and/or establish a lock box for all Rents and proceeds from the Intangibles and any other receivables or rights to payments of Mortgagor relating to the Mortgaged Property.

In the event of a sale or other Transfer, by foreclosure or otherwise, of less than all of the Mortgaged Property, this Mortgage shall continue as a Lien on the remaining portion of the Mortgaged Property.

(b)    The proceeds of any sale or other Transfer made under or by virtue of this Paragraph 19, together with any other sums which then may be held by Mortgagee under this Mortgage, whether under the provisions of this paragraph or otherwise, shall be applied by Mortgagee to the payment of the Debt in such priority and proportion as Mortgagee in its sole discretion shall determine.

(c)    Mortgagee may adjourn from time to time any sale or other Transfer by it to be made under or by virtue of this Mortgage by announcement at the time and place appointed for such sale or other Transfer for such adjourned sale or other Transfer; and, except as otherwise

-14-

provided by any Legal Requirements, Mortgagee, without further notice or publication, may make such sale or other Transfer at the time and place to which the same shall be so adjourned.

(d)    Upon the completion of any sale(s) or other Transfer(s) pursuant hereto, Mortgagee, or an officer of any court empowered to do so, shall execute and deliver to the accepted purchaser or purchasers a good and sufficient instrument, or good and sufficient instruments, Transferring all estate, right, title and interest in and to the Mortgaged Property and rights sold. Mortgagee is hereby irrevocably appointed the true and lawful attorney of Mortgagor, in its name and stead, to make all necessary Transfers of the Mortgaged Property and rights so sold and for that purpose Mortgagee may execute all necessary instruments of Transfer, and may substitute one or more Persons with like power, Mortgagor hereby ratifying and confirming all that its said attorney or such substitute or substitutes shall lawfully do by virtue hereof.  Any sale(s) or Transfer(s) made under or by virtue of this Paragraph 19, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, shall operate to divest all the estate, right, title, interest, claim and demand whatsoever, whether at law or in equity, of Mortgagor in and to the properties and rights so sold, and shall be a perpetual bar both at law and in equity against Mortgagor and against any and all Persons claiming or who may claim the same, or any portion thereof, from, through or under Mortgagor.

(e)    Upon any sale(s) or other Transfer(s) made under or by virtue of this Paragraph 19, whether made under a power of sale or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, Mortgagee may bid for and acquire the Mortgaged Property or any portion thereof and in lieu of paying cash therefor may make settlement for the purchase price by crediting upon the Debt the net sales price after deducting therefrom the expenses of the sale or other Transfer and costs of the action and any other sums which Mortgagee is authorized to deduct under this Mortgage or any other Loan Document.

(f)    No recovery of any judgment by Mortgagee and no levy of an execution under any judgment upon the Mortgaged Property or upon any other property of Mortgagor shall affect in any manner or to any extent the Lien of this Mortgage upon the Mortgaged Property or any portion thereof, or any Liens, rights, powers or remedies of Mortgagee hereunder, but such Liens, rights, powers and remedies of Mortgagee shall continue unimpaired as before.

(g)    Mortgagee may terminate or rescind any proceeding or other action brought in connection with its exercise of the remedies provided in this Paragraph 19 at any time before the conclusion thereof, as determined in Mortgagee's sole discretion and without prejudice to Mortgagee.

(h)    In any action to foreclose this Mortgage or upon the occurrence of an Event of Default, the Mortgagee shall have the right to apply for the appointment of receiver, trustee, liquidator or conservator of the rents and profits of the Mortgaged Property, and shall be entitled to the appointment of such receiver as a matter of right.  Mortgagor hereby consents to such appointment and waives notice of any application thereof.

(i)    Mortgagee may resort to any remedies and the security given by this Mortgage or in any other Loan Document in whole or in part, and in such portions and in such

Case 2:19-cv-06945-GRB Document 8-2 Filed 12/32/19 Page 66 of 78 PageID #: 71

order as determined by Mortgagee in its sole discretion. No such action shall in any way be considered a waiver of any rights, benefits or remedies evidenced or provided by any Loan Document. The failure of Mortgagee to exercise any right, remedy or option provided in any Loan Document shall not be deemed a waiver of such right, remedy or option or of any covenant or obligation secured by any Loan Document. No acceptance by Mortgagee of any payment after the occurrence of any Event of Default and no payment or performance by Mortgagee of any obligation for which Mortgagor or any other Loan Party, as applicable, is liable hereunder shall be deemed to waive or cure any Event of Default, or Mortgagor's liability to pay such obligation. No sale or other Transfer of all or any portion of the Mortgaged Property, no forbearance on the part of Mortgagee, and no extension of time for the payment of the whole or any portion of the Debt or any other indulgence given by Mortgagee to Mortgagor, shall operate to release or in any manner affect the interest of Mortgagee in the remaining Mortgaged Property or the liability of Mortgagor to pay the Debt. No waiver by Mortgagee shall be effective unless it is in writing and then only to the extent specifically stated. All costs and expenses of Mortgagee in exercising its rights and remedies under this Paragraph 19 (including reasonable attorneys' fees and disbursements to the extent permitted by Legal Requirements), shall be paid by Mortgagor within five (5) days after notice from Mortgagee, with interest at the then applicable default rate for the period after notice from Mortgagee, and such costs and expenses shall constitute a portion of the Debt and shall be secured by this Mortgage.

(j)      The interests and rights of Mortgagee under the Loan Documents shall not be impaired by any indulgence or forbearance, including (i) any renewal, extension or modification which Mortgagee may grant with respect to any of the Debt, (ii) any surrender, compromise, release, renewal, extension, exchange or substitution which Mortgagee may grant with respect to the Mortgaged Property or any portion thereof or (iii) any release or indulgence granted to any maker, endorser, guarantor, pledgor, or surety of any of the Debt.

20.    Right of Entry.  In addition to any other rights or remedies granted under this Mortgage, Mortgagee and its agents and employees shall have the right to enter and inspect or audit the Mortgaged Property at any reasonable time during the term of this Mortgage. Subject to the next sentence, the cost of such inspections or audits shall be borne by Mortgagor should Mortgagee determine that an Event of Default exists, including the cost of all follow up or additional investigations, audits, or inquiries deemed reasonably necessary by Mortgagee. The cost of such inspections and audits, if not paid for by Mortgagor within five (5) days after demand, may be added to the principal balance of the Loan and this Mortgage and shall bear interest thereafter until paid at the then applicable default rate.

## ARTICLE III. MISCELLANEOUS

21.    Notices.  All notices, consents, approvals, demands, and requests required or permitted hereunder or under any other Loan Document (each, a "*Notice*") shall be given in writing and shall be effective for all purposes if either hand delivered with receipt acknowledged, or by a nationally recognized overnight delivery service (such as Federal Express), or by certified or registered United States mail, return receipt requested, postage prepaid, in each case addressed as follows (or to such other address or Person as a party shall designate from time to time by Notice to the other party):

-16-

Case 2:19-cv-06960 Document 1-7 Filed 12/12/19 Page 67 of 78 PageID #: 72

|              |                                                  |
|--------------|--------------------------------------------------|
| If to<br>Mortgagee: | **AXOS BANK**<br>c/o World Business Lenders, LLC<br>101 Hudson St., 33rd Floor<br>Jersey City, NJ 07302<br>Attn: Robert M. Pardes, Managing Director |
| with a copy<br>to: | **WORLD BUSINESS LENDERS, LLC**<br>101 Hudson St., 33rd Floor<br>Jersey City, NJ 07302<br>Attn: Andy Occhino, General Counsel |
| If to<br>Mortgagor: | **JACOB ADONI A/K/A JACOB V. ADONI**<br>19 Chestnut Hill Drive<br>Oyster Bay, NY 11771 |

A Notice shall be deemed to have been given: in the case of hand delivery, at the time of delivery; in the case of registered or certified mail, when delivered or the first attempted delivery on a business day; or in the case of overnight delivery, upon the first attempted delivery on a business day.

22.    Security Agreement.    This Mortgage is both a real property Mortgage and a "security agreement" within the meaning of the UCC. The Mortgaged Property includes both real and personal property and all other rights and interests, whether tangible or intangible in nature, of Mortgagor in the Mortgaged Property. In addition, in order to secure the prompt payment and performance of the Debt, Mortgagor hereby grants to Mortgagee a security interest in all of Mortgagor's right, title and interest, whether now owned or hereafter acquired or arising, in and to the following (each item having the meaning ascribed to such term in the UCC): (a) all accounts, (b) all chattel paper, (c) all equipment, (d) all fixtures, (e) all general intangibles, (f) all goods, (g) all instruments, (h) all inventory, (i) all deposit accounts and securities accounts, (j) all other portions of the Mortgaged Property which may be subject to the UCC, and (k) all proceeds of any and all of the foregoing (collectively, the "*UCC Collateral*"). This Mortgage shall also constitute a "fixture filing" for the purposes of the UCC. As such, this Mortgage covers all items of the UCC Collateral that are or are to become fixtures. Information concerning the security interest herein granted may be obtained from the parties at the addresses of the parties set forth in the first paragraph of this Mortgage. If an Event of Default shall occur, Mortgagee, in addition to any other rights and remedies which it may have, shall have and may exercise immediately and without demand, any and all rights and remedies granted to a secured party upon default under the UCC, including, without limiting the generality of the foregoing, the right to take possession of the UCC Collateral or any portion thereof, and to take such other measures as Mortgagee may deem necessary for the care, protection and preservation of the UCC Collateral. Upon request or demand of Mortgagee, Mortgagor shall at its expense assemble the UCC Collateral and make it available to Mortgagee at a place acceptable to Mortgagee. Mortgagor shall pay to Mortgagee on demand any and all reasonable expenses, including reasonable attorneys' fees and disbursements, incurred or paid by Mortgagee in protecting its interest in the UCC Collateral and in enforcing the rights hereunder with respect to the UCC Collateral. Any notice of sale, disposition, other Transfer, or other intended action by Mortgagee with respect to the UCC Collateral, sent to Mortgagor in accordance with the provisions hereof at least ten (10) days prior to such action, shall constitute

Case 2:19-cv-06692-MKB Document 1-2 Filed 12/25/19 Page 68 of 78 PageID #: 73

commercially reasonable notice to Mortgagor. The proceeds of any disposition of the UCC Collateral, or any part thereof, may be applied by Mortgagee to the payment of the Debt in such priority and proportions as Mortgagee in its sole discretion shall determine. In the event of any change in name, identity or structure of Mortgagor, Mortgagor shall promptly notify Mortgagee thereof in writing and promptly after request shall prepare, execute, file and/or record or authorize Mortgagee to prepare, file and/or record, as applicable, such UCC forms as are necessary to maintain the priority of Mortgagee's Lien upon and security interest in the UCC Collateral, and shall pay all expenses and fees in connection with the filing and recording thereof. If Mortgagee shall require the preparation, filing and/or recording of additional UCC financing or continuation statements, Mortgagor shall, promptly after request, file and record such UCC forms or continuation statements as Mortgagee shall deem necessary, and shall pay all reasonable expenses and fees in connection with the filing and recording thereof, it being understood and agreed, however, that no such additional documents shall increase Mortgagor's obligations under the Loan Documents. Mortgagor hereby authorizes Mortgagee at any time and from time to time to file any financing or continuation statements in any jurisdiction and with such filings offices as is necessary or desirable to establish or maintain the perfection and priority of the security interests granted in this Mortgage. Any such financing statements may indicate the collateral as "all assets of the debtor, including all goods that are or to become fixtures, whether now owned or hereafter acquired or arising" or using words of similar effect. Mortgagor hereby irrevocably appoints Mortgagee as its attorney-in-fact, coupled with an interest, to file with the appropriate public office on its behalf any financing or other statements signed or authorized only by Mortgagee, as secured party, in connection with the UCC Collateral covered by this Mortgage.

23. <u>Actions and Proceedings</u>. Mortgagee has the right to appear in and defend any action or proceeding brought with respect to the Mortgaged Property and to bring any action or proceeding, in the name and on behalf of Mortgagor, which Mortgagee, in its sole discretion, decides should be brought to protect its or their interest in and Lien on the Mortgaged Property. Mortgagee shall, at its option, be subrogated to the Lien of any mortgage or other security instrument discharged in whole or in part by the Debt, and any such subrogation rights shall constitute additional security for the full and indefeasible payment of the Debt.

24. <u>Marshalling and Other Matters</u>. Mortgagor hereby waives, to the extent permitted by Legal Requirements, the benefit of all appraisement, valuation, stay, extension, reinstatement and redemption laws now or hereafter in force and all rights of marshalling in the event of any sale or other Transfer hereunder of the Mortgaged Property or any portion thereof or any interest therein. Further, Mortgagor hereby expressly waives any and all rights of redemption from the sale or other Transfer under any order or decree of foreclosure of this Mortgage on behalf of Mortgagor, and on behalf of each and every Person acquiring any interest in or title to the Mortgaged Property subsequent to the Effective Date and on behalf of all Persons to the extent permitted by applicable Legal Requirements. The Lien of this Mortgage shall be absolute and unconditional and shall not in any manner be affected or impaired by any acts or omissions whatsoever of Mortgagee and, without limiting the generality of the foregoing, the Lien hereof shall not be impaired by (i) any acceptance by Mortgagee of any other security for any portion of the Debt, (ii) any failure, neglect or omission on the part of Mortgagee to realize upon or protect any portion of the Debt or any collateral security therefor or (iii) any release (except as to the property released), sale, Transfer, pledge, surrender, compromise, settlement, renewal, extension, indulgence, alteration, changing, modification or disposition of any portion of the Debt or of any

of the collateral security therefor (including, the Mortgaged Property and any other collateral, including the Collateral (as defined in the Loan Agreement); and Mortgagee may foreclose, or exercise any other remedy available to Mortgagee under other Loan Documents without first exercising or enforcing any of its remedies under this Mortgage, and any exercise of the rights and remedies of Mortgagee hereunder shall not in any manner impair the Debt, the Liens created hereby or by any other Loan Document, or any of Mortgagee's rights and remedies thereunder.

   25.   <u>Inapplicable Provisions</u>.  If any term, covenant or condition of this Mortgage is held to be invalid, illegal or unenforceable in any respect, this Mortgage shall be construed without such provision.

   26.   <u>Headings</u>.   The paragraph headings in this Mortgage are for convenience of reference only and are not to be construed as defining or limiting, in any way, the scope or intent of the provisions hereof.

   27.   <u>Duplicate Originals</u>.  This Mortgage may be executed in any number of duplicate originals and each such duplicate original shall be deemed to be an original.

   28.   <u>Homestead</u>.  Mortgagor hereby waives and renounces all homestead and exemption rights provided by the Constitution and the laws of the United States or by any other Legal Requirement, in and to the Mortgaged Property as against the collection of the Debt, or any portion thereof.

   29.   <u>Assignments</u>.  Mortgagee shall have the right to assign or Transfer its rights under this Mortgage without limitation.  Any assignee or Transferee shall be entitled to all the benefits afforded Mortgagee under this Mortgage including all rights contained in this <u>Paragraph 29</u>.

   30.   <u>Waiver of Jury Trial</u>.  **MORTGAGOR HEREBY AGREES NOT TO ELECT A TRIAL BY JURY OF ANY ISSUE TRIABLE OF RIGHT BY JURY, AND WAIVES ANY RIGHT TO TRIAL BY JURY FULLY IRREVOCABLY AND UNCONDITIONALLY TO THE EXTENT THAT ANY SUCH RIGHT SHALL NOW OR HEREAFTER EXIST WITH REGARD TO THIS MORTGAGE OR ANY OTHER LOAN DOCUMENT, OR ANY CLAIM, COUNTERCLAIM OR OTHER ACTION ARISING IN CONNECTION THEREWITH.  THIS WAIVER OF RIGHT TO TRIAL BY JURY IS GIVEN KNOWINGLY AND VOLUNTARILY BY MORTGAGOR, AND IS INTENDED TO ENCOMPASS INDIVIDUALLY EACH INSTANCE AND EACH ISSUE AS TO WHICH THE RIGHT TO A TRIAL BY JURY WOULD OTHERWISE ACCRUE.  MORTGAGEE IS HEREBY AUTHORIZED TO FILE A COPY OF THIS PARAGRAPH IN ANY PROCEEDING AS CONCLUSIVE EVIDENCE OF THIS WAIVER BY MORTGAGOR.**

   31.   <u>Consents</u>.  Any consent or approval by Mortgagee in any single instance shall not be deemed or construed to be Mortgagee's consent or approval in any like matter arising at a subsequent date, and the failure of Mortgagee to promptly exercise any right, power, remedy, consent or approval provided herein or at law or in equity shall not constitute or be construed as a waiver of the same nor shall Mortgagee be estopped from exercising such right, power, remedy, consent or approval at any later date.  Any consent or approval requested of and granted by Mortgagee pursuant hereto shall be narrowly construed to be applicable only to Mortgagor and the

Case 2:19-cv-06969-WFK-ARL   Document 12   Filed 12/32/19   Page 70 of 78 PageID #: 75

matter identified in such consent or approval and no other Person shall claim any benefit by reason thereof, and any such consent or approval shall not be deemed to constitute Mortgagee a venturer or partner with Mortgagor nor shall privity of contract be presumed to have been established with any such other Person. If Mortgagee deems it to be in its best interest to retain assistance of Persons, firms or corporations (including attorneys, title insurance companies, appraisers, engineers and surveyors) with respect to a request for consent or approval, Mortgagor shall reimburse Mortgagee for all costs reasonably incurred in connection with the employment of such Persons, firms or corporations.

32.   Employee Benefit Plan.  During the term of this Mortgage, unless Mortgagee shall have previously consented in writing, (i) Mortgagor shall take no action that would cause it to become an "*employee benefit plan*" as defined in 29 C.F.R. Section 2510.3-101, or "*assets of a governmental plan*" subject to regulation under the state statutes, and (ii) Mortgagor shall not Transfer the Mortgaged Property, or any portion thereof or interest therein, to any transferee that does not execute and deliver to Mortgagee its, his or her written assumption of the obligations of this Paragraph 32. Mortgagor shall protect, defend, indemnify and hold Mortgagee harmless from and against all loss, cost, damage and expense (including all attorneys' fees and disbursements, excise taxes and costs and expenses of correcting any prohibited transaction or obtaining an appropriate exemption) that Mortgagee may incur as a result of Mortgagor's breach of this Paragraph 32. The covenant and indemnity in this Paragraph 32 shall survive the extinguishment of the Lien of this Mortgage by foreclosure or action in lieu thereof; furthermore, the foregoing indemnity shall supersede any limitations on Mortgagor's liability under any of the Loan Documents.

33.   GOVERNING LAW AND VENUE.

(a)   WITH RESPECT TO MATTERS RELATING TO THE CREATION AND PERFECTION OF THE LIENS AND SECURITY INTERESTS CREATED BY THIS MORTGAGE, AND TO PROCEDURES RELATING TO THE FORECLOSURE OF SUCH LIENS AND SECURITY INTERESTS, THIS MORTGAGE SHALL BE GOVERNED BY, AND BE CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE PROPERTY STATE, IT BEING UNDERSTOOD THAT, EXCEPT AS EXPRESSLY SET FORTH ABOVE IN THIS PARAGRAPH AND TO THE FULLEST EXTENT PERMITTED BY THE LAW OF THE PROPERTY STATE, THE LAW OF THE LOAN AGREEMENT STATE APPLICABLE TO CONTRACTS MADE AND PERFORMED IN SUCH STATE, SHALL GOVERN ALL OTHER MATTERS RELATING TO THIS MORTGAGE AND THE OTHER LOAN DOCUMENTS, INCLUDING ALL MATTERS RELATING TO THE DEBT (INCLUDING THE ENFORCEMENT THEREOF) ARISING HEREUNDER OR THEREUNDER.  ALL PROVISIONS OF THE LOAN AGREEMENT AND THE OTHER LOAN DOCUMENTS INCORPORATED HEREIN BY REFERENCE SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE LOAN AGREEMENT STATE, AS SET FORTH IN THE GOVERNING LAW PROVISION OF THE LOAN AGREEMENT.

(b)   THE MORTGAGOR HEREBY CONSENTS TO THE JURISDICTION OF THE COURTS OF THE LOAN AGREEMENT STATE (AND THE PROPERTY STATE IF THE MORTGAGED PROPERTY IS NOT LOCATED IN THE LOAN AGREEMENT STATE) IN ANY ACTION ARISING OUT OF OR IN CONNECTION WITH THIS MORTGAGE

Case 2:20-cv-06086   Document 1-8   Filed 12/15/19   Page 71 of 78 PageID #: 76

AND/OR THE OTHER LOAN DOCUMENTS. IN ADDITION, THE MORTGAGOR IRREVOCABLY AND UNCONDITIONALLY WAIVES ANY OBJECTION WHICH THE MORTGAGOR MAY NOW OR HEREAFTER HAVE TO THE LAYING OF VENUE OF ANY ACTION ARISING OUT OF OR IN CONNECTION WITH THIS MORTGAGE AND/OR THE OTHER LOAN DOCUMENTS BROUGHT IN ANY OF THE AFORESAID COURTS, AND HEREBY FURTHER IRREVOCABLY AND UNCONDITIONALLY WAIVES THE RIGHT TO PLEAD OR CLAIM THAT ANY SUCH ACTION BROUGHT IN ANY SUCH COURT HAS BEEN BROUGHT IN AN INCONVENIENT FORUM.

      34.    Joint and Several Liability. If Mortgagor consists of more than one Person, all liabilities and obligations of each such Mortgagor under this Mortgage, shall be joint and several.

      35.    Future Advances. This Mortgage is given (i) to secure the Debt and (ii) to wholly secure all future advances and/or future obligations of Mortgagor to Mortgagee whether now existing or hereafter incurred by reason of future advances or future obligations by Mortgagee and regardless of whether such advances or obligations were contemplated by the parties as of the Effective Date. Notice of the continuing grant under the Mortgage shall not be required to be stated on the face of any document evidencing the Debt or any Obligation nor shall such documents be required to otherwise specify that they were secured hereby. The maximum principal amount which may be secured by this Mortgage at any one time is *$90,000.00* plus interest (which may include interest on interest) and costs of collection. The period in which future advances may be made and future obligations may be incurred is the period between the Effective Date and that date which is thirty (30) years from the Effective Date. All future advances and future obligations shall be considered to be made pursuant to applicable Legal Requirements.

## ARTICLE IV. STATE SPECIFIC PROVISIONS

      36.    Principles of Construction. In the event of any inconsistencies between the terms and conditions of this Article IV and the other terms and conditions of this Mortgage, the terms and conditions of this Article IV shall control and be binding.

      37.    Acceleration; Remedies.

          (a)    At any time after the occurrence of an Event of Default, Mortgagee, at Mortgagee's option, may declare the Debt to be immediately due and payable without further demand, and may foreclose this Mortgage by judicial or nonjudicial proceedings, will be entitled to the appointment of a receiver, without notice, and may invoke any other remedies permitted by New York law or provided in this Mortgage, the Loan Agreement or in any other Loan Document.

          (b)    Mortgagee may, at Mortgagee's option, also foreclose this Mortgage for any portion of the Loan which is then due and payable, subject to the continuing Lien of this Mortgage for the balance of the Debt.

          (c)    Mortgagee will be entitled to collect all costs and expenses allowed by New York law, including attorneys' fees and costs, costs of documentary evidence, abstracts, title reports, statutory costs and any additional allowance made pursuant to Section 8303 of the Civil Practice Law and Rules.

Case SUFFOLK COUNTY CLERK Document Filed 12/35/1AM Page 72 of 78 PageID #: 77
INDEX NO. 620617/2019
RECEIVED NYSCEF: 10/18/2019

(d)     The rights and remedies of Mortgagee specified in this Mortgage will be in addition to Mortgagee's rights and remedies under New York law, specifically including Section 254 of the Real Property Law. In the event of any conflict between the provision of this Mortgage, the Loan Agreement and the provisions of Section 254 of the Real Property Law, the provisions of this Mortgage and the Loan Agreement will control. Notwithstanding anything contained in this Mortgage, it is specifically acknowledged that the provisions of subsection 4 of Section 254 of the Real Property Law covering the insurance of buildings against loss by fire will not apply to this Mortgage or the Loan Agreement.

38.     <u>Satisfaction of Debt</u>. Upon payment of the Debt, Mortgagee will discharge this Mortgage. If it is the practice of the industry at the time the Debt is paid to assign, rather than discharge, a mortgage, then at Mortgagor's request, Mortgagee will assign Mortgagee's interest in this Mortgage, together with the Loan Agreement notes secured by this Mortgage, to a Person specified by Mortgagor in writing to Mortgagee. Mortgagee will make any such assignment without recourse to Mortgagee, using Mortgagee's then-current form of assignment. If any original note is lost or destroyed, Mortgagee will provide a lost note affidavit, which will provide that Mortgagee will have no liability for such loss or destruction. Mortgagor will pay Mortgagee's reasonable costs incurred in discharging or assigning this Mortgage, as applicable.

39.     <u>Lien Law</u>. Mortgagor will receive advances under this Mortgage subject to the trust fund provisions of Section 13 of the Lien Law.

40.     <u>Maximum Principal Amount</u>. Notwithstanding any provision set forth in this Mortgage to the contrary, the maximum amount of principal indebtedness secured by this Mortgage at execution, or which under any contingency may become secured by this Mortgage at any time hereafter, is $90,000.00, plus all interest payable under the Loan Agreement and all amounts expended by Mortgagee after an Event of Default for all of the following:

(a)     For the payment of taxes, charges or assessments which may be imposed by legal requirements upon the Mortgaged Property.

(b)     To maintain the insurance required under the Loan Agreement.

(c)     For any expenses incurred in maintaining the Mortgaged Property and upholding the Lien of this Mortgage, including the expense of any litigation to prosecute or defend the rights and Lien created by this Mortgage.

(d)     For any amount, cost or charge to which Mortgagee becomes subrogated, upon payment, whether under recognized principles of law or equity, or under express statutory authority, together with interest on all of the foregoing amounts at the Default Rate (as defined in the Loan Agreement).

41.     <u>Section 291-F of the Real Property Law</u>. In addition to any other right or remedy contained in this Mortgage, the Loan Agreement or in any other Loan Document, Mortgagee will have all the rights against lessees of all or any part of the Mortgaged Property as are set forth in Section 291-f of the Real Property Law of New York.

-22-

Case 8:20-cv-06323-FLA-DFM Document 8-7 Filed 12/35/1AM Page 73 of 78 PageID #: 78

42.      _Transfer Tax Provisions_. Mortgagor covenants and agrees to each of the following:

(a)      In the event of a sale of the Mortgaged Property or other Transfer, Mortgagor will duly complete, execute and deliver to Mortgagee, contemporaneously with the submission to the applicable taxing authority or recording officer, all forms and supporting documentation required by such taxing authority or recording officer to estimate and fix any and all applicable state and local real estate transfer taxes (collectively "**Transfer Taxes**") assessable by reason of such sale or other Transfer or recording of the deed evidencing such sale or other Transfer.

(b)      Mortgagor will pay all Transfer Taxes that may hereafter become due and payable with respect to any Transfer, and if Mortgagor fails to pay any such Transfer Taxes, Mortgagee may pay such Transfer Taxes and the amount of such payment will be added to the Debt and, unless incurred in connection with a foreclosure of this Mortgage, be secured by this Mortgage.

The provisions of this Section will survive any Transfer and the delivery of the deed in connection with any Transfer.

43.      **WAIVER OF TRIAL BY JURY.**

(a)      **EACH OF MORTGAGOR AND MORTGAGEE COVENANTS AND AGREES NOT TO ELECT A TRIAL BY JURY WITH RESPECT TO ANY ISSUE ARISING OUT OF THIS MORTGAGE OR THE RELATIONSHIP BETWEEN THE PARTIES AS GUARANTOR AND LENDER THAT IS TRIABLE OF RIGHT BY A JURY.**

(b)      **EACH OF MORTGAGOR AND MORTGAGEE WAIVES ANY RIGHT TO TRIAL BY JURY WITH RESPECT TO SUCH ISSUE TO THE EXTENT THAT ANY SUCH RIGHT EXISTS NOW OR IN THE FUTURE. THIS WAIVER OF RIGHT TO TRIAL BY JURY IS SEPARATELY GIVEN BY EACH PARTY, KNOWINGLY AND VOLUNTARILY WITH THE BENEFIT OF COMPETENT LEGAL COUNSEL.**

44.      **TRUE AND CORRECT COPY. MORTGAGOR HEREBY DECLARES THAT MORTGAGOR HAS READ THIS MORTGAGE, HAS RECEIVED A COMPLETELY FILLED-IN COPY OF IT WITHOUT CHARGE THEREFOR, AND HAS SIGNED THIS MORTGAGE AS OF THE EFFECTIVE DATE.**

**ARTICLE V. DEFINITIONS; PRINCIPLES OF CONSTRUCTION**

45.      _Definitions_. The following terms have the meanings set forth below:

**_Affiliate_**: as to any Person, any other Person (i) which directly or indirectly through one or more intermediaries Controls, or is Controlled by, or is under common Control with, such Person; or (ii) which, directly or indirectly, beneficially owns or holds ten percent (10%) or more of any class of stock or any other ownership interest in such Person; or (iii) ten percent (10%) or more of the direct or indirect ownership of which is beneficially owned or held by such Person; or (iv) which is a member of the family (as defined in Section 267(c)(4) of the Bankruptcy Code) of such Person or which is a trust or estate, the beneficial owners of which are members of the family (as defined in Section 267(c)(4) of the Bankruptcy Code) of such Person; or (v) which directly or

Case 2:19-cv-06914 Document 1-2 Filed 12/25/19 Page 74 of 78 PageID #: 79

indirectly is a general partner, controlling shareholder, managing member, officer, director, trustee or employee of such Person.

*Award(s):* award(s) heretofore or hereafter made for damages suffered or compensation paid by reason of a Taking.

*Bankruptcy Proceeding*: with respect to any Person, any petition by or against such Person under the Bankruptcy Code or any state or other federal bankruptcy or insolvency law, or the liquidation of all or a major portion of the assets or properties of such Person.

*Condemnation:* any condemnation or eminent domain proceeding affecting the Mortgaged Property.

*Control:* with respect to any Person, either (i) ownership directly or indirectly of fifty percent (50%) or more of all equity interests in such Person or (ii) the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of such Person, through the ownership of voting securities, by contract or otherwise; and the terms "Controlled", "Controlling" and "common Control" shall have correlative meanings.

*Environmental Laws*: any Legal Requirement pertaining to or imposing liability or standards of conduct concerning environmental regulation, contamination or clean-up, including, without limitation, the Comprehensive Environmental Response, Compensation and Liability Act, the Resource Conservation and Recovery Act, the Emergency Planning and Community Right-to-Know Act of 1986, the Hazardous Substances Transportation Act, the Solid Waste Disposal Act, the Clean Water Act, the Clean Air Act, the Toxic Substance Control Act, the Safe Drinking Water Act, the Occupational Safety and Health Act, any state super-lien and environmental clean-up statutes, any other federal or state or local law requiring related permits and licenses and all amendments to and regulations in respect of the foregoing.

*Governmental Authority*: any court, board, agency, commission, office or authority of any nature whatsoever for any governmental unit (federal, state, county, district, municipal, city or otherwise) now or hereafter in existence.

*Hazardous Materials*: hazardous, toxic and/or dangerous substances, Toxic Mold, or any other substances or materials which are included under or regulated by Environmental Laws.

*Legal Requirements*: statutes, laws, rules, orders, regulations, ordinances, judgments, decrees and injunctions of any Governmental Authority (including those regarding fire, health, handicapped access, sanitation, ecological, historic, zoning, environmental protection, wetlands and building laws and the Americans with Disabilities Act of 1990, Pub. L. No. 89-670, 104 Stat. 327 (1990), as amended, and all regulations promulgated pursuant thereto) affecting Mortgagor, any Loan Document, or all or part of the Mortgaged Property or the construction, ownership, use, alteration or operation thereof, whether now or hereafter enacted and in force, and all permits, licenses and authorizations and regulations relating thereto, and all covenants, agreements, restrictions and encumbrances contained in any instrument, either of record or known to Mortgagor, at any time in force affecting all or part of the Mortgaged Property.

-24-

Case 2:19-cv-06488 Document 1-8 Filed 12/32/19 Page 75 of 78 PageID #: 80

*Lien:* any mortgage, deed of trust, lien (statutory or otherwise), pledge, hypothecation, easement, restrictive covenant, preference, assignment, security interest, or any other encumbrance, charge or Transfer of, or any agreement to enter into or create any of the foregoing, on or affecting all or any portion of the Mortgaged Property or any interest therein, or any direct or indirect interest in Mortgagor, including any conditional sale or other title retention agreement, any financing lease having substantially the same economic effect as any of the foregoing, the filing of any financing or continuation statement, and any mechanic's, materialmen's and other similar liens and encumbrances.

*Loan Agreement State:*  the state whose law governs the Loan Agreement, as more specifically set forth therein.

*Loan Party(ies):*  collectively and jointly and severally, Mortgagor, and any other Person obligated to Mortgagee either directly or as a co-obligor or surety with respect to the Debt or any portion thereof as a signatory to any Loan Document.

*Other Charges:* all ground rents, maintenance charges, impositions other than Taxes, and any other charges, including vault charges and license fees for the use of vaults, chutes and similar areas adjoining the Mortgaged Property, now or hereafter levied or assessed or imposed against the Mortgaged Property or any portion thereof.

*Person:* any individual, corporation, partnership, limited liability company, joint venture, estate, trust, unincorporated association, any other person or entity, and any federal, state, county or municipal government or any bureau, department or agency thereof and any fiduciary acting in such capacity on behalf of any of the foregoing.

*Policy:* any policy of insurance affecting Mortgagor or the Mortgaged Property as required hereunder or under the other Loan Documents.

*Proceeds:* the proceeds of any Policy.

*Property State:*  the state where the Mortgaged Property is located.

*Taking:* a taking by eminent domain, change of grade of streets, or other injury to, or decrease in the value of, the Mortgaged Property by any public or quasi-public authority or corporation; and "*Take*" and "*Taken*" shall have the correlative meanings.

*Taxes:* all real estate and personal property taxes, assessments, water rates and sewer rents, maintenance charges, impositions, vault charges and license fees, now or hereafter levied or assessed or imposed against all or part of the Mortgaged Property.

*Third Party:* any Person that is neither Mortgagor, Mortgagee, nor any Affiliate of any of the foregoing.

*Transfer:* (i) any sale, conveyance, transfer, encumbrance, pledge, lease or assignment, or the entry into any agreement to sell, convey, transfer, encumber, pledge, lease or assign, whether by law or otherwise, of, on, in or affecting (x) all or part of the Mortgaged Property (including any

-25-

Case 2:19-cv-06931-NJC-ARL   Document 1-4   Filed 12/12/19   Page 76 of 78 PageID #: 81

legal or beneficial direct or indirect interest therein) or (y) any direct or indirect interest in Mortgagor or (ii) any change of Control of Mortgagor.

46. Principles of Construction. Unless the context clearly indicates a contrary intent or unless otherwise specifically provided herein, words and definitions used in this Mortgage may be used interchangeably in singular or plural form; and the word "*Mortgagor*" shall mean "Mortgagor and any subsequent owner or owners of the Mortgaged Property or any portion thereof or any interest therein," the word "*Mortgagee*" shall mean "Mortgagee and any subsequent holder of the Loan," the words "*Mortgaged Property*" shall include all or any portion of the Mortgaged Property and any interest or rights therein, the word "*including*" means "including but not limited to" and the words "*attorneys' fees*" shall include any and all attorney, paralegal, and law clerk fees (whether to a Third Party or charged by Mortgagee or any employee of Mortgagee or of any Affiliate of Mortgagee), including fees at the pre-trial, trial and appellate levels incurred or paid by Mortgagee in protecting its interest in the Mortgaged Property and enforcing its rights hereunder, plus disbursements, costs and expenses. Unless otherwise specified, (i) all references to paragraphs, sections and schedules are to those in this Mortgage, (ii) the words "hereof," "herein" and "hereunder" and words of similar import refer to this Mortgage as a whole and not to any particular provision, (iii) whenever the context may require, any pronoun shall include the corresponding masculine, feminine and neuter forms, and (iv) accounting terms not specifically defined herein shall be construed in accordance with generally accepted accounting principles in the United States of America, consistently applied.

(SIGNATURE PAGE TO FOLLOW)

Premises is improved by a 1-2 family dwelling.

-26-

Case 2:19-cv-06973-JMA-GRB   Document 1-1   Filed 12/12/19   Page 77 of 78 PageID #: 82

**IN WITNESS WHEREOF**, this Mortgage has been duly executed on the day and year first above written.

MORTGAGOR: Jacob Adoni A/K/A Jacob V.
Adoni

X: _____

STATE OF _____ )
                                    ) SS:
COUNTY OF _____ )

On the _____ day of _____ in the year _____ before me, the undersigned, personally appeared _____ personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is(are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity, and that by his/her/their signature(s) on the instrument, the individual(s) or the person(s) upon behalf of which the individual(s) acted, executed the instrument.

_____
(Seal)                 NOTARY PUBLIC

Colleen E. Drozd
Notary Public State of New York
NO. 01DR6103327
Qualified in Nassau County
My Commission Expires

-27-

<u>SCHEDULE A</u>

Legal Description

All that certain plot, piece or parcel of land, situate, lying and being in the incorporated village of upper Brookville, town of north Hempstead, county of Nassau, state of New York, known and designated as lot No. 1043 on a certain map entitled "map of chestnut hill, Situated at incorporated village of upper Brookville, Nassau county, new York", made by Charles E. Ward, Inc. Dated December 20, 1984 which map was filed in the office of the clerk of the county of Nassau on February 3, 1986 as map no. 9143, which lot is bounded and described according to said map as follows:

Beginning at the intersection of the southerly side of chestnut hill drive with the easterly line of lot 1042 both as shown on said map;

Running thence along the southerly side of chestnut hill drive due East 340.00 feet to the westerly side of lot 1044 as shown on said map;

Thence at along same, south 3° 00' 06" West 210.00 feet and South 2° 08' 31" East 322.47 feet to the northerly side of map of cedar ridge and land now or formerly of Elizabeth Horne;

Thence along same, North 88° 50' 30" West 18.27 feet, north 88° 53' 50" West 269.35 feet and, North 88° 59' 10" West 208.94 feet to the Easterly side of lot 1042;

Thence along same, North 16° 33' 34" East 545.32 feet to the point or place of beginning.

Being and all the same premises conveyed in Book: 12218 Page: 256.

Commonly Known As:

19 Chestnut Hill Drive, Oyster Bay, NY 11771

Parcel ID:

2427-24-E-00-1043-0