UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
JACOB ADONI and HARBOR PARK REALTY, LLC,

                               Plaintiffs,                       Docket No.: 2:19-cv-06971-JMA-ARL

                -against-

WORLD BUSINESS LENDERS, LLC, AXOS              **AMENDED COMPLAINT**
BANK f/k/a B-of-I FEDERAL BANK and CIRCADIAN
FUNDING, LLC,                                      **Jury Trial Demanded**

                          Defendant(s).
------------------------------------------------------------------------X

       Plaintiffs JACOB ADONI and HARBOR PARK REALTY, LLC (collectively, "plaintiffs"), by their attorney, Marcus A. Nussbaum, Esq., as and for their Amended Complaint (the "Complaint') herein, state and allege upon information and belief as follows:

Introduction

       1.     Plaintiff Jacob Adoni was approached by broker CIRCADIAN FUNDING, LLC with an offer for a personal loan to Mr. Adoni. Mr. Adoni needed money for non-business-related matters and did not object to receiving further information. In response, Mr. Adoni was ultimately presented with a transaction in which the personal loan to him was backed by Mr. Adoni's personal guaranty, and a mortgage on his family home as collateral for the loan. The loan itself was a short-term high interest (138% APR) loan requiring daily payments.

       2.     This matter stands the crossing of two deeply troubling and perilous trends in the marketing of financial products: (l) placing a home at risk by issuing a financial product doomed to fail; and (2) "rent-a-bank" or "rent-a-charter" schemes in which the identity of the true lender is obscured, and a loan placed in the name of a federally chartered bank, as a dodge around state usury laws or other state law requirements.

3.      First, since the subprime mortgage crisis that occurred between 2007 and 2010, courts have been dealing with the fallout of mortgages on homes backing loans that were inadequately underwritten and doomed to fail. Regulations have been adopted to protect residential mortgagors, but those regulations can be avoided where a loan is deliberately designated a business loan on paper (even if the loan is in fact, not a business loan).

4.      The framing of a loan as a "business loan", however, cannot exempt these lenders from the scope of New York GBL § 349. It is an unfair and deceptive practice to offer New York State residents such as the plaintiff the opportunity to borrow funds if the loans have an unreasonable risk of failure. It is an unfair and deceptive practice to ask New York residents to put up their homes as collateral for a financial product that the lenders have not adequately underwritten.

5.      New York GBL § 349 makes it unlawful to engage in any unfair methods of competition and unfair and deceptive acts or practices in the conduct of any trade or commerce in the State. Loans that are doomed to fail violate New York GBL § 349. Loans with inadequate underwriting violate New York GBL § 349. These principles continue to apply when the borrower is an individual who backs the loan with a mortgage on their home.

6.      The second trend is what courts around the country have begun to address as "rent-a-bank" or "rent-a-charter" schemes in which the identity of the true lender is obscured, and a loan is placed in the name of a federally chartered bank, as a dodge around state usury laws or other state law requirements. The loan here required substantial daily payments that the documents acknowledged to be equivalent to 138% APR, backed by a personal guaranty and a mortgage on real estate. Transactions of this structure have been a proprietary part of the business of World Business Lenders, LLC —an alternative finance company that provides short

term high interest loans backed by personal guarantees and using real estate as collateral —since its inception. All the forms used for this transaction are demonstrably World Business Lender forms. While plaintiffs were presented with this loan by World Business Lenders, the transaction documents, however, all attempt to position BOFI[1] as the lender. BOFI is a federal bank organized under the laws of Nevada —a state that has no usury laws. Structuring a loan in the name of a federal bank based out of Nevada is a common scheme that alternative lenders use to take advantage of the legal exemptions for federally chartered banks that otherwise would not be applicable to the alternative lender. Such a scheme is referred to as a "rent-a-bank" or "rent-a-charter" scheme because the alternative finance company is the true lender, while the bank receives a fee for the use of its name and charter, but bears no real risk.

7.      Plaintiffs seek a declaratory judgment declaring the subject transaction to be void ab initio in that it is a usurious loan in violation of New York's Criminal Usury laws, as well as damages for violations of New York GBL § 349, and related claims arising out of the transaction.

## PARTIES

8.      Plaintiff HARBOR PARK REALTY, LLC is a domestic limited liability corporation organized and existing under the laws of the State of New York with its principal office at 1019 Fort Salonga Rd. Ste 112, Northport, NY 11768.

9.      Plaintiff JACOB ADONI is a resident and citizen of the State of New York, residing at 19 Chestnut Hill Drive, Oyster Bay, NY 11771.

10.      Mr. Adoni is the sole managing member of plaintiff HARBOR PARK REALTY, LLC.

---

[1] The former name of defendant Axos Bank.

11.    Upon information and belief, defendant WORLD BUSINESS LENDERS, LLC ("WBL") is a New York Limited Liability Company with its principal office at 101 Hudson Street, 33rd Floor, Jersey City, NJ 07302.

12.    Upon information and belief, defendant AXOS BANK f/k/a B-of-I FEDERAL BANK ("AXOS") is a Federally chartered savings bank with its principal office located at 4350 La Jolla Village Drive, Suite 140 San Diego, California.

13.    Upon information and belief, defendant CIRCADIAN FUNDING, LLC is a Delaware Limited Liability Company with its principal office at 500 7th Avenue, 14th Floor, New York, NY 10018.

14.    Upon information and belief, CIRCADIAN FUNDING, LLC is an agent of WBL.

15.    There is an interlocking relationship between CIRCADIAN FUNDING, LLC and WBL as evidenced by:

a.    negotiations by corporate officers of one corporation on behalf of another corporate entity;

b.    intermingling of activities with substantial disregard of the separate nature of the corporate entities;

c.    serious ambiguity about the manner and capacity in which the various parties and their respective representatives are acting;

d.    common ownership;

e.    common employees;

f.    common management;

g.    common financing;

h.    commingling of funds;

i.    commingling of loans;

j.    operations in each other's names;

k.      impermissible personal payments and asset transfers;

## JURISDICTION AND VENUE

16.     WBL does business throughout the United States, including in New York.

17.     CIRCADIAN FUNDING, LLC does business throughout the United States, including in New York.

18.     AXOS does business throughout the United States, including in New York.

19.     Defendants have engaged in tortious conduct in New York.

20.     Venue properly lies in this Court pursuant to 28 U.S.C. §1121 (b) and (c) because a substantial portion of the harm sought to be avoided, and substantial part of the events and omissions giving rise to the claims herein, have occurred, continue to occur and threaten to occur in this District, and that this case involves the right to real property located at 19 Chestnut Hill Drive, Oyster Bay, NY 11771.

## FACTS COMMON TO ALL PARTIES

21.     On or about February 1, 2019, Plaintiff JACOB ADONI was contacted by Stephen Sheinbaum of CIRCADIAN FUNDING, LLC (Mr. Sheinbaum and CIRCADIAN FUNDING, LLC are referred to collectively, as "CIRCADIAN") with an offer for a personal loan.

22.     CIRCADIAN represented to Mr. Adoni that the personal loan would be in the sum of $110,000.00 and would be secured by a mortgage on Mr. Adoni's personal residence, located at 19 Chestnut Hill Drive, Oyster Bay, NY 11771.

23.     On or about February 5, 2019, CIRCADIAN provided Mr. Adoni with an estimated closing cost disclosure which stated that "…you will be afforded the opportunity to

review the closing documents with your attorney…", a copy of which is annexed hereto as Exhibit "A". That disclosure was on the letterhead of WBL.

24.     On or about February 7, 2019, CIRCADIAN wrote to Mr. Adoni via email, explaining that "The plan here (in my mind) should be to get you funded ASAP at WBL…".

25.     At approximately 12:00 p.m. on February 22, 2019, CIRCADIAN provided Mr. Adoni with a Business Promissory Note and Security Agreement (the "Note"), a Personal Guarantee (the "Guarantee"), Business Loan Summary, Conditional Closing Agreement, Cooperation Agreement and other documents for Mr. Adoni to execute contemporaneously with the Note and Guaranty (all of which collectively comprise the "Loan Documents"), and which are annexed hereto as Exhibit "B".

26.     At approximately 12:00 p.m. on February 22, 2019, CIRCADIAN also provided Mr. Adoni with a Mortgage, Assignment of Leases and Rents and Security Agreement (the "Mortgage") to review and execute (annexed hereto as Exhibit "C").

27.     Mr. Adoni was told by CIRCADIAN at the time that the Loan Documents and Mortgage were provided to him, that he must execute all documents no later than 6:00 p.m. on February 22, 2019, after which the loan offer would no longer be valid.

28.     On February 22, 2019, CIRCADIAN advised Mr. Adoni that a notary hired by CIRCADIAN would meet him in a Panera Bread restaurant located nearby his home in order to notarize his signature on the Loan Documents and Mortgage.

29.     The Loan Documents provide the terms of the loan as follows: Principal Amount: $90,000.00; Repayment Amount: $122,422.73; Interest Charges: $32,422.73; Processing Fee: $6,293.00; Payment Schedule: 125 payments of $971.61 due each "Business Day" commencing on 2/27/19 until 8/22/19, followed by a final payment of $971.48 on 8/23/19 when any

outstanding Principal, Interest, and other unpaid charges shall be due and payable in full; Interest Rate: 0.364520547945% per day on unpaid principal until paid in full; APR 138.1061%.

30.     Mr. Adoni was told by CIRCADIAN at the time that the Loan Documents and Mortgage were provided to him, that while the loan was meant to be a personal loan to him, in order to facilitate the daily withdrawals by defendants for repayment of the loan, that it was necessary for the Loan Documents to make reference to Mr. Adoni's business, to wit: HARBOR PARK REALTY, LLC, which would allow defendants to make withdrawals for repayment of the loan from the corporate bank account of HARBOR PARK REALTY, LLC.

31.     Neither Mr. Adoni nor Harbor Park Realty LLC were given the opportunity to negotiate the terms of the loan transaction.

32.     Neither Mr. Adoni nor Harbor Park Realty LLC were given the opportunity to to retain counsel and review documents pertaining to the loan transaction.

33.     Upon information and belief, the true lender was WBL.

34.     Defendants have now demanded payment in full according to the terms of the Loan Documents and have inundated Mr. Adoni with multiple threats to foreclose on his home and on the mortgage.

35.     Mr. Adoni has made said payments up and until his decision to file this lawsuit.

***Evidence that WBL is the True Lender***

36.     The business history of BOFI and WBL and the products they offer now and have offered historically show that the Loan here came from WBL and not from BOFI.

*BOFI Business History*

37.     On information and belief, defendant Axos Bank was founded in 1999 under the name "Bank of Internet USA" and changed its name to "BofI Federal Bank" in 2011.

38.     BofI rebranded itself as Axos Bank on October 1, 2018.

39.     The Axos Bank website contains three headings: Personal, Business, and Partners. If the "Business" category is selected, the website displays three sub-headings: Small Business Banking, Commercial Banking, and Commercial Lending.

40.     The "Small Business Banking" and the "Commercial Banking" subsections of the website contain no loan products.

41.     The first column under the Commercial Lending subsection contains three products types: Commercial Lines of Credit; Commercial Term Loans; Equipment Finance; and Factoring.

42.     The second column under the Commercial Lending subsection contains five product types: Commercial Real Estate Specialty Bridge and Construction Lending; Lender Financing; Residential; Warehouse Lending; and Small Balance Commercial Real Estate.

43.     The Commercial Lines of Credit page advertises line size starting at $250,000.

44.     The Commercial Term Loans page advertised loan size of $250,000 to $5MM.

45.     The Commercial Term Loans page advertised "3, 5, and 7 year fixed-rate commercial loans" with "fixed monthly payments."

46.     The 2/22/2019 Loan was for $90,000.00.

47.     The 2/22/2019 Loan was to be paid in full by August 23, 2019.

48.     The 2/22/2019 Loan does not fall within the set of products described the Bank web page.

49.     On information and belief, the 2/22/2019 Loan did not fall within the set of products described by the Bank web page in February 2019.

*Business History of World Business Lenders:*

50.     On information and belief, World Business Lenders was founded in 2011.

51.     On information and belief, World Business Lenders did not act as a loan servicer in 2011.

52.     On information and belief, World Business Lenders was exclusively a direct lender when it began in 2011.

53.     In May 2017, World Business Lenders' sales manager David Rabouin stated, regarding World Business Lenders, "We're an asset based lender." and "All of our loans are secured with real estate."

54.     On information and belief, World Business Lenders continues to be a direct lender.

55.     Below is a screen capture of a portion of the World Business Lenders Website discussing loan options:



56.     The World Business Lenders website advertises terms between 6 months and 36 months, with daily or weekly payments.

57.     Daily payments were a feature of the 2/22/2019 Loan at issue in this case.

58.     The transaction at issue was structured to require a $971.61 daily payment from HARBOR PARK REALTY, LLC, not including penalties or fees.

59.     The World Business Lenders website advertises the use of personal assets as business collateral.

60.     The use of personal assets as business collateral is a feature of the 2/22/19 Loan at issue in this case.

61.     The transaction at issue was structured to include a mortgage on Mr. Adoni's home as collateral for the loan which listed Harbor Park Realty as the borrower.

62.     On information and belief, World Business Lenders specializes in the product at issue in this case- a business loan backed by a personal guaranty and a mortgage on real estate.

63.     In May 2018, World Business Lenders announced a $30MM multi-draw credit facility from a Cayman Islands fund established by a consortium of Asian banks and investors.

64.     In connection with that announcement, Robert Pardes, Chief Operating Officer of World Business Lenders stated that "this reaffirms increasingly broad institutional acceptance of our proprietary product and market leading servicing platform."

65.     In connection with the same announcement, Matthew Yoon (Managing Director and Head of Asia at Pi Capital International LLC, which advised World Business Lenders with respect to the $30MM facility) said, "This transaction demonstrates desirability, even with cross-border investors of WBL's well-structured proprietary business loan product. WBL's veteran

management and underwriting team has created an exciting new secured asset class for investors."

66.     On information and belief, the 2/22/2019 Loan is an example of the "proprietary product" Pardes and Yoon were describing.

67.     World Business Lenders business includes making loans in excess of the civil and criminal usury rate in New York.

68.     The "Business Promissory Note and Security Agreement" signed by Mr. Adoni on 2/22/2019 on is a form created by WBL.

69.     WBL has been using earlier versions of the same "Business Promissory Note and Security Agreement" since at least as far back as 2014.

*World Business Lenders Previous Scheme with Liberty Bank*

70.     World Business Lenders tried this scheme before, using Liberty Bank, Inc. (a Utah bank) instead of BOFI as the bank to hide behind.

71.     A complaint for RlCO violations was filed in May 2017 in the Southern District of NewYork.

72.     Attached to that Southern District of New York complaint is a Business Loan Authorization Agreement for Direct Deposit (ACH Credit) and Direct Payments (ACH Debits), a copy of which is annexed hereto.

73.     Plaintiff here also completed a form entitled a Business Loan Authorization Agreement for Direct Deposit (ACH Credit) and Direct Payments (ACH Debits).

74.     The two documents are created from identical forms, except insofar as the Liberty Bank logo has been replaced with the BOFI logo.

75.     These forms are part of the loan origination process.

76.     On information and belief, these forms are identical because these forms come from WBL.

77.     BOFI had no involvement with the loan at issue in the Southern District of New York complaint.

78.     Liberty Bank had no involvement with the Loan here.

79.     On information and belief, WBL forms are used in the loan origination process because WBL is the true lender.

*World Business Lender's Previous Scheme With Bank of Lake Mills*

80.     World Business Lenders also employed this scheme before using Bank of Lake Mills (a Wisconsin bank) instead of BOFI as the bank to hide behind.

81.     Documents attached to a 2017 complaint filed in the Middle District of Florida appear to have been created from the same form used to create the Loan documents and the related transaction documents here.

82.     Attached to the Middle District of Florida complaint was a Business Loan Summary, a copy of which is annexed hereto.

83.     Plaintiff here also signed a form entitled Business Loan Summary.

84.     The Business Loan Summary Mr. Adoni signed in 2019 appear to be created from an updated version of the same form that created the Business Loan Summary from the Central District of Florida complaint.

85.     There is enough identical formatting and language in the Business Loan Summary to allow one to conclude that the Business Loan Summary Mr. Adoni signed in 2019 is an updated version of the Business Loan Summary attached to the Central District of Florida complaint, and not independently drafted.

86.     Indeed, the Business Loan Summary Ms. Kaur signed in 2018 contains the words "Revision Date: August 2018.a" at the bottom of the document.

87.     The Business Loan Summary attached to the Central District of Florida complaint contains the words "Rev. Sep 2014" at the bottom of the document.

88.     The Business Loan Summary form is part of the loan origination process.

89.     On information and belief, these two Business Loan Summary forms are substantially the same because these forms come from WBL.

90.     BOFI had no involvement with the loan at issue in the Central District of Florida complaint.

91.     Bank of Lake Mills had no involvement with the Loan here.

92.     On information and belief, WBL forms are used in the loan origination process because WBL is the true lender.

*Contract of Adhesion*

93.     The forms underlying the transaction all came from WBL and WBL only: not from any bank listed as lender, and certainly not from plaintiffs.

94.     Plaintiffs had no opportunity to negotiate any terms.

95.     The contract is deceptive on its face because it misrepresents the party in interest, stating that the BOFI is the lender when WBL is the true lender.

96.     Because this was a contract of adhesion and because this contract misrepresented the identity of the lender, the choice of law clause and the arbitration clause cannot be enforced.

**FIRST CAUSE OF ACTION**
**(Declaratory Judgment)**

97.     Plaintiffs repeat and reallege each and every allegation contained in paragraphs "1" through "96" of this Complaint as if set forth at length herein.

98.     The Supreme Court may render a declaratory judgment having the effect of a final judgment as to the rights and other legal relations of the parties to a justiciable controversy whether or not further relief is or could be claimed. See, CPLR 3001; <u>Long Island Lighting Company v. Allianz Underwriters Insurance Company</u>, 35 A.D.3d 253, 826 N.Y.S.2d 55 (1st Dept. 2006).

99.     Pursuant to the terms of the Loan Documents, the loan has an interest rate that exceeds 25%.

100.    N.Y. Gen. Oblig. Law § 5-511 provides that usurious contracts are void. A personal loan with an interest rate that exceeds 16% constitutes civil usury and a loan from and to a corporation with an interest rate that exceeds 25% constitutes criminal usury under New York law.

101.    As such the Loan Documents and the loan itself constitute criminal usury and are *void ab initio*.

102.    The Court affirmed in <u>Curtiss v. Teller</u>, 157 A.D. 804, 804, 143 N.Y.S. 188 (4th Dept. 1913), aff'd, 217 N.Y. 649, 112 N.E. 1056 (1916) that a usurious transaction is *void ab initio*, and a return of excess interest cannot save to the lender the money actually advanced, or the interest due on the loan. Consequently, although defendants need not return the interest plaintiff Adoni has already paid, defendants "…cannot recover either the money loaned or the interest remaining due in this transaction." See, <u>Id</u>.; <u>Szerdahelyi v. Harris</u>, 67 N.Y.2d 42, 50, 490 N.E.2d 517 (1986).

103.    While plaintiff Adoni herein is not seeking recovery of the interest already paid to defendants, and rather, is seeking a declaratory judgment, as stated immediately above, the

defendants should not be able to "recover either the money loaned or the interest remaining due in this transaction." Id.

104.    When a court deems a transaction to be usurious, it must declare the transaction and its supporting documents void, enjoin prosecution on them and order that all documents and collateral be canceled and surrendered." Id.

105.    With respect to any loan or forbearance other than certain residential mortgage loans, the term 'interest,' for purposes of New York's civil and criminal usury statutes, "mean[s] all amounts paid or payable, directly or indirectly, by any person, to or for the account of the lender which would be includible as interest under New York law as it existed prior to the enactment of [section 14-a of the New York Banking Law,] chapter 349 of the Laws of 1968." 3 N.Y.C.R.R. § 4.2(b); see N.Y. Gen. Oblig. Law § 5-501(2).

106.    New York State Penal Law §§ 190.40 and 190.42 prohibit loans with interest exceeding twenty- five percent (25%) per year. Violating those proscriptions are class E and C felonies, respectively.

107.    Defendants all pertinent times, continuing through the present, engaged in interstate commerce by making loans, including those which are the subject of this action, to entities in various states, and collecting or attempting to collect upon those loans.

108.    Defendants are in the business of making and collecting usurious loans because lending at interest rates exceeding twenty-five percent (25%) per year (in this matter the loans and broker fees exceed an annual rate of 200% and in this case 300%), and trying to enforce those agreements, are defendants' trade.

109.    The loans are in the first instance, represented to be personal loans, after which time defendants engage in a "bait and switch" and explain that daily payments should be made

-17-

from a business account in order to facilitate the daily withdrawals by defendants for repayment of the loan.

110. The Loan Documents and Mortgage were prepared exclusively by the defendants and not by the plaintiffs.

111. Plaintiffs were not provided with the opportunity to review the Loan Documents and Mortgage with counsel and executed them while unrepresented by counsel.

112. It is clear that the terms of the loan as stated in the Loan Documents is usurious. It would mean that defendants should be indicted if they were to attempt to enforce such a highly usurious loan upon the plaintiffs.

113. Among other things, because commissions, origination fees, and similar charges count towards usury, under each of the Loan Documents, defendants are in fact guaranteed interest exceeding 200% upon full repayment. Even without those fees, gains exceed 167% per annum because the loan which is the subject of this action must be repaid in about six months.

114. When a party contemplates taking certain action, a genuine dispute may arise before any breach or violation has occurred and before there is any need or right to resort to coercive (affirmative) measures. "In such a case all that may be required to insure compliance with the law is for the courts to declare the rights and obligations of the parties so that they may act accordingly. That is the theory of the declaratory judgment action authorized by CPLR 3001." New York Public Interest Research Group v. Carey, 42 N.Y.2d 527, 529-530 (1977).

115. Plaintiff has a secured promissory note and its loan is deemed financially secured by the personal assets of the Mr. Adoni.

116. Defendants have further failed to abide by NYS Banking Law §6-1 , 6-m, and 590(b); failed to abide by Notice Provisions of RPAPL §1302 and §1304 and failed to establish

conformity with RPAPL §1303 and CPLR §3215(g)(3); failed to abide by the Federal Equal Credit Opportunity Act, 15 U.S.C. sec. 1691; failed to abide by the Real Estate Settlement Procedures Act; Truth in Lending Act; Federal Fair Housing Act, 42 U.S.C. sec.3604, 3605; CPLR §3408; Homeownership and Equity Protection Act; and General Business Law §349 (the "Deceptive Practices Act").

117.    Accordingly, plaintiffs request a declaration from the Court that the subject agreements, Loan Document and Mortgage were *void ab initio*.

**SECOND CAUSE OF ACTION AGAINST WBL AND AXOS**
**(Violation of New York GBL §§ 349 and 350)**

118.    Plaintiffs repeat and reallege each and every allegation contained in paragraphs "1" through "117" of this Complaint as if set forth at length herein.

119.    N.Y. Gen. Bus. Law §349 makes it unlawful to engage in deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in the state of New York.

120.    N.Y. Gen. Bus. Law §350 makes it unlawful to engage in false advertising in the conduct of any business, trade or commerce or in the furnishing of any service in the state of New York.

121.    The financial product here was a personal loan couched as a "business loan" with an acknowledged 138% APR.

122.    The defendants required the plaintiffs to connect this loan to a personal guaranty by plaintiff.

123.    The defendants required the plaintiffs to connect this 138% APR Loan for to a mortgage on the residence owned by Mr. Adoni.

124.    New York law and federal law prohibit 138% APR for residential mortgage loans.

125.     This loan attempts to be couched as a "business" loan to evade the regulatory protections for residential mortgage loans.

126.     Nonetheless, this loan is still subject to New York GBL §§ 349 and 350.

127.     New York courts have determined that loan products are unfair and deceptive if they are doomed to fail.

128.     One measurement of whether a loan is doomed to fail is the sufficiency of its underwriting.

129.     Here, World Business Lenders expressly advertised to borrowers with low credit scores.

130.     Here, World Business Lenders expressly advertised that they would look only at a limited set of bank statements.

131.     These questionable underwriting practices were acceptable business risks to World Business Lenders because the loans were secured by real property, even residential property.

132.     The financial product here purports on its face to have been issued by BOFI Federal Bank.

133.     This financial product is advertised by World Business Lenders LLC.

134.     This financial product is the same model referred to by World Business Lenders and its representatives as a proprietary product.

135.     World Business Lenders is the true lender in the 2/22/2019 Transaction.

136.     The 2/22/2019 transaction violates N.Y. Gen. Bus. Law §§ 349 and 350.

137.     WBL AND AXOS additionally violated N.Y. Gen. Bus. Law §§ 349 and 350 in that the mortgage transaction described herein: (1) was indeed premised as a consumer

transaction; (2) was misleading in that WBL AND AXOS failed to provide all of the mandatory disclosures and information before completing the transaction; (3) failed to allow plaintiffs the opportunity to review all of the loan documents with counsel prior to their execution; (4) misrepresented to plaintiff Adoni the amount which would be loaned to him; and (5) caused the financial and emotional harm to plaintiff Adoni in that he is now at risk of losing his home as a result of the threatened frivolous foreclosure on the mortgage, based upon a usurious loan.

138.    By and through their acts, omissions, concealments, and misrepresentations, Defendants violated N.Y. Gen. Bus. Law §§ 349 and 350 with materially misleading and consumer-oriented deceptive acts and practices, with a broad impact on consumers at large, and did so knowingly or willfully.

139.    As a result, Plaintiffs suffered actual damages, past, present, and future including but not limited to $100,000.00, as well as severe emotional distress, mental anguish, humiliation, aggravation, embarrassment, anxiety, and fear.

140.    As Defendants willfully and knowingly violated N.Y. Gen. Bus. Law §§ 349 and 350, they are also liable for treble damages and civil penalties.

### THIRD CAUSE OF ACTION AGAINST WBL AND AXOS
**Violation of the Fair Debt Collection Practices Act 15 U.S.C. § 1692 et seq.**

141.    Plaintiffs repeat and reallege each and every allegation contained in paragraphs "1" through "139" of this Complaint as if set forth at length herein.

142.    Plaintiffs have fallen victim to a null and void predatory mortgage loan, now falsely alleged by WBL and AXOS to be a business loan.

143.    Plaintiffs bring this cause of action pursuant to 15 U.S.C. § 1692 et seq., the Fair Debt Collection Practices Act ("FDCPA"), New York General Business Law Section § 349 and Section 419 of the Superintendent of the Banking Department's regulations.

144.    First, 15 U.S.C. § 1692 et seq. prohibits, among other things:

•      Misrepresentation or deceit: misrepresenting the debt or using deception to collect a debt; and

•      Seeking unjustified amounts, which would include demanding any amounts not permitted under an applicable contract or as provided under applicable law.

145.    As such, it is indisputable that defendants WBL and AXOS have violated 15 U.S.C. § 1692 *et seq.* in that they misrepresented the nature of the loan (now claiming that it was a business loan) and by attempting to collect on a loan which is usurious as set forth in detail herein.

146.    As such, plaintiffs seek an award of damages, in the amount of One Hundred Thousand Dollars ($100,000.00) for each claim.

## FOURTH CAUSE OF ACTION AGAINST WBL AND AXOS

147.    Plaintiffs repeat and reallege each and every allegation contained in paragraphs "1" through "146" of this Complaint as if set forth at length herein.

148.    Mr. Adoni is a consumer and the void obligation between the defendants and plaintiffs which is the non-valid debt allegedly owed pursuant to the subject loan documents and mortgage can be defined as a consumer debt under applicable New York State and Federal Law.

149.    WBL and AXOS have engaged in consumer collection conduct which amounts to a violation of New York State and Federal laws, as set out herein and the plaintiffs, as a proximate result thereof, have sustained economic damages for which the plaintiffs are entitled to compensation from the defendants.

150.    Defendants' collection activities described herein violated New York State and Federal Laws (FDCPA) in the defendants are attempting and threatening to collect and enforce this void consumer mortgage debt through threatened foreclosure action when defendants know

that they have no right to pursue and/or collect the alleged debt because no valid debt currently exists, nor has ever existed for the reasons set forth herein.

**FIFTH CAUSE OF ACTION AGAINST ALL DEFENDANTS**
**(Preliminary and Permanent Injunction)**

151.    Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "150" of this Complaint as if set forth at length herein.

152.    Defendants may, at any time, attempt to enter confessions of judgment against plaintiffs herein and proceed with foreclosure of the Mortgage due to plaintiff's filing of the instant action.

153.    If defendants initiate foreclosure proceedings against the Mortgage, plaintiff Adoni will be at risk of losing his home and primary residence prior to the resolution of these proceedings.

154.    The terms of the loan as evidenced by the Loan Documents and Mortgage are clearly usurious and by reason of the foregoing, plaintiffs are likely to succeed on the merits.

155.    By reason of the foregoing, a balancing of the equities favors plaintiffs.

156.    Plaintiffs have no adequate remedy at law.

157.    Accordingly, plaintiffs are entitled to an injunction permanently barring and enjoining Defendants, their officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with him who receive actual notice of the injunction, from further enforcement of any provisions of the Loan Documents, Mortgage, and/or documents signed until this matter is decided by this court in its entirety.

158.    Alternatively, preliminarily and permanently enjoining Defendants, their officers, agents, servants, employees, and attorneys, and those persons in active concert or participation

with them who receive actual notice of the injunction, from collecting on any judgments should they be granted to Defendants in any other court, until this matter is further adjudicated.

**WHEREFORE**, Plaintiffs demand declaratory judgment against Defendants:

A.    Determining that the Loan Documents and Mortgage along with any other documents signed by Plaintiffs are deemed usurious on its face and be deemed void barring Defendants from further collection of any outstanding debt;

B.    Preliminarily and permanently enjoining Defendants, their officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with him who receive actual notice of the injunction, from further enforcement of any provisions of the Loan Documents, Mortgage, and/or documents signed until this matter is decided by this court in its entirety;

C.    Alternatively, preliminarily and permanently enjoining Defendants, their officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them who receive actual notice of the injunction, from collecting on any judgments should they be granted to Defendants in any other court, until this matter is further adjudicated;

D.    Awarding Plaintiffs treble damages under NY Gen Bus Law §§ 349 and 350, and punitive damages and civil penalties in an amount to be decided by a judge or jury;

E.    Awarding Plaintiffs damages under 15 U.S.C. § 1692 et seq., and punitive damages and civil penalties in an amount to be decided by a judge or jury;

F.    Awarding Plaintiff's their costs and reasonable attorneys' fees in this action;

G.    That this Court retain jurisdiction over this matter for purposes of ensuring Defendants' compliance with this Court's order; and

H.    Granting Plaintiffs such other relief as this Court may deem just and proper.

Dated:      Brooklyn, New York
            August 31, 2020

                                Respectfully submitted,

                        By:    /s Marcus Aurelius Nussbaum
                               Marcus A. Nussbaum, Esq.
                               Attorney for Plaintiffs
                               P.O. Box 245599
                               Brooklyn, NY 11224