UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X
JACOB ADONI and HARBOR PARK REALTY, LLC,
                              Plaintiff,

                    -against-

WORLD BUSINESS LENDERS, LLC, AXOS
BANK f/k/a B-of-I FEDERAL BANK and CIRCADIAN
FUNDING, LLC,
                              Defendant(s).

--------------------------------------------------------------------X

Docket No.: 2:19-cv-06971-JMA-ARL

**PLAINTIFFS' OPPOSITION
TO DEFENDANTS' MOTIONS
TO DISMISS**

---

## PLAINTIFFS' MEMORANDUM OF LAW
## IN OPPOSITION TO
## DEFENDANTS' MOTIONS TO DISMISS AMENDED COMPLAINT

---

David Treyster
HUDSON LAW GROUP
745 Fifth Avenue, Suite 500
New York, NY 10151
(347) 815-2969 tel
(347) 846-0383 fax
Email: david@hudsonlawny.com
*Attorneys for Plaintiffs Jacob Adoni
and Harbor Park Realty, LLC.*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ……………………………………………………………………..ii

PRELIMINARY STATEMENT………………………………………………………………….1

STATEMENT OF FACTS……………………………………………………………….…..2

ARGUMENT AS TO DEFENDANTS WORLD BUSINESS LENDERS, LLC AND AXOS BANK…………………………………………………...…………….………………………..4

POINT I
PLAINTIFF'S COMPLAINT SHOULD NOT BE DISMISSED FOR FAILURE TO PROSECUTE UNDER RULE 41(B) OF THE FEDERAL RULES OF CIVIL PROCEDURE…4

POINT II
PLAINTIFFS ARE ENTITLED TO A DECLATORY JUDGMENT……………………………8

    A.   Whether Plaintiff Adoni is a sophisticated borrower or not is a factual allegation that is subject to dispute and an issue for the Court to decide on at trial. ………………….…9

    B.   New York's usury laws are not preempted by federal law ……………………….....10

    C.   Plaintiffs are seeking a declaratory judgment against Defendants and are not alleging an affirmative use of New York's usury claims. ………………………….…...16

POINT III
PLAINTIFF'S CLAIM SHOULD NOT BE DISMISSED BECAUSE DEFENDANTS VIOLATED SECTION 349 AND 350 OF NEW YORK'S GENERAL BUSINESS LAW…….17

POINT IV
A PRELIMINARY AND PERMANENT INJUNCTION IS NECESSARY TO STOP DEFENDANTS FROM FORECLOSING ON PLAINTIFF'S RESIDENCE. ……………....19

ARGUMENTS AS TO DEFENDANT CIRCADIAN FUNDING, LLC……………….……...21

POINT I
PLAINTIFF'S STATE A CLAIM UNDER WHICH RELIEF CAN BE GRANTED IN ITS AMENDED COMPLAINT. …………………………………………………………….………21

POINT II
DEFENDANT'S RECITATION OF FED. R. CIV. P. 4(M) IS FLAWED IN THAT DISMISSAL OF PLAINTIFFS AMENDED COMPLAINT UNDER FED. R. CIV. P. 4(M) IS WITHIN THE COURTS DISCRETION AND IS NOT MANDATORY. ……………….…....21

# TABLE OF AUTHORITIES

**Cases**                                                                                           **Page**

*Am. Express Bank, FSB v. Dalbis,*
    927 N.Y.S.2d 814, 814 (Civ. Ct., 2011)……………………………………………....11

*Am. Equities Grp., Inc. v. Ahava Dairy Prods. Corp.,*
    No. 01-CV-5207, (S.D.N.Y. Apr. 23, 2004) ………………………………………13, 15

*Am. Express Travel Related Servs. Co. v. Assih,*
    893 N.Y.S.2d 438, 445-46 (Civ. Ct. Richmond Cty. 2009)………………….…13, 14, 15

*Auten v. Auten,*
    308 N.Y. 155, 124 N.E.2d 99 (N.Y. 1954) ……………………………………………...14

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) …………………………………………...9

*B&S Medical Supply, Boris Simon v. World Business Lenders, Liberty Bank, Inc.,*
    No. 1:17-cv-03234 (S.D.N.Y. filed May 2, 2017)……………………………...…….2

*Blue Cross and Blue Shield of New Jersey Inc., v. Phillip Morris, Inc.,*
    178 F. Supp. 2d 198 (2001)…………………………………………………………… 8

*Broder v. Cablevision Sys. Corp.,*
    418 F.3d 187, 199-200 (2d Cir. 2005)…………………………………………………...12

*Citibank (SD) NA v Hansen,*
    28 Misc 3d 195, 902 N.Y.S.2d 299 (2010)……………………………………………..10, 12

*Cleveland v. Caplaw Enters.,*
    448 F.3d 518, 521 (2d Cir. 2006). ……………………………………………………...9

*Clever Ideas, Inc. v. 999 Rest. Corp.,*
    2007 N.Y. Misc. LEXIS 9248 (N.Y. Sup. Ct. October 26, 2007)…………………………15

*Curtiss v. Teller,*
    157 A.D. 804, 804, 143 N.Y.S. 188 (4th Dept. 1913)…………………………………...18

*D'Jamoos v. Griffith,*
    00 CV 1361, 2001 U.S. Dist. LEXIS 17595, at *16 (E.D.N.Y. July 31, 2001)…………10

*Eco Smart Holdings, Ltd. v. Maston,*
    2016 NY Slip Op 32778(U)…………………………………………………………...18

*Hampton v. Madison Cty.,*
   No. 18-1191-STA-dkv (W.D. Tenn. Apr. 23, 2020)……………………………………...5

*Henderson v. United States,*
   517 U.S. 654, 658 n.5, 134 L. Ed. 2d 880, 116 S. Ct. 1638……………………………..23

*In re McCorhill Publ'g, Inc.,*
   86 B.R. 783, 793 (Bankr. S.D.N.Y. 1988)…………………………………………………15

*In re Teligent Servs.,*
   324 B.R. 467, 473 (Bankr. S.D.N.Y. 2005)……………………………………………...23

*Koffel et al. v. World Business Lenders et al.*
   No. CACE-20-009401 (17th Jud'l Cir. For Broward Co., FL filed June 7, 2020)……...…2

*Lee v. City of Los Angeles,*
   250 F.3d 668, 679 (9th Cir. 2001)………………………………………………………...5

*Madden v. Midland Funding, LLC,*
   786 F.3d 246 (2d Cir. 2015)……………………………………………………………11, 12

*Mason & Dixon Intermodal, Inc. v. Lapmaster Intern. LLC,*
   632 F.3d 1056, 1060 (9th Cir. 2011) …………………………………………………12

*New York v. Feldman,*
   210 F. Supp. 2d 294 (2002). …………………………………………………………18

*North Amer. Bank v. Schulman,*
   474 N.Y.S.2d 383 (N.Y. Cnty. Ct. 1984) …………………………………………...14, 15

*Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC,*
   595 F.3d 86, 91 (2d Cir. 2010). ………………………………………………………...9

*Park Vill. Apartments Tenants Assn. v. Mortimer Howard Trust,*
   636 F.3d 1150, 1159 (9th Cir. 2011). …………………………………………………...20

*Quantum-Mac Int'l v. World Business Lenders, et al.*
   No. 1:20-cv-02353-WMR (N.D. Ga. Filed June 2, 2020) ………………………....…2

*Schafer v. City of Defiance Police Dep't,*
   529 F.3d 731, 736 (6th Cir. 2008) ……………………………………………………..5, 8

*Szerdahelyi v. Harris,*
   67 N.Y.2d 42, 50, 490 N.E.2d 517 (1986). ……………………………………...…16

*Textile Unlimited, Inc. v. A..BMH & Co., Inc.,*

240 F.3d 781, 786 (9th Cir. 2001). …………………………………………………....…19

*Welsbach Elec. Corp. v. MasTec N. Am., Inc.,*
    859 N.E.2d 498, 500-01 (N.Y. 2006). …………………………………..…13

*Wright v. City of Germantown, Tenn.,*
    *No. 11-02607, 2013 U.S. Dist. LEXIS 57192, 2013 WL 1729105*
    *(W.D. Tenn. Apr. 22, 2013)* …………………………………………..…6

*Yellow Book Sales and Distribution Co., Inc. v. Hillside Van Lines,*
    98 A.D.3d 663, 663-64, 950 N.Y.S.2d 151 (2d Dept. 2012). …………………………...18

**Statutes**

10 U.S.C. § 987(b)…….…………………………………………………………………...10

12 CFR §560.110……………………………………………………………………...10

12 CFR §560.2; ……………………………………………………………………10

12 U.S.C. § 5531 (1)…….…………………………………………………………11

15 U.S.C. §§ 1631–32……………………………………………..………………11

18 U.S.C. § 1961(6)… ………………………………………………………………10

Nev. Rev. Stat. § 99.040……………………………………………………………15

New York GBL § 349……………………………………………………………….2, 18

New York GBL § 350……………………………………………………………….19

N.Y. Gen. Oblig. Law § 5-501(2)….………………………………………………17

N.Y. Gen. Oblig. Law § 5-511……………………………………………………...16

**Rules**

FED. R. CIV. P. 4(m)………………………………………………………...…21, 23

FED R. CIV. P. 12(a)(i)……. ………………………………………………………...22

FED. R. CIV. P. 12(b)……………………………………………………………....9, 21

FED. R. CIV. P. 41(b)…………………………………………………………....4, 5, 8

## PRELIMINARY STATEMENT

Plaintiffs, Jacob Adoni and Harbor Park Realty, LLC, hereby submits this opposition to Defendants', World Business Lenders, LLC, Axos Bank f/k/a B-of-I Federal Bank and Circadian Funding, LLC (together Defendants), Motion to Dismiss Plaintiffs' Amended Complaint (AC).

Defendants are trying to circumvent discovery and have filed their Motion to Dismiss prematurely as discovery has been ordered by the Court (Document 30). For the reasons detailed below, and in the accompanying Declaration from Marcus Nussbaum, Esq., the Court should deny both of Defendants' Motions to Dismiss in all respects. Specifically, denial is appropriate, as a matter of law, because the causes of action in Plaintiffs' Complaint are, unequivocally and sufficiently pleaded and assert viable and legally cognizable claims.

Plaintiff Jacob Adoni was approached by broker Defendant Circadian Funding, LLC with an offer for a personal loan to Mr. Adoni. Mr. Adoni needed money for non-business- related matters and did not object to receiving further information. In response, Mr. Adoni was ultimately presented with a transaction in which the personal loan to him was backed by Mr. Adoni's personal guaranty, and a mortgage on his family home as collateral for the loan. The loan itself was a short-term high interest (138% APR) loan requiring daily payments.

This matter stands the crossing of two deeply troubling and perilous trends in the marketing of financial products: (l) placing a home at risk by issuing a financial product doomed to fail; and (2) "rent-a-bank" or "rent-a-charter" schemes in which the identity of the true lender is obscured, and a loan placed in the name of a federally chartered bank, as a dodge around state usury laws or other state law requirements. World Business Lenders, LLC, operate a predatory

rent-a-bank schemes as their business model and have many cases against them for nearly the same claims at issue here.[1]

The framing of a loan as a "business loan", however, cannot exempt these lenders from the scope of New York GBL §§ 349 and 350. It is an unfair and deceptive practice to offer New York State residents such as the Plaintiff the opportunity to borrow funds if the loans have an unreasonable risk of failure. It is an unfair and deceptive practice to ask New York residents to put up their homes as collateral for a financial product that the lenders have not adequately underwritten.

## STATEMENT OF FACTS

1. On or about February 1, 2019, Plaintiff Jacob Adoni was contacted by Stephen Sheinbaum of Circadian Funding, LLC (Mr. Sheinbaum and Circadian Funding, LLC are referred to collectively, as "Circadian") with an offer for a personal loan.

2. Circadian represented to Mr. Adoni that the personal loan would be in the sum of $110,000.00 and would be secured by a mortgage on Mr. Adoni's personal residence, located at 19 Chestnut Hill Drive, Oyster Bay, NY 11771.

---

[1] See *Quantum-Mac Int'l v. World Business Lenders, et al.*, No. 1:20-cv-02353-WMR (N.D. Ga. Filed June 2, 2020). (A small business owner from Geourgia was given a $50,000 loan at 88% APR, despite Georgia's 60% usury cap. WBL prepared all of the documents with BOFI Federal Bank (known as Axos Bank) listed as the lender, and then an officer of WBL used a power of attorney for the bank to assign the loans to WBL. WBL is seeking $133,519 in interest and is threatening to foreclose on the owner's home.) Also, *Koffel et al. v. World Business Lenders et al.*, No. CACE-20-009401 (17th Jud'l Cir. For Broward Co., FL filed June 7, 2020 (A realty company challenged a loan at rate of over 100%. WBL prepared all loan documents but only BOFI Federal Bank (Axos Bank) was named, though the borrowers never communicated with the bank. The complaint alleges that when WBL was "confronted with the fact that the loans were outrageous and criminally usurious, WBL replied that was because Nevada does not have such laws and that WBL agreed they were using BofI [Axos Bank] solely for the purpose as a 'rent a bank.'") In *B&S Medical Supply et al v. World Business Lenders et al.*, No. 1:17-cv-03234 (S.D.N.Y. filed May 2, 2017). WBL solicited Boris Simon, the owner of B&S Medical Supply, for a $28,000 business loan at 73% APR, provided by Liberty Bank, that was secured by Simon's home. The business loan application contained both the business logo and contact information of WBL and Liberty. The loan was immediately assigned from Liberty to WBL. WBL corresponded with Simon, referring to itself as the "Lender" and saying that it would service the loan and have the right to collect payments.

3. On or about February 5, 2019, Circadian provided Mr. Adoni with an estimated closing cost disclosure which stated that "...you will be afforded the opportunity to review the closing documents with your attorney...", a copy of which is annexed hereto as Exhibit "A". That disclosure was on the letterhead of WBL.

4. On or about February 7, 2019, Circadian wrote to Mr. Adoni via email, explaining that "The plan here (in my mind) should be to get you funded ASAP at WBL...".

5. At approximately 12:00 p.m. on February 22, 2019, Circadian provided Mr. Adoni with a Business Promissory Note and Security Agreement (the "Note"), a Personal Guarantee (the "Guarantee"), Business Loan Summary, Conditional Closing Agreement, Cooperation Agreement and other documents for Mr. Adoni to execute contemporaneously with the Note and Guaranty (all of which collectively comprise the "Loan Documents"), and which are annexed hereto as Exhibit "B".

6. At approximately 12:00 p.m. on February 22, 2019, Circadian also provided Mr. Adoni with a Mortgage, Assignment of Leases and Rents and Security Agreement.

7. Mr. Adoni was told by Circadian at the time that the Loan Documents and Mortgage were provided to him, that he must execute all documents no later than 6:00 p.m. on February 22, 2019, after which the loan offer would no longer be valid.

8. On February 22, 2019, Circadian notified Mr. Adoni that a notary, hired by Circadian, would meet him in a Panera Bread restaurant located near his home so that he could notarize Mr. Adoni's signature on the Loan Documents and on the Mortgage and close on the loan.

9. The Loan Documents provide the terms of the loan as follows: Principal Amount: $90,000.00; Repayment Amount: $122,422.73; Interest Charges: $32,422.73; Processing

Fee: $6,293.00; Payment Schedule: 125 payments of $971.61 due each "Business Day" commencing on 2/27/19 until 8/22/19, followed by a final payment of $971.48 on 8/23/19 when any outstanding Principal, Interest, and other unpaid charges shall be due and payable in full; Interest Rate: 0.364520547945% per day on unpaid principal until paid in full; APR 138.1061%.

10. Mr. Adoni was told by Circadian at the time that the Loan Documents and Mortgage were provided to him, that while the loan was meant to be a personal loan to him, in order to facilitate the daily withdrawals by Defendants for repayment of the loan, that it was necessary for the Loan Documents to make reference to Mr. Adoni's business, to wit: Harbor Park Realty, LLC, which would allow defendants to make withdrawals for repayment of the loan from the corporate bank account of Harbor Park Realty, LLC.

11. Neither Mr. Adoni nor Harbor Park Realty LLC were given the opportunity to negotiate the terms of the loan transaction.

12. Neither Mr. Adoni nor Harbor Park Realty LLC had the opportunity to review the loan documents in time with their attorney before the offer for the loan was set to expire even though Circadian specifically promised Mr. Adoni that he would be afforded the opportunity to review the closing loan documents with his attorney which was written on the WBL loan disclosure form that was issued by Circadian.


**ARGUMENT AS TO DEFENDANTS WORLD BUSINESS LENDERS, LLC AND AXOS BANK**

**POINT I**
**PLAINTIFFS' COMPLAINT SHOULD NOT BE DISMISSED FOR FAILURE TO PROSECUTE UNDER RULE 41(B) OF THE FEDERAL RULES OF CIVIL PROCEDURE**

In order to properly state a claim of involuntary dismissal under Rule 41(b) of the Federal Rules of Civil Procedure the court must consider four factors, none of which are dispositive standing alone: (1) whether the party's failure to prosecute is due to willfulness, bad faith, or fault; (2) whether the adversary was prejudiced by the dismissed party's conduct; (3) whether the dismissed party was warned that failure to cooperate could lead to dismissal; and (4) whether less drastic sanctions were imposed or considered before dismissal was ordered. Schafer v. City of Defiance Police Dep't, 529 F.3d 731, 736 (6th Cir. 2008). Defendant's Motion to Dismiss fails to address or properly argue these factors.

Rule 41(b) provides for involuntary dismissal of a complaint where the plaintiff has failed to prosecute and/or to comply with the Federal Rules of Civil Procedure or a court order. Rule 41(b) "allows district courts to manage their dockets [*4] and avoid unnecessary burdens on both courts and opposing parties." Dismissal under Rule41(b) is warranted when there is a "clear record of delay or contumacious conduct by the plaintiff" and when the plaintiff "is inexcusably unprepared to prosecute the case." Hampton v. Madison Cty., No. 1:18-cv-01191-STA-atc, 2020 U.S. Dist. LEXIS 246917 (W.D. Tenn. Nov. 30, 2020). However, for purposes of Defendant's motion to dismiss, "[a]ll factual allegations set forth in the [C]omplaint are taken as true and construed in the light most favorable to [Plaintiffs]." Lee v. City of Los Angeles, 250 F.3d 668, 679 (9th Cir. 2001). For the reasons below and the facts stated in Plaintiff's Amended Complaint, dismissal of Plaintiff's claims against Defendant is an inappropriate and extreme sanction in this case.

With respect to the first factor, "[w]illfulness, bad faith, or fault is demonstrated when a plaintiff's conduct evidences 'either an intent to thwart judicial proceedings or a reckless disregard for the effect of his conduct on those proceedings. Schafer, 529 F.3d at 737. Plaintiffs'

conduct does not evidence an intent to thwart judicial proceedings or a reckless disregard for the effect of his conduct on those proceedings. Plaintiffs' counsel filed a Motion to Withdraw as Counsel on April 20, 2021. (Document 36). Plaintiffs were granted permission to obtain new counsel by June 10, 2021 and on June 7, 2021 Plaintiffs requested an extension to August 9, 2021, to retain new attorneys because Plaintiffs had been experiencing personal and familial health related issues. (Document 44.) Plaintiffs' request is still pending the Court's decision. Plaintiffs nevertheless obtained new counsel and counsel for Plaintiffs filed a Notice of Appearance by August 19, 2021 even though Plaintiffs' request is still pending the Court's decision. (Document 51). Plaintiffs' conduct does not evince a reckless disregard of judicial proceedings nor did they have any intent to thwart judicial proceedings as they were and have been waiting the Court's decision on their request while experiencing personal and family issues.

Regarding the second factor, "[a] defendant is 'prejudiced by the plaintiff's conduct where the defendant waste[s] time, money, and effort in pursuit of cooperation which [the plaintiff] was legally obligated to provide.'" Wright v. City of Germantown, Tenn., No. 11-02607, 2013 U.S. Dist. LEXIS 57192, 2013 WL 1729105, at *2 (W.D. Tenn. Apr. 22, 2013). Defendant has not been prejudiced by the Plaintiffs' conduct as Plaintiffs had not wasted Defendant's time, money, and effort in pursuit of Plaintiffs cooperating with a request that is still pending the Court's decision. Furthermore, this case is still in the discovery phase of the litigation and Plaintiffs' procedural delay of ten days to obtain to new counsel from Plaintiff's request of an extension to August 9, 2021 is not a sufficient nor compelling reason for such an extreme sanction of dismissing this matter.

Additionally, in response to the argument that due to Plaintiffs' alleged "delay tactics" that Appearing Defendants were allegedly "...delayed in their right to file a motion to dismiss by more than a year months..." the Court is respectfully asked to take note of the following:

a) After Appearing Defendants were served with the Summons and Complaint on November 13, 2019, their Counsel requested an extension of time to answer, move or appear by Stipulation up to and including December 20, 2019.

b)  The action was then removed to this Court by Appearing Defendants on December 12, 2019.

c) On December 20, 2019, Appearing Defendants moved for an extension of time to answer, move or appear (Document 6 and 7) up to and including January 21, 2020, which was granted by the Court by Text Order of December 23, 2019.

d) On January 16, 2020, Appearing Defendants moved for an extension of time to answer, move or appear (Document 8) up to and including February 21, 2020, which was granted by the Court by Text Order of January 17, 2020.

e) On February 20, 2020, Appearing Defendants moved for an extension of time to answer, move or appear (Document 9 and 10) up to and including March 12, 2020, which was granted by the Court by Text Order of February 21, 2020.

f) On March 11, 2020, Appearing Defendants moved for an extension of time to answer, move or appear (Document 11 and 12) up to and including April 2, 2020, which was granted by the Court by Text Order of March 12, 2020.

g) g. On April 2, 2020, *after almost five (5) months after having been served with the Summons and Complaint in this matter,* the Moving Defendants, for the first time,

filed their letter request to this Court for permission to move to dismiss the original complaint.

Based upon the foregoing procedural history, the Appearing Defendants cannot reasonably be heard to complain that they have somehow been allegedly prejudiced by any delay in this matter or of the existence of any alleged "delay tactics" when it is in fact Appearing Defendants that have themselves caused a significant delay in these proceedings.

With respect to the third factor as to whether the dismissed party was warned that failure to cooperate could lead to dismissal. Prior notice or the lack thereof, is a key consideration in determining whether dismissal under Rule 41(b) is warranted. Schafer, 529 F.3d at 737. On September 16, 2021 the Court ordered Plaintiff to serve their opposition to Defendant's Motion to Dismiss by October 15, 2021. Plaintiff has prepared and is responding to each one of Defendant's arguments in their Motion to Dismiss as required by the Court's order on September 16, 2021. The Court should not consider this key third factor in determining whether a dismissal under Rule 41(b) is warranted as Plaintiffs are in compliance with the Court's order and dates.

The Court should not consider the fourth factor in its decision of whether to dismiss or not because less drastic sanctions were not imposed on Plaintiffs nor did the Court *sua sponte* order any sanctions and none were sought by opposing counsel. Plaintiff's previous counsel filed a response (doc # 23) one day after the Court's deadline (8/19 vs. 8/20). A one-day delay hardly warrants a dismissal and did not impact the Defendants in any meaningful way as the Court ordered an amended complaint to be filed as part of its 8/20/20 order.

### POINT II
### PLAINTIFFS ARE ENTITLED TO A DECLATORY JUDGMENT

**A. Whether Plaintiff Adoni is a sophisticated borrower or not is a factual allegation that is subject to dispute and an issue for the Court to decide on at trial.**

In reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. See Cleveland v. Caplaw Enters., 448 F.3d 518, 521 (2d Cir. 2006). "In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must allege a plausible set of facts sufficient 'to raise a right to relief above the speculative level.'" Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC, 595 F.3d 86, 91 (2d Cir. 2010) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). This standard does not require "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570.

The facts set forth in Plaintiffs' AC (Document 25) state that Plaintiff needed money for non-business- related matters and did not object to receiving further information from Defendants. In response, Plaintiff Adoni was ultimately presented with a transaction in which the personal loan to him was backed by Plaintiff Adoni's personal guaranty, and a mortgage on his family home as collateral for the loan at issue, therefore, Plaintiff was a consumer of the loan and is afforded protection as the consumer. Defendant's allegations that Plaintiff Adoni is a sophisticated borrower that obtained a business loan for business related purposes are arguments that go to the merits of this case and are directly refuted and addressed at length in Plaintiff's AC. If Plaintiff Adoni obtained this loan for business related purposes he would not have personally guaranteed it himself or pledged a mortgage on his home as collateral for the loan. The facts set forth in Plaintiffs' AC are enough facts to state a claim to relief that is plausible on its face.

Additionally, Defendants rely on persuasive authority instead of actual caselaw as their source for claiming that Plaintiff, a New York resident, is a sophisticated borrower and is therefore barred from relying on any oral representations in conflict with the actual terms of a written agreement. There are no facts of record that Defendants can properly rely on to support their factual allegation that Plaintiff is a sophisticated borrower. Plaintiff has not been deposed and there has not been an official exchange of documents through discovery for Defendants to properly rely on in support of making this false accusation. Defendant's Motion to Dismiss alleges that "Plaintiff is a sophisticated, financially-savvy businessman and litigator, well versed in these types of loans." Whether Plaintiff is a sophisticated party and/or borrower does not make him a sophisticated litigator and both are factual issues subject to dispute and to be uncovered through discovery. The court in <u>D'Jamoos v. Griffith</u>, denied Defendant's motion to dismiss because it was premature in that discovery had not taken place. <u>D'Jamoos v. Griffith</u>, 00 CV 1361, 2001 U.S. Dist. LEXIS 17595, at *16 (E.D.N.Y. July 31, 2001). Dismissal of Plaintiff's AC is premature since discovery still remains.

**B. New York's usury laws are not preempted by federal law**

New York usury laws are not preempted by federal law. The federal government has sought to preempt state usury laws for federally chartered banks [12 CFR §560.2; 12 CFR §560.110; <u>Citibank (SD) NA v Hansen</u>, 28 Misc 3d 195, 902 N.Y.S.2d 299 (2010). Federal law currently does not specify a federal usury rate, other than in limited circumstances where, for example, loans that are made at grossly excessive rates of interest can result in criminal liability,[2] or where certain types of loans are made to military servicemembers or their families.[3] Further,

---

[2] *See, e.g.*, Racketeering Influenced and Corrupt Organizations Act § 901, 18 U.S.C. § 1961(6) (2015) (defining "unlawful debt"); *id.* § 1962 (defining prohibited racketeering activities to include collection of an unlawful debt).

[3] 10 U.S.C. § 987(b) (2015) (capping interest rate to military servicemembers and their dependents at 36%).

interest rates charged on loans made by federally regulated banks and nonbank lenders are subject to interest rate disclosure requirements under the Truth in Lending Act,[4] and there are consumer regulatory provisions that are designed to prevent unfair, deceptive, or abusive acts and practices in connection with, among other things, the charging of interest rates on consumer credit.[5] The language of these federal regulations seems to indicate a belief that there should be some cap on interest rates even though none is fixed in the regulation. The court in <u>Am. Express Bank, FSB v. Dalbis</u>, addressed the belief that the language in the federal statute itself is intended to protect the consumer from interest rates that have no cap by stating that, "Allowing credit card issuers to charge rates so far in excess of those permissible under Section 85 seems to be beyond the intention of the statute and perhaps should be addressed by Congress so as to normalize credit card interest rate to be in-line with other consumer credit rates currently prevailing." <u>Am. Express Bank, FSB v. Dalbis</u>, 2011 NY Slip Op 50366(U), ¶ 10, 30 Misc. 3d 1235(A), 1235A, 927 N.Y.S.2d 814, 814 (Civ. Ct.).

The court in <u>Madden v. Midland Funding</u>, LLC, 786 F.3d 246 (2d Cir. 2015), refused to rule that the National Bank Act (NBA) pre-empted state law usury claims against an assignee of a national bank. The Plaintiff in <u>Madden v. Midland</u>, filed a motion to dismiss, arguing that because it purchased the debt from a national bank, the suit was pre-empted by the NBA. A district court judge granted the motion, but the federal appellate panel reversed, ruling that because Midland was not itself a national bank—or a subsidiary or agent of a national bank, or even otherwise acting on behalf of a national bank—the protection of the federal statute did not apply.

---

[4] Truth in Lending Act §§ 121–22, 15 U.S.C. §§ 1631–32 (2015) (disclosure requirements).

[5] 14. Dodd-Frank Wall Street Reform and Consumer Protection Act § 1031, 12 U.S.C. § 5531 (2015).

It is not clear here who the lender of the loan is in this matter. Whether the lender of the loan is WBL, Axos Bank f/k/a B-of-I Federal Bank or Circadian Funding, LLC, is an issue that needs to be uncovered through discovery. The fact that Plaintiff's do not know where or who the loan originated from or which Defendant is operating as the national bank is an issue that needs to be addressed during the discovery phase of this case. Furthermore, Plaintiffs require that discovery take place because, a national bank's right to exceed this state's [New York] usury limits is not established simply by alleging its status as a "national bank." Citibank (SD) NA v Hansen, 28 Misc 3d 195, 902 N.Y.S.2d 299 (2010). Instead, under applicable provisions of federal law, a greater showing is required. Id. At a minimum, the bank must demonstrate, through proof in admissible form, that at least one significant nonministerial action associated with the account took place in the bank's "home state." Id.

Defendants have failed to show to that at least one significant nonministerial action associated with the account took place in the bank's "home state" in order to afford the protection of the federal statute under these circumstances. Additionally, it is not clear as to where Defendant's home state even is because discovery remains incomplete, and Plaintiff's do not know which bank or who the true lender of the loan is. Therefore, this case remains a federal diversity case and a federal court sitting in diversity applies the substantive law of the forum state to state law claims. Mason & Dixon Intermodal, Inc. v. Lapmaster Intern. LLC, 632 F.3d 1056, 1060 (9th Cir. 2011). Furthermore, The Honorary Judge Seibel for the Second Circuit wrote in her opinion and order for Madden v. Midland that, "As a federal court applying state law, [I am] generally obliged to follow the state law decisions of state intermediate appellate courts." Broder v. Cablevision Sys. Corp., 418 F.3d 187, 199-200 (2d Cir. 2005). Therefore, this matter is not preempted by federal law and the Court must apply the substantive law of New

York because this is a federal diversity case on a state substantive issue sitting in the state of New York.

Nevada law violates New York public policy

Generally, courts will enforce a choice-of-law clause so long as the chosen law bears a reasonable relationship to the parties or the transaction *and* foreign law would not offend fundamental public policy. Welsbach Elec. Corp. v. MasTec N. Am., Inc., 859 N.E.2d 498, 500-01 (N.Y. 2006). In addressing the reasonable relationship issue, courts have looked to the location of the following factors: the parties' negotiation of the agreement; performance under the agreement, including where loan payments were received; the parties' places of incorporation; the parties' principal places of business; and the property that is the subject of the transaction. Am. Equities Grp., Inc. v. Ahava Dairy Prods. Corp., No. 01-CV-5207, 2004 WL 870260, at *8 (S.D.N.Y. Apr. 23, 2004); Am. Express Travel Related Servs. Co. v. Assih, 893 N.Y.S.2d 438, 445-46 (Civ. Ct. Richmond Cty. 2009). The fact that one of the parties' principal place of business is in the selected forum is enough to satisfy the reasonable relationship test. See Finucane, 695 N.Y.S.2d at 325.

These factors do not support a finding that a reasonable relationship exists between the parties, the transaction and the Nevada forum. Nevada bears no relationship to the conduct of this transaction. The location of Plaintiff's property that is subject of this transaction is located in New York, not in Nevada, the Defendant's sent their own representative to notarize the loan documents in New York, the Defendant broker Circadian has its principal place of business located in New York, Plaintiff is located in New York, and it is not yet known where the Defendant's principal place of business or where the loan payments were received, as this case has yet to move through discovery. Additionally, the title of the loan document itself states that

Axos bank is the Mortgagee and Jacob Adoni is the Mortgagor. The very same document further provides that the documents were prepared by and recorded to World Business Lenders, LLC whose offices are located in New Jersey at 101 Hudson Street, 33rd Floor, Jersey City, New Jersey 07302 and that Harbor Park Realty, LLC is the borrower. (Document 25-3). The state of Nevada bears no relationship to the transaction at hand based on Document 25-3, since World Business Lenders, LLC's offices are located in the state of New Jersey. Additionally, Document 25-3 is confusing on its face and would be confusing to any sophisticated borrower let alone any lay person like Plaintiff Adoni himself, when deciphering who issued the loan.

New York follows the center of gravity approach in determining whether a reasonable relationship exists in conflicts matters. Under the center of gravity approach the law of the state with the most significant contacts with the transaction will be applied. Auten v. Auten, 308 N.Y. 155, 124 N.E.2d 99 (N.Y. 1954). In North Amer. Bank v. Schulman, 123 Misc. 2d 516, 474 N.Y.S.2d 383 (N.Y. Cnty. Ct. 1984) the court declined to enforce a choice of law provision selecting the law of Israel, where the documents had been executed in New York and the borrowers were New York Residents. In American Express Travel Related Service Co. v Assih, 26 Misc 3d 1016, 893 N.Y.S.2d 438 (2009) the court applied New York law even though there was a choice of law clause selecting the law of Utah in the loan documents.

In applying the center of gravity approach to this matter, the state that bears most significant contacts with loan is the State of New York because the loan was executed in New York, the Defendant Broker Circadian has its principal place of business in New York, the Defendant broker Circadian sent their own notary to meet Plaintiff near Plaintiff's residence at a Panera Bread location to notarize the loan documents, Plaintiff is a resident of New York state,

and the loan was collateralized by a personal guaranty and a mortgage on Plaintiff's home located in the state of New York.

A number of cases have applied New York law – despite the parties' choice of another forum's law – because New York's usury prohibition constitutes a fundamental public policy. See Am. Equities Grp., 2004 WL 870260, at *8 ("New York has a strong public policy against interest rates which exceed 25%, which policy must be enforced.") The choice of law provision in loan documents is not determinative as the guiding law for the loan since the state of New York has a strong public policy interest in regulating loans within its jurisdiction. In re McCorhill Publ'g, Inc., 86 B.R. 783, 793 (Bankr. S.D.N.Y. 1988) (holding that enforcing New Jersey law would violate New York's "strong public policy against interest rate.); Assih, 893 N.Y.S.2d at 446 ("New York has a strong public policy against interest rates which are excessive and this is a policy the courts must enforce."); Clever Ideas, Inc. v. 999 Rest. Corp.,No. 0602302/06, 2007 N.Y. Misc. LEXIS 9248, at *2-4 (Sup. Ct. N.Y. Cty. Oct. 12, 2007) (choice of Illinois law not given effect in part because New York's usury prohibition is a fundamental public policy); N. Am. Bank, Ltd. v. Schulman, 474 N.Y.S.2d 383, 387 (Cty. Ct. Westchester Cty. 1984) ("[T]he policy underlying our state's usury laws is in fact of a fundamental nature.").

Defendant's Motion to Dismiss improperly states that Nevada law does not violate a fundamental public policy of New York. Applying Nevada law would violate a fundamental public policy of the state of New York since Nevada does not have a stated maximum interest rate for loans that are agreed to in writing. [6] The loan at issue was a personal loan that was couched as a "business loan" with a grossly unconscionable interest rate of 138% APR. The loan itself was backed by Plaintiff's personal guaranty and was also collateralized by a mortgage on

---

[6] NRS 99.040 Interest rate when not fixed by express contract for certain types of transactions.

his home in New York. Given the public policy reasons underlying New York's usury laws, the Court should not allow Defendants to avoid New York law, when the loan at issue was originated in New York and was collateralized by real property located in the State of New York.

### C. Plaintiffs are seeking a declaratory judgment against Defendants and are not alleging an affirmative use of New York's usury claims.

Defendants improperly allege that Plaintiffs are trying to use New York's usury laws as a cause of action when in fact they are not. There is no such thing as a cause of action for usury. Defendants are trying to mislead the Court in stating that Plaintiffs are trying to seek relief under a usury cause of action, when they are not. Plaintiff is seeking a declaratory judgment against the Defendants.

N.Y. Gen. Oblig. Law § 5-511, provides that usurious contracts are void. A personal loan with an interest rate that exceeds 16% constitutes civil usury and a loan from and to a corporation with an interest rate that exceeds 25% constitutes criminal usury under New York law.[7] The Court affirmed this in Curtiss v. Teller, 157 A.D. 804, 804, 143 N.Y.S. 188 (4th Dept. 1913), aff'd, 217 N.Y. 649, 112 N.E. 1056 (1916) that a usurious transaction is void *ab initio*, and a return of excess interest cannot save to the lender the money actually advanced, or the interest due on the loan. Consequently, although Defendants need not return the interest Plaintiff Adoni has already paid, defendants "...cannot recover either the money loaned or the interest remaining due in this transaction." See, Id.; Szerdahelyi v. Harris, 67 N.Y.2d 42, 50, 490 N.E.2d 517 (1986).

While Plaintiff Adoni herein is not seeking recovery of the interest already paid to Defendants, and rather, is seeking a declaratory judgment, as stated immediately above, the

---

[7] N.Y. Gen. Oblig. Law § 5-511

Defendants should not be able to "recover either the money loaned or the interest remaining due in this transaction." Id. When a court deems a transaction to be usurious, it must declare the transaction and its supporting documents void, enjoin prosecution on them and order that all documents and collateral be canceled and surrendered." Id. With respect to any loan or forbearance other than certain residential mortgage loans, the term 'interest,' for purposes of New York's civil and criminal usury statutes, "mean[s] all amounts paid or payable, directly or indirectly, by any person, to or for the account of the lender which would be includible as interest under New York law as it existed prior to the enactment of [section 14-a of the New York Banking Law,] chapter 349 of the Laws of 1968." 3 N.Y.C.R.R. § 4.2(b); see N.Y. Gen. Oblig. Law § 5-501(2).

As such the Loan Documents and the loan itself constitute criminal usury and are void *ab initio*. The loans are in the first instance, represented to be personal loans, after which time Defendants engage in a "bait and switch" and explain that daily payments should be made from a business account in order to facilitate the daily withdrawals by Defendants for repayment of the loan. Defendants provided Plaintiff Adoni a personal loan couched as a "business loan" with an acknowledged 138% APR. The Defendants required Plaintiff Adoni to connect this loan to a personal guaranty by the Plaintiff. The Defendants required the Plaintiffs to connect this 138% APR Loan for to a mortgage on the residence owned by Mr. Adoni. New York law and federal law prohibit 138% APR for residential mortgage loans. This loan attempts to be couched as a "business" loan to evade the regulatory protections for personal and residential mortgage loans and thus constitutes criminal usury in the state of New York.

**POINT III**
**PLAINTIFF'S CLAIM SHOULD NOT BE DISMISSED BECAUSE DEFENDANTS VIOLATED SECTION 349 AND 350 OF NEW YORK'S GENERAL BUSINESS LAW**

Section 349 of New York's General Business Law which makes "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service" unlawful, was intended to be broadly applicable, extending far beyond the reach of common law fraud, and to apply to virtually "all economic activity," and may be invoked regardless of whether the allegedly deceptive activity is covered by other laws. New York v. Feldman, 210 F. Supp. 2d 294 (2002). The statute is to be liberally construed in order to carry out intended reforms and to promote justice. Blue Cross and Blue Shield of New Jersey Inc., v. Phillip Morris, Inc., 178 F. Supp. 2d 198 (2001).

To successfully assert a claim under GBL§§ 349 or 350, a party must allege that its adversary has engaged in consumer-oriented conduct that is materially misleading, and that the party suffered injury as a result of the allegedly deceptive act or practice. Yellow Book Sales and Distribution Co., Inc. v. Hillside Van Lines, 98 A.D.3d 663, 663-64, 950 N.Y.S.2d 151 (2d Dept. 2012). GBL Article 22-A, entitled "Consumer Protection from Deceptive Acts and Practices," which includes GBL §§ 349 and 350, is addressed to practices that have a broad impact on consumers at large. (Quoting, Eco Smart Holdings, Ltd. v. Maston, 2016 NY Slip Op 32778(U), ¶ 11 (Sup. Ct.)).

The critical question to ask is whether the matter affects the public interest in New York, not whether the matter is brought by a consumer. New York v. Feldman, 210 F. Supp. 2d 294 (2002). The defendant in a deceptive acts and practices action engages in consumer oriented activity if his actions cause any consumer injury or harm to the public interest. Id. The Defendants in this case have caused Plaintiff, who is also a consumer of the loan, injury in that Defendants misrepresented the nature of the loan (now claiming that it was a business loan) and by attempting to collect on a loan which is usurious as set forth in detail herein. Furthermore, at

18

large, Defendants issued this type of loan through deceptive business practices which causes a harm to the public interest because anyone who falls privy to Defendants' deceit are at risk of losing nearly almost everything they have if they are required to pledge their home as collateral for the loan.

Furthermore, WBL and AXOS have engaged in consumer collection conduct which amounts to a violation of New York State and Federal laws, as set out herein and the Plaintiffs, as a proximate result thereof, have sustained economic damages for which the Plaintiffs are entitled to compensation from the Defendants.

## POINT IV
## A PRELIMINARY AND PERMANENT INJUNCTION IS NECESSARY TO STOP DEFENDANTS FROM FORECLOSING ON PLAINTIFF'S RESIDENCE.

Defendants may, at any time, attempt to enter confessions of judgment against Plaintiffs herein and proceed with foreclosure of the Mortgage due to Plaintiffs filing of the instant action. Defendants' Motion to Dismiss improperly states the standard for the court to issue a preliminary injunction by stating Plaintiff's claims are not "independent claim[s] upon which relief could be granted, since injunctions are remedies, not claims." However, the proper use of a preliminary injunction is not to serve as a preliminary adjudication on the merits, but as a tool to preserve the status quo and prevent irreparable loss of rights before judgment. Textile Unlimited, Inc. v. A..BMH & Co., Inc., 240 F.3d 781, 786 (9th Cir. 2001). Therefore, it is necessary to stop the harm that Plaintiff will suffer if Defendant's are permitted to foreclose on Plaintiff's home during the pendency of this action.

In reviewing a motion for preliminary injunction, "courts must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." Id. A plaintiff seeking a preliminary injunction must establish that he is likely

to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Id. at 20

There is a strong likelihood that Plaintiff's will succeed on the merits of his claim, because Defendant's issued him a usurious "personal" loan that was couched as a "business" loan to circumvent the federal law and the state of New York's laws and regulations that govern personal loans. It is well-established that the loss of an interest in real property constitutes an irreparable injury." Park Vill. Apartments Tenants Assn. v. Mortimer Howard Trust, 636 F.3d 1150, 1159 (9th Cir. 2011). If Plaintiff is not granted a preliminary injunction, Defendants can move to foreclose on Plaintiff's residence at any time because Defendants hold a mortgage on Plaintiff's home as collateral for the loan at hand and Plaintiff's will suffer an irreparable harm if Defendants foreclose on Plaintiff's home. The harm that Defendants will suffer does not compare to the severity of the harm that Plaintiff's will suffer because Plaintiff is at risk of losing his home to which he resides in with his family, while Defendants would only suffer monetary damages as a result of the preliminary injunction. The equities tip in Plaintiff's favor because a denial of the injunction may subject Plaintiff to losing his home altogether, while granting the injunction would result only in monetary damages for the Defendant. It is a greater inequity to render Plaintiff homeless in order to expedite the return of Defendants' loan. Furthermore, granting Plaintiff a preliminary injunction weighs in favor of the public interest because many homeowners are at stake of becoming homeless by these "rent a bank" lenders that require the debtor to put up their homes as collateral in order to secure the usurious loan.

Defendants issued a usurious loan that violates state and federal law and a permanent injunction should be granted when it is found that Plaintiffs have succeeded on their claims against Defendants.

## ARGUMENTS AS TO DEFENDANT CIRCADIAN FUNDING, LLC

### POINT I
### PLAINTIFFS' STATE A CLAIM UNDER WHICH RELIEF CAN BE GRANTED IN ITS AMENDED COMPLAINT.

In the interests of brevity, the issue of FED. R. CIV. P. 12(b) has been addressed in Point I above.

### POINT II
### DEFENDANT'S RECITATION OF FED. R. CIV. P. 4(M) IS FLAWED IN THAT DISMISSAL OF PLAINTIFFS' AMENDED COMPLAINT UNDER FED. R. CIV. P. 4(M) IS WITHIN THE COURTS DISCRETION AND IS NOT MANDATORY.

Defendant improperly states the standard for which dismissal is to be made under Fed. R. Civ. P. 4(m). Dismissal of Plaintiffs' AC is <u>not</u> mandatory under Fed. R. Civ. P. 4(m) as Defendant's argue in their Motion to Dismiss. Fed. R. Civ. P. 4(m) provides that:

> Time Limit for Service. If a defendant is not served within 90 days after the complaint is filed, the court--on motion or on its own after notice to the plaintiff--must dismiss the action without prejudice against that defendant **or** order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Dismissal under Fed. R. Civ. P. 4(m) is an either or standard and is not mandatory as Defendant contends. The rule states that it is within the Courts discretion to "order that service

be made within a specified time." However, the Court need not exercise its discretion to order that service be made within a specified time because Defendant was served with the Summons and Complaint on November 13, 2019, which Circadian never even answered or made an appearance until August 31, 2020. Defendant is trying to enforce a procedural rule as their basis for their Motion to Dismiss when they themselves did not comply with Fed R. Civ. P. 12(a)(i) in that they failed to serve their answer within 21 days of being served with the Summons and Complaint. Defendant sat on the complaint for two months before even filing a Motion for Extension of Time to Answer the Complaint. Circadian has still not answered the Complaint.

The Court should deny Defendant's Motion to Dismiss in that it is fatally flawed because it misleads the Court by claiming they were never served with the Amended Complaint, when in fact they were. Service of Process of the AC was effectuated by serving the Secretary of State on April 23, 2021 because Defendant did not have any counsel on record at the time. Furthermore, Defendant is trying to remain ignorant in the fact that they were well aware they were a Defendant in the AC. Defendant is also trying to mislead the Court in claiming that they were never served with the AC but they themselves have filed a Notice of Appearance and a Motion for Extension of Time to Answer the Amended Complaint (Documents 42 and 43) on May 28, 2021 which effectively acknowledges that they had been served. Defendant then filed two additional Motions for Extension of Time to Answer the Amended Complaint (Documents 46 and 48) on July 16, 2021 and August 13, 2021. Defendant's third Motion for Extension of Time to Answer the Amended Complaint (Document 48) was granted on August 16, 2021 and it was ordered that, "The time Circadian Funding, LLC to answer, move against or otherwise respond to the Second Amended Complaint is hereby extended to September 16, 2021." Defendant has prejudiced the Plaintiff's in that they have sat on the AC and have done nothing for almost six

months. Defendant did not need almost six months and three grants of an extension of time to prepare and submit their three-page Motion to Dismiss, which lacks any legal argument whatsoever.

Furthermore, Fed. R. Civ. P. 4(m) provides that, "Even if a plaintiff fails to show good cause for an extension of time to serve a defendant, the court may in its discretion extend the time to effect service. See, e.g., <u>Henderson v. United States</u>, 517 U.S. 654, 658 n.5, 134 L. Ed. 2d 880, 116 S. Ct. 1638 (noting that current Rule 4(m) "permits a district court to enlarge the time for service even if there is no good cause shown"') <u>Savage & Assocs., P.C. v. Williams Comms.</u> <u>(In re Teligent Servs.)</u> , 324 B.R. 467, 473 (Bankr. S.D.N.Y. 2005). Plaintiffs do not need to show good cause for an extension of time to serve Defendant in this case because the Defendant was served and have effectively acknowledged service and have sat on the complaint for almost six months now without doing anything. Additionally, Rule 4(m) still permits this Court to extend the time for service even if Plaintiff's in this case have failed to show good cause. Id.

<strong>CONCLUSION</strong>

For the foregoing reasons and all the others discussed in the Plaintiffs' Amended Complaint the present Motion to Dismiss should be denied in its entirety.

Dated: October 15, 2021

HUDSON LAW GROUP

By: */s/ David Treyster*
    David Treyster

745 Fifth Avenue, Suite 500
New York, NY 10151
(347) 815-2969 tel
(347) 846-0383 fax
Email: david@hudsonlawny.com
*Attorneys for Plaintiffs Jacob Adoni*
*and Harbor Park Realty, LLC.*